UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KETURAH MIXON,

      Plaintiff,

v.

DAVID TROTT, TROTT LAW P.C.
(f/k/a Trott and Trott P.C.), CARRINGTON
MORTGAGE SERVICES, LLC, (a/k/a
Carrington Mortgage Holdings LLC), and
BANK OF AMERICA, (a/k/a Bank of
America N.A.),

      Defendants.

Case No. 1:18-cv-499
Hon. Janet T. Neff
Magistrate Judge Ellen S. Carmody

---

| | |
|---|---|
| Keturah Mixon<br>243 Devon Road<br>Battle Creek, MI 49015<br>Telephone: (269) 339-9337<br>*In Pro Per* | Thomas W. Cranmer (P25252)<br>Matthew P. Allen (P57914)<br>Miller, Canfield, Paddock and Stone, P.L.C.<br>Attorney for David Trott<br>840 West Long Lake Road, Suite 200<br>Troy, Michigan 48098-6358<br>Telephone: (248) 267-3381<br>Fax: (248) 879-2001<br>Email: cranmer@millercanfield.com<br>allen@millercanfield.com |
| THOMAS G. COSTELLO (P42973)<br>DAVID G. MICHAEL (P68508)<br>Attorneys for Defendant Carrington<br>LIPSON NEILSON P.C.<br>3910 Telegraph Road, Suite 200<br>Bloomfield Hills, Michigan 48302<br>tcostello@lipsonneilson.com<br>dmichael@lipsonneilson.com<br>(248) 593-5000 | Richard Welke (P44403)<br>Jeffrey R. Raff (P55761)<br>Trott Law PC<br>Attorney for Trott Law P.C.<br>31440 Northwestern Hwy., Ste. 200<br>Farmington Hills, MI 48334-5422<br>Telephone: (248) 723-5765<br>rwelke@trottlaw.com<br>jraff@trottlaw.com |

---

**DEFENDANT CARRINGTON MORTGAGE SERVICES, LLC'S
<u>MOTION TO DISMISS</u>**

**ORAL ARGUMENT REQUESTED**

Defendant Carrington Mortgage Services, LLC, ("CMS"), by and through its counsel, Lipson Neilson P.C., request that the Court enter an order dismissing this action with prejudice under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The facts and authority supporting this motion are set forth in the accompanying brief.

In accordance with W.D. Mich. LR 7.2(a) and this Honorable Judge's Information and Guidelines, the pre-motion conference is not required, as this case was referred to Magistrate Judge Ellen S. Carmody on June 5, 2018.

Pursuant to Local Civil Rule 7.l(d), on July 11, 2018, a formal email correspondence was sent to the Plaintiff, Keturah Mixon, requesting concurrence with the relief requested in this motion and to inquire if this motion will be opposed. Concurrence was not obtained and Plaintiff indicated that the motion would be opposed.

Respectfully submitted,

Lipson Neilson P.C.

/s/ Thomas G. Costello
Thomas G. Costello (P42973)
David G. Michael (P68508)
3910 Telegraph Road, Suite 200
Bloomfield Hills, MI 48302-1461
(248) 593-5000
tcostello@lipsonneilson.com
dmichael@lipsonneilson.com
Attorneys for Defendant Carrington
Mortgage Services, LLC

Dated: August 6, 2018

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KETURAH MIXON,

       Plaintiff,

v.

DAVID TROTT, TROTT LAW P.C.
(f/k/a Trott and Trott P.C.), CARRINGTON
MORTGAGE SERVICES, LLC, (a/k/a
Carrington Mortgage Holdings LLC), and
BANK OF AMERICA, (a/k/a Bank of
America N.A.),

       Defendants.

Case No. 1:18-cv-499
Hon. Janet T. Neff
Magistrate Judge Ellen S. Carmody

---

| | |
|---|---|
| Keturah Mixon<br>243 Devon Road<br>Battle Creek, MI 49015<br>Telephone: (269) 339-9337<br>*In Pro Per*<br><br>THOMAS G. COSTELLO (P42973)<br>DAVID G. MICHAEL (P68508)<br>Attorneys for Defendant Carrington<br>LIPSON NEILSON P.C.<br>3910 Telegraph Road, Suite 200<br>Bloomfield Hills, Michigan 48302<br>tcostello@lipsonneilson.com<br>dmichael@lipsonneilson.com<br>(248) 593-5000 | Thomas W. Cranmer (P25252)<br>Matthew P. Allen (P57914)<br>Miller, Canfield, Paddock and Stone, P.L.C.<br>Attorney for David Trott<br>840 West Long Lake Road, Suite 200<br>Troy, Michigan 48098-6358<br>Telephone: (248) 267-3381<br>Fax: (248) 879-2001<br>Email: cranmer@millercanfield.com<br>allen@millercanfield.com<br><br>Richard Welke (P44403)<br>Jeffrey R. Raff (P55761)<br>Trott Law PC<br>Attorney for Trott Law P.C.<br>31440 Northwestern Hwy., Ste. 200<br>Farmington Hills, MI 48334-5422<br>Telephone: (248) 723-5765<br>rwelke@trottlaw.com<br>jraff@trottlaw.com |

---

**BRIEF IN SUPORT OF DEFENDANT CARRINGTON MORTGAGE
SERVICES, LLC'S MOTION TO DISMISS**

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................i

INDEX OF AUTHORITIES.........................................................................................iii

INTRODUCTION .........................................................................................................1

STATEMENT OF FACTS .............................................................................................1

STANDARD OF REVIEW ...........................................................................................5

ARGUMENT .................................................................................................................6

I.  PLAINTIFF'S CLAIMS ARE BARRED BY RES JUDICATA AND COLLATERAL ESTOPPEL BASED ON THE 2015 LAWSUIT .............................6

   a.  Res Judicata ...............................................................................................6

   b.  Collateral Estoppel.....................................................................................7

II.  PLAINTIFF'S RICO CLAIM (COUNT I) FAILS AS A MATTER OF LAW ...........9

III.  PLAINTIFF'S FRAUD CLAIMS (COUNTS II, IV, VI, XXVII AND XXVIII) FAIL AS A MATTER OF LAW .................................................................................11

IV.  PLAINTIFF'S FIDUCIARY DUTY CLAIM (COUNT III) FAILS AS A MATTER OF LAW.................................................................................................12

V.  PLAINTIFF'S EXTORTION AND BLACKMAIL CLAIM (COUNT V) FAILS AS A MATTER OF LAW................................................................................13

VI.  PLAINTIFF'S NEGLIGENT (COUNT VII) AND INTENTIONAL (COUNT XIII) INFLICTION OF EMOTIONAL DISTRESS CLAIMS FAIL AS A MATTER OF LAW.................................................................................................14

VII.  PLAINTIFF'S CLAIM FOR VIOLATION OF MCL 600.3204 (COUNT VIII) FAILS AS A MATTER OF LAW............................................................................15

VIII.  PLAINTIFF'S CLAIM FOR BREACH OF CONTRACT (COUNT X) FAILS AS A MATTER OF LAW .........................................................................................16

IX.  PLAINTIFF'S BREACH OF COVENANT AND FAIR DEALING (COUNT XI) AND TORTIOUS BREACH OF IMPLIED COVENANTS (COUNT XX) CLAIMS FAIL AS A MATTER OF LAW................................................................16

X.    PLAINTIFF'S NEGLIGENCE CLAIM (COUNT XII) FAILS AS A MATTER OF LAW ............................................................................................................17

XI.   PLAINTIFF'S FDCPA CLAIM (COUNT XIV) FAILS AS A MATTER OF LAW ..............................................................................................................18

XII.  PLAINTIFF'S CLAIMS FOR DECLARATORY RELIEF (COUNT XV), INJUNCTIVE RELIEF (COUNT XVI), AND UNJUST ENRICHMENT (COUNT XIX) FAIL AS A MATTER OF LAW .......................................................19

XIII. PLAINTIFF'S CLAIMS FOR VIOLATIONS OF THE CONSUMER FINANCIAL PROTECTION ACT (COUNTS XVII AND XVIII) FAIL AS A MATTER OF LAW..................................................................................................20

XIV. PLAINTIFF'S CLAIM FOR TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS (COUNT XXI) FAILS AS A MATTER OF LAW ..............................................................................................................21

XV.  PLAINTIFF'S CLAIM FOR DEFAMATION OF CHARACTER (LIBEL) (COUNT XXIV) FAILS AS A MATTER OF LAW ..................................................22

XVI. COUNTS XXII, XXIII, XXV AND XXVI OF THE COMPLAINT DO NOT ASSERT CLAIMS AGAINST CMS ..........................................................................23

CONCLUSION AND RELIEF REQUESTED ............................................................................23

# INDEX OF AUTHORITIES

**Case Law**

*800537 Ontario Inc. v. Auto Enterprises, Inc.*
113 F.Supp.2d 1116 (E.D. Mich. 2000)....................................................................10

*Adair v. State*
470 Mich 105 (2004) ...............................................................................................7

*Alexander v. Sandoval*
532 U.S. 275 (2001)................................................................................................21

*Allied Erecting and Dismantling Co., Inc. v. Genesis Equipment*
805 F.3d 701 (6th Cir. 2015) ...................................................................................6

*Am. Postal Workers Union v. Indep. Postal Sys. Of Am., Inc.*
481 F.2d 90 (6th Cir. 1973) ....................................................................................13

*Amini v. Oberlin College*
259 F.3d 493 (6th Cir. 2001) ...............................................................................5, 6

*Anderson v. City of Blue Ash*
798 F.3d 338 (6th Cir. 2015) ...................................................................................7

*Arkansas Coals, Inc. v. Lawson*
739 F.3d 309 (6th Cir. 2014) ...................................................................................8

*Ashcroft v. Iqbal*
556 U.S. 662 (2009)................................................................................................5

*Baraga Co. v. State Tax Comm.*
466 Mich. 264, 645 N.W.2d 13 (2002)....................................................................7

*Barber v. SMH (US), Inc.*
202 Mich App 366 (1993) ......................................................................................20

*Begala v. PNC Bank, Ohio, N.A.*
214 F.3d 776 (6th Cir. 2000) ..................................................................................10

*Bell Atlantic Corp. v. Twombly*
550 US 544 (2007)..................................................................................................5

*Belle Isle Grill Corp. v. City of Detroit*
256 Mich App 463 (2003) ...............................................................................................17

*Brown v. United States*
583 F.3d 916 (6th Cir. 2009) ....................................................................................17, 18

*Case v. Consumers Power Co.*
463 Mich 1 (2000) .........................................................................................................18

*Coyer v. HSBC Mortg. Svcs., Inc.*
701 F.3d 1104 (6th Cir. 2012) ..........................................................................13, 17, 18

*Davis v. United States*
499 F.3d 590 (6th Cir. 2007) .........................................................................................20

*Diamond v. Charles*
476 U.S. 54 (1986)...................................................................................................13, 14

*Dura Pharmaceuticals, Inc. v. Broudo*
544 US 336 (2005).........................................................................................................11

*Duran v. Detroit News, Inc.*
200 Mich App 622 (1993) ..............................................................................................14

*Elson v. Deutsche Bank Nat. Tr. Co.*,
No. 11-14100, 2012 WL 1902916, at *11 (E.D. Mich. May 25, 2012) .......................18

*Federated Dept Stores, Inc. v. Moitie*
452 U.S. 394 (1981).........................................................................................................6

*Fodale v. Waste Management of Michigan, Inc.*
271 Mich App 11 (2006) ................................................................................................17

*Frank v. D'Ambrosi*
4 F.3d 1378 (6th Cir. 1993) ........................................................................................9, 10

*Garretson v. City of Madison Heights*
407 F.3d 789 (6th Cir. 2005) .........................................................................................15

*Georgia-Pac. Consumer Prod. LP v. Four-U-Packaging, Inc.*
701 F.3d 1093 (6th Cir. 2012) .........................................................................................8

*Gillespie v. Battle Creek*
100 F Supp. 3d 623 (WD Mich, 2015) ......................................................................14

*Givens v. HSBC Mortg. Services,*
08–10985, 2008 WL 4190999 (E.D. Mich. Aug. 26, 2008). ......................................18

*Goss v. CitiMortgage, Inc.*
No. 16-14391, 2017 WL 5499400, at *6 (E.D. Mich. Nov. 16, 2017)........................16

*H.J., Inc. v. Northwestern Bell Telephone Co.*
492 US 229 (1989)......................................................................................................10

*Hamilton's Bogarts, Inc. v. Michigan*
501 F.3d 644 (6th Cir. 2007) .......................................................................................8

*Heike v. Central Michigan University Board of Trustees*
573 Fed. Appx. 476 (6th Cir., July 22, 2014) ..............................................................7

*Hemi Group, LLC v. City of New York, NY*
559 U.S. 1 (2010).......................................................................................................10

*Henry v. Dow Chem. Co.*
473 Mich 63 (2005) ....................................................................................................20

*Heydon v. MediaOne of Southeast Mich., Inc.*
327 F.3d 466 (6th Cir. 2003) .....................................................................................20

*Hi-Way Motor Co. v. Int'l Harvester Co.*
398 Mich 330 (1976) ..................................................................................................12

*Hoover v. Langston Equipment Associates, Inc.*
958 F.2d 742 (6th Cir. 1992) .......................................................................................6

*In re Sallee*
286 F.3d 878 (6th Cir. 2002) .....................................................................................12

*In Re Packaged Ice Antitrust Litig.*
723 F. Supp. 2d 987 (E.D. Mich. 2010)........................................................................5

*Kerotest Mfg. Co. v. C–O–Two Co.*
342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200 (1952)........................................................8

v

*Kim v. JP Morgan Chase Bank, N.A.*
493 Mich. 98 (2012) ........................................................................................................15

*Law Offices of Lawrence J. Stockler v. Rose*
174 Mich App 14 (1989) ..................................................................................................11

*Lucas v. Monroe Cnty.*
203 F.3d 964 (6th Cir. 2000) ...........................................................................................21

*Mixon v. Bank of America*
U.S. District Court for the Western District of Michigan, Case No. 1:15-cv-486..........................4

*Mohlman v. Long Beach Mortg.*
No. 12-10120, 2013 WL 490112 (E.D. Mich. Feb. 8, 2013).......................................................18

*Nichols v. Moore*
477 F.3d 396 (6th Cir. 2007) ...........................................................................................22

*Nymark v. Heart Fed. Savings & Loan Ass'n*
231 Cal. App. 3d 1089, n. 1 (1991) ...................................................................................13

*Randles v. Gregart*
965 F.2d 90 (6th Cir.1992) ...............................................................................................9

*Republic Bank & Trust Co. v. Bear Stearns & Co.*
683 F.3d 239 (6th Cir. 2012) ...........................................................................................11

*Reves v. Ernst & Young*
507 US 170 (1993); ...........................................................................................................9

*Rouch v. Enquirer & News*
440 Mich 238 (1992) .......................................................................................................22

*Saab Auto. AB v. Gen. Motors Co.*
770 F.3d 436 (6th Cir. 2014) ...........................................................................................21

*Schmidt v. PennyMac Loan Services, LLC*
106 F. Supp. 3d 859 (ED Mich 2015)................................................................................21

*Scott v. Wells Fargo Home Mortg. Inc.*
326 F.Supp.2d 709 (E.D.Va. 2003) ..................................................................................18

*Sedima, S.P.R.L. v. Imrex Co., Inc.*
472 US 479 (1985)............................................................................................9

*Taylor v. Sturgell*
553 U.S. 880 (2008).........................................................................................8

*Teadt v. Lutheran Church Mo. Synod*
237 Mich App 567 (1999) ...............................................................................14

*Terlecki v. Stewart*
278 Mich App 644 (2008) ...............................................................................20

*Blonder–Tongue v. University Foundation*
402 US 313 (1971)...........................................................................................8

*Ulrich v. Federal Land Bank of St. Paul*
192 Mich App 194 (1991) ...............................................................................18

*Vemco, Inc. v. Camardella*
23 F.3d 129 (6th Cir. 1994) ..............................................................................9

*W.J. O'Neil Co. v. Shepley, Bulfinch, Richardson & Abbott, Inc.*
700 Fed. Appx. 484 (6th Cir. 2017)...................................................................8

*Webster v. Edward D. Jones & Co., L.P.*
197 F.3d 815 (6th Cir. 1999) ...........................................................................16

*Wildfong v. Fireman's Fund Ins. Co.*
181 Mich App 110 (1989) .................................................................................7

**Federal Statutes**

12 U.S.C. 5481............................................................................................20

15 U.S.C. § 1692k(d)...................................................................................19

18 U.S.C. §§ 873, 875(b), and 880 .............................................................13

18 U.S.C. § 880 ...........................................................................................14

18 U.S.C. 1038............................................................................................23

18 U.S.C. § 1961(4) ......................................................................................9

18 U.S.C. § 1961(5) ..............................................................................................9

18 U.S.C. §1962(a), (b), (c) ................................................................................9

**Federal Rule of Civil Procedure**

Fed. R. Civ. P. 9(b) ............................................................................................11

Fed. R. Civ. P. 9(f) ...............................................................................................6

Fed. R. Civ. P. 12(b)(6)................................................................................5, 6, 11

**Other**

5 Wright & Miller, Federal Practice And Procedure, § 1308, p. 695)(West 1990).......................6

**Introduction**

On May 8, 2015, Plaintiff filed a lawsuit against Bank of America ("BANA") and twenty (20) unidentified John Does alleging various claims concerning the allegedly fraudulent and/or invalid transfer of her mortgage and subsequent foreclosure of the property in question. *Mixon v. Bank of America*, 1:15-cv-486, ECF No. 1 (W.D. Mich.). On June 26, 2015, a Report and Recommendation was issued recommending Plaintiff's claims be dismissed for failure to state a claim on which relief may be granted. *Mixon v. Bank of America*, 1:15-cv-486, ECF No. 16 (W.D. Mich.). That recommendation was adopted by the Honorable Janet T. Neff on July 17, 2015, and judgment entered in favor of BANA. *Mixon v. Bank of America*, 1:15-cv-486, ECF No. 17-18 (W.D. Mich.).

Undeterred by the judgment dismissing her first action Plaintiff is back. On May 3, 2018, Plaintiff initiated her second action against BANA, but this time adding Carrington Mortgage Services, LLC, David Trott, and Trott Law P.C. as defendants. Once again, Plaintiff alleges her mortgage loan was paid in full and has thrown the proverbial "kitchen sink" of claims against the Defendants via a 97 page, 28 count, 291+ paragraph Complaint. Despite the volume of her latest effort, both of Plaintiff's lawsuits are based on the same factual allegations and theories. As such, the claims in her second action are barred by res judicata and collateral estoppel. Furthermore, each of her claims fails independently as well.

**Statement of Facts**

Plaintiff purchased property located at 243 Devon Road, Battle Creek, Michigan 49015 (the "Property") in 2010. To finance her purchase, she took out an $118,808.00 loan (the "Loan") from Top Flite Financial, Inc. ("Top Flite"), as evidenced by the Promissory Note attached as Ex. A. The Loan was secured by a mortgage in favor of Mortgage Electronic Registration Systems,

1

Inc. ("MERS") as Top Flite's nominee, recorded on February 12, 2010 at Liber 3522, Page 41 (the "Mortgage"). (Ex. B).

In July 2011, the Mortgage was assigned to BAC Home Loan Servicing, LP f/k/a Countrywide Home Loan Servicing, LP ("BAC"). (Ex. C). BAC subsequently merged into Bank of America, N.A. ("BANA"), and the Loan transferred by operation of law. A Loan Modification Agreement was supposedly executed by Plaintiff and BANA on February 17, 2012. (Ex. D). Per that agreement, the debt balance owed at that time was agreed to be $138,231.31. The maturity date was also extended from Feb 1, 2040, to March 1, 2042[1]. _Id._

BANA subsequently assigned the Mortgage to the Secretary of Housing & Urban Development ("HUD"). (Ex. E). HUD then assigned the Loan to Wilmington Savings Fund Society, FSB as Trustee for Stanwich Mortgage Loan Trust A ("Stanwich"). (Ex. F). By May 4, 2017, Stanwich had assigned the Loan back to BANA. (Complaint, Ex. 14).

Defendant Carrington Mortgage Services, LLC's ("CMS") involvement with Plaintiff and the Loan lasted for just over eight (8) months. CMS began servicing the Loan on behalf of Stanwich on August 16, 2016. (Ex. G & H).[2] CMS's role as servicer on the Loan terminated on April 30, 2017. (Ex. I)[3]. CMS was never an owner of the Note or Mortgage. CMS never collected any payments from Plaintiff on the Loan as she contended it had supposedly been paid-in-full twice to BANA, once on an unspecified date prior to July 29, 2011 (Complaint, ¶17), and then again on July 1, 2014 (Complaint, ¶ 21).

During the brief time period it was servicing the Loan information provided to CMS indicated Plaintiff had never repaid the Loan. (CMS Letter, Nov. 21, 2016, Ex. K). CMS's

---

[1] Plaintiff asserts in her Complaint her signature was forged on this document. Complaint, ¶ 21.
[2] Prior to that BANA was the servicer on the Loan. (Ex. H).
[3] BANA resumed servicing on the Loan after that date. (Ex. J).

information was that Plaintiff not made a payment due on August 1, 2012, or on any date thereafter. *Id.* Plaintiff never cured her default during the time-period CMS was servicing the Loan.

In 2014, two years before CMS had anything to do with servicing the Loan, BANA - who then held the Loan - retained Trott Law P.C. t/k/a Trott and Trott P.C. ("Trott") to enforce the Loan and foreclose the Mortgage.  In October 2014, the Trott Firm appears to have commenced a foreclosure by advertisement and sent related notices to Plaintiff. (Complaint Ex. J – L).  Upon in formation and belief that process was not completed.  CMS never initiated foreclosure proceedings against Plaintiff or the Property.

The claims in Plaintiff's current case boil down to her allegation that on or about July 1, 2014, she paid BANA $212,986.78 – the balance she alleges was owed on her Loan at that time[4]. (Complaint, ¶ 21, Ex. I).  Plaintiff further alleges that BANA then prepared and recorded a "Satisfaction of Mortgage" and recorded it with the county Register of Deeds.  *Id.*

After CMS took over servicing the Loan, Plaintiff forwarded it a copy of the "Satisfaction of Mortgage" asserting she had paid-off the loan.  CMS investigated and was advised he loan had never been paid-off and that "Satisfaction of Mortgage" was invalid[5].  On November 21, 2016, CMS advised Plaintiff of that finding.  (Ex. K).

Plaintiff subsequently continued to insist she had paid-off the Loan with BANA before CMS began servicing it.  CMS again restated what it had been told.  CMS further suggested "If you are trying to prove you have satisfied this mortgage, a more effective approach would be to

---

[4] Plaintiff has failed to present any evidence, such as a pay-off statement, evidencing the basis for the above referenced payment.  It is difficult to appreciate why Plaintiff would have paid such a sum in July 2014 when a pay-off statement she requested from CMS in November 2016, more than two years later, indicated she owe only $187,564.76. (Complaint, Ex. 3).

[5] A review of the notary block on the "Satisfaction of Mortgage" (Complaint, Ex. I) reveals that it appears suspiciously identical to a notary block contained on the Assignment of Mortgage attached as Ex. C.  The only differences are that (a) the assignment is dated "7-21-2011" and the "Satisfaction of Mortgage" is dated "7-21-2014", and (b) the margins on the notary block contained in the "Satisfaction" are reduced, as if it was "copied and pasted" onto that document.

go to the financial institution which orchestrated the Transfer of Funds or issued the Certified

Check and provide such evidence of an actual payment or monetary transaction." (Complaint, Ex.

7).  Plaintiff never provided any such documentation or evidence to CMS, or in support of the

claims asserted in this case.

     The present action represents Plaintiff's second attempt to litigate the same or similar

claims arising out of identical facts in a prior lawsuit filed in 2015 (the "2015 Litigation").  In

*Mixon v. Bank of America*, U.S. District Court for the Western District of Michigan, Case No.

1:15-cv-486, this Court described Plaintiff's claims in a Report and Recommendation as follows:

> Plaintiff initiated the present action in state court, on or about December
> 16, 2014, against Bank of America and 20 unidentified John Does, none
> of whom have been identified or served. This action concerns real
> property located at 243 Devon Road, Battle Creek, Michigan. On or
> about January 28, 2010, Plaintiff obtained a loan in the amount of one
> hundred eighteen thousand, eight hundred eight dollars ($118,808.00).
> As security for this loan, Plaintiff executed a mortgage on the property
> in question. On or about July 21, 2011, Plaintiff's mortgage was
> reassigned from her original lender to BAC Home Loans Servicing.
> BAC Home Loans Servicing later merged into Bank of America.
>
> Plaintiff alleges that this mortgage assignment was fraudulent because
> the underlying debt had, by the date of reassignment, already been paid
> in full. Plaintiff further alleges that the mortgage assignment was invalid
> because: (1) her name was not included on the relevant documents; (2)
> the transaction was accomplished through fraudulent "robo-signatures";
> and (3) Bank of America has no legitimate interest in the property in
> question. (Report and Recommendation, pp 1-2, Ex. L. (Citations
> omitted).

Plaintiff's contention that she paid in full the debt for which the subject mortgage was security was

rejected by this Court in the 2015 Litigation:

> The basis of Plaintiff's claim is her unsubstantiated allegation that she
> paid in full the debt for which the subject mortgage was security. On the
> other hand, Defendant has submitted documentation in the course of this
> action demonstrating that not only has Plaintiff not paid off the debt in
> question, but instead has failed to regularly make her scheduled mortgage
> payments. As a result, the balance of the loan in question, as of March 5,

> 2015, was in excess of one hundred thirty-seven thousand dollars ($137,000.00). Plaintiff's other arguments in support of her quiet title action are frivolous for the reasons articulated in Defendant's motion. In sum, Plaintiff's complaint does not articulate a plausible claim for relief. Accordingly, the undersigned recommends that Defendant's motion to dismiss be granted.  (Ex. L, p. 5) (Citations omitted).

This recommendation was adopted by the Honorable Janet T. Neff on July 17, 2015, and judgment entered in favor of BANA. *Mixon v. Bank of America*, 1:15-cv-486, ECF No. 17-18 (W.D. Mich.) ("Judgment"). (Ex. M).

## **Standard of Review**

To survive a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  A claim is plausible on its face when the plaintiff pleads factual content that allows the court to make the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. The plausibility standard requires more than a sheer possibility that a defendant has acted unlawfully. *Id*.  For the purposes of a motion to dismiss, a court must take all of the factual allegations in the complaint as true, but the court is not bound to accept as true a legal conclusion couched as a factual allegation. *Id*.  A court also need not accept as true "legal conclusions or unwarranted factual inferences." *In Re Packaged Ice Antitrust Litig.*, 723 F. Supp. 2d 987, 1002 (E.D. Mich. 2010). Instead, Rule 12(b)(6) requires that a complaint "contain something more … than … a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Bell Atlantic Corp. v. Twombly*, 550 US 544 (2007) (internal citation omitted).

When deciding a motion under Rule 12(b)(6), the court primarily considers the allegations in the complaint, but may also take into account matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint. *Amini v. Oberlin College*, 259 F.3d

493, 502 (6th Cir. 2001). Because Rule 9(f) of the Federal Rules of Civil Procedure makes allegations of time material, an action may be dismissed under Rule 12(b)(6) when it is apparent from the face of the complaint that the time limit for bringing the claim has passed. *Hoover v. Langston Equipment Associates, Inc.*, 958 F.2d 742, 744 (6th Cir. 1992)(quoting 5 Wright & Miller, Federal Practice And Procedure, § 1308, p. 695)(West 1990)).

## **Argument**

## I. **PLAINTIFF'S CLAIMS ARE BARRED BY RES JUDICATA AND COLLATERAL ESTOPPEL BASED ON THE 2015 LAWSUIT**

### a. **Res Judicata**

The doctrine of res judicata, also known as claim preclusion, provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in [a prior] action." *Allied Erecting and Dismantling Co., Inc. v. Genesis Equipment*, 805 F.3d 701, 708 (6th Cir. 2015) (quoting *Federated Dept Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981). Res judicata applies if the following elements are satisfied: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action. *Allied Erecting*, 805 F.3d at 708-09.

Plaintiff's 2015 Litigation was resolved on the merits thus satisfying the first element. The third element is satisfied as the claims asserted in the present action could have been (or were) asserted in Plaintiff's previous action. The fourth element is satisfied as both suits are for or are based on substantially the same operative facts. The Sixth Circuit has observed:

> Causes of action share an identity where the facts and events creating the right of action and the evidence necessary to sustain each claim are the same. In the words of the Supreme Court, "the now-accepted test in

6

preclusion law for determining whether two suits involve the same claim or cause of action depends on factual overlap. Two suits are for or [are] in respect to the same claim . . . if they are based on substantially the same operative facts, regardless of the relief sought in each suit." *Heike v. Central Michigan University Board of Trustees*, 573 Fed. Appx. 476, 482-83 (6th Cir., July 22, 2014) (citation omitted).

With regard to the second element, CMS is in privity with BANA.  In *Adair v. State*, 470 Mich 105, 122-123 (2004), the Michigan Supreme Court defined "privity" in the context of res judicata as follows: "To be in privity is to be so identified in interest with another party that the first litigant represents the same legal right that the later litigant is trying to assert." *Baraga Co. v. State Tax Comm.,* 466 Mich. 264, 269–270, 645 N.W.2d 13 (2002). The court found that for the purposes of the "privity" requirement for res judicata a perfect identity of the parties is not required, only a "substantial identity of interests" that are adequately presented and protected by the first litigant. *Id.*  A privy also includes one who, after rendition of the judgment, has acquired an interest in the subject matter affected by the judgment through one of the parties, as by inheritance, succession, or purchase. *Wildfong v. Fireman's Fund Ins. Co.*, 181 Mich App 110, 115 (1989).

For purposes of res judicata, in this case CMS should be found to be in privity with BANA.  BANA, the defendant/litigant in the first case, represented the same legal right that CMS, as the defendant/litigant in the latter case, must assert – the validity of the Loan.  Further, CMS succeeded BANA as the servicer of the Loan after rendition of the Judgment and is affected by the Judgment.

### b.  Collateral Estoppel

Collateral estoppel, or issue preclusion, prevents parties from "raising an argument that they already fully litigated in an earlier legal proceeding." *Anderson v. City of Blue Ash*, 798 F.3d 338, 350 (6th Cir. 2015).  More specifically, "issue preclusion, bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the

prior judgment, even if the issue recurs in the context of a different claim.' " *Arkansas Coals, Inc. v. Lawson*, 739 F.3d 309, 320 (6th Cir. 2014) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008). Issue preclusion "bars the relitigation of issues, regardless of the nature of the legal claims." *W.J. O'Neil Co. v. Shepley, Bulfinch, Richardson & Abbott, Inc.*, 700 Fed. Appx. 484, 490 (6th Cir. 2017).

The Sixth Circuit has identified four requirements for the application of collateral estoppel: (1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding. *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 650 (6ᵗʰ Cir. 2007).

The fact that CMS was not a named party to the 2015 Litigation does not restrict the application of issue preclusion. The Sixth Circuit dispensed with any mutuality requirement in cases where a party invokes preclusion *defensively* rather than offensively[6]. *Georgia-Pac. Consumer Prod. LP v. Four-U-Packaging, Inc.*, 701 F.3d 1093, 1098–99 (6th Cir. 2012) ("Mutuality between the parties is not required in defensive collateral estoppel cases so long as 'the plaintiff has had a full and fair opportunity to litigate the contested issue previously.'") Where a litigant brings repeated actions based upon the same operative facts, issue preclusion may still

---

[6] As noted by the Court in *Blonder–Tongue v. University Foundation*, 402 US 313, 329 (1971), "[p]ermitting repeated litigation of the same issue as long as the supply of unrelated defendants holds out reflects either the aura of the gaming table or 'a lack of discipline and of disinterestedness on the part of the lower courts, hardly a worthy or wise basis for fashioning rules of procedure.' *Kerotest Mfg. Co. v. C–O–Two Co.*, 342 U.S. 180, 185, 72 S.Ct. 219, 222, 96 L.Ed. 200 (1952). Although neither judges, the parties, nor the adversary system performs perfectly in all cases, the requirement of determining whether the party against whom an estoppel is asserted had a full and fair opportunity to litigate is a most significant safeguard."

properly apply despite a change in legal theory or the "cast of characters-defendants." *Randles v. Gregart*, 965 F.2d 90, 93 (6th Cir.1992).

Each of the requirements for the application of collateral estoppel are satisfied here. The basis for each of the claims asserted by Plaintiff *in this action* is her assertion she paid in full the debt for which the subject mortgage was security.  That was the precise issue raised and rejected by this Court in the 2015 Litigation. (Ex. L, p. 5; Judgment, Ex. M) (Citations omitted).

There also can be no doubt the remaining requirements for collateral estoppel have been satisfied: the above determination by the Court was necessary to the outcome of the 2015 Litigation; that proceeding resulted in a final judgment on the merits (Ex. M); and, Plaintiff had a full and fair opportunity to litigate issues in the 2015 Litigation.

## II.      PLAINTIFF'S RICO CLAIM (COUNT I) FAILS AS A MATTER OF LAW

To state a valid civil RICO claim, Plaintiff must plead the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity[7]." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 472 US 479, 496 (1985); *Reves v. Ernst & Young*, 507 US 170, 183 (1993); 18 U.S.C. §1962(a), (b), (c). A RICO enterprise is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).  "To satisfy the enterprise requirement, an association-in-fact must be an ongoing organization, its members must function as a continuing unit, and it must be separate from the pattern of racketeering activity in which it engages." *Frank v. D'Ambrosi*, 4 F.3d 1378, 1386 (6th Cir. 1993). "A properly pled RICO claim must cogently allege activity 'that

[7] A "pattern of racketeering activity" requires at least two racketeering acts. *Sedima, supra*; 18 U.S.C. § 1961(5). A plaintiff "must plead sufficient facts to establish the existence of a 'pattern' of racketeering activity . . . . A pattern is not automatically established, however, by a large number of unrelated acts; the acts must be ordered and arranged so as to exhibit 'relatedness' and 'continuity.' " *Vemco, Inc. v. Camardella*, 23 F.3d 129, 133 (6th Cir. 1994).

would show on-going[8], coordinated behavior among the defendants that would constitute an association-in-fact.'" *Begala v. PNC Bank, Ohio, N.A.*, 214 F.3d 776, 781 (6th Cir. 2000), quoting *Frank, supra*. To be found liable under RICO, "a defendant must have not only participated in the scheme, but must have also participated in the operation of management of the enterprise itself." *800537 Ontario Inc. v. Auto Enterprises, Inc.*, 113 F.Supp.2d 1116, 1121 (E.D. Mich. 2000).

Plaintiff is also required to plead and show that a RICO predicate offense not only was a 'but for' cause of his injury, but was the proximate cause as well." *Hemi Group, LLC v. City of New York, NY*, 559 U.S. 1, 8 (2010). "Proximate cause for RICO purposes, we make clear, should be evaluated in light of its common-law foundations; proximate cause thus requires some direct relationship between the injury asserted and the injurious conduct alleged." *Id.* "A link that is 'too remote', 'purely contingent', or 'indirec[t]' is insufficient." *Id.*

Plaintiff has failed to allege any <u>facts</u> establishing (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. Plaintiff has also failed to allege any <u>facts</u> establishing an ongoing organization or control of the purported enterprise by CMS or the other Defendants. A bald assertion that the Defendants are an "enterprise" followed by a string of alleged activities independently conducted by the Defendants is not sufficient to state a claim. (Complaint, ¶¶ 78, 80).

Plaintiff has also failed to plead, and cannot establish, that any predicate offense was the proximate cause of any injury.  As reflected by this Court's finding in the 2015 Litigation, there was no Loan "pay-off" and Plaintiff failed to regularly make her scheduled mortgage payments. The proximate cause of her alleged injuries is her own conduct.  Finally, because CMS only

---

[8]   A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. *H.J., Inc. v. Northwestern Bell Telephone Co*., 492 US 229, 242 (1989). Predicate acts extending over just weeks or months, or threatening no future criminal conduct do not satisfy this requirement. *Id*. (Emphases added).

serviced the Loan for Stanwich, a non-party, for approximately 8 months, Plaintiff cannot establish any on-going, coordinated behavior between CMS and the Defendants, let alone one "over a substantial period of time".

### III. PLAINTIFF'S FRAUD CLAIMS (COUNTS II, IV, VI, XXVII AND XXVIII) FAIL AS A MATTER OF LAW

Counts II ("Common Law Fraud"), IV ("Fraudulent Misrepresentations"), VI ("Violations of 10(b) and 10B-5 of the Securities and Exchange Act of 1934"), XXVII ("Mortgage Fraud") and XXVIII ("Negligent Misrepresentation") each share a common theme that CMS and the other Defendants made false statement of fact to her which they profited from and Plaintiff was damaged by. (Complaint, ¶¶ 108, 118, 131, 269, and 275). Due to the "high risk of abusive litigation," *Twombly*, 550 US at 569 n. 14, a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake." Rule 12(b)(6) of the Federal Rules of Civil Procedure. To comply with that rule a plaintiff must specify (1) what the fraudulent statements were, (2) who made them, (3) when and where the statements were made, and (4) why the statements were fraudulent. *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 US at 555.

To state a claim for fraud[9] a Plaintiff must plead each of the following elements, consistent with the requirements set forth above: (1) that a defendant made a material misrepresentation; (2)

---

[9] The tort of negligent misrepresentation requires proof that: (1) the party justifiably relied to his detriment; (2) on information provided without reasonable care; and (3) by one who owed relying party duty of care. See *Law Offices of Lawrence J. Stockler v. Rose*, 174 Mich App 14 (1989). In a typical 10(b) private action a plaintiff must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation. See *Dura Pharmaceuticals, Inc. v. Broudo*, 544 US 336, 341–342 (2005). At the pleading stage, a complaint stating claims under section 10(b) and Rule 10b–5 must satisfy the dual pleading requirements of Federal Rule of Civil Procedure 9(b).

that it was false; (3) that when the defendant made it, they knew it was false or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that the defendant made it with the intention that it should be acted upon; (5) that a plaintiff acted in reliance upon it; and (6) that the plaintiff thereby suffered injury. *Hi-Way Motor Co. v. Int'l Harvester Co.*, 398 Mich 330, 336 (1976). The absence of any one of these elements is fatal to recovery. *Id.*

Plaintiff has failed to comply with the pleading requirements outlined above.  Other than a *partial* "formulaic recitation" of the elements of various causes of action Plaintiff has failed identify any specific representations made by CMS, or any other Defendant[10].  To the extent Plaintiff contends the "representations" related to her obligation to repay a Loan she did not owe, the 2015 Litigation has already established her position is meritless. As such, each of Plaintiff's fraud-based claims must be dismissed.

## IV.  PLAINTIFF'S FIDUCIARY DUTY CLAIM (COUNT III) FAILS AS A MATTER OF LAW

Count III vaguely asserts "all Defendants" placed themselves "in a position of trust by virtue of their expertise represented by and through their employees" (Complaint, ¶ 111) although she then excludes CMS from wrongful conduct in the following paragraph (Complaint, ¶ 112).  In *In re Sallee*, 286 F.3d 878, 892 (6th Cir. 2002), the court held as follows:  "To make out a claim that a fiduciary relationship existed, the party claiming the fiduciary relationship must first show the relationship existed before the transaction that is the subject of the action. Second, the party claiming a fiduciary relationship must show that reliance was not merely subjective. Third, the party claiming a fiduciary relationship must show that the nature of the relationship imposed a duty upon the fiduciary to act in the principal's interest, even if such action were to the detriment

---

[10]  CMS is not even referenced by name in Count XXVII (Mortgage Fraud) or XXVIII (Negligent Misrepresentation), demonstrating Plaintiff's absolute failure to comply with the applicable pleading requirements.

of the fiduciary." (Citations omitted).  There is generally no fiduciary relationship between a mortgagor and a mortgagee. *In re Sallee*, 286 F.3d at 893.  Courts uniformly hold that "the relationship between a lending institution and its borrower-client is not fiduciary in nature." *Nymark v. Heart Fed. Savings & Loan Ass'n*, 231 Cal. App. 3d 1089, 1093 n. 1 (1991) (claim for breach of fiduciary duty by lender to borrower fails as a matter of law because no such duty exists); *Coyer v. HSBC Mortg. Svcs., Inc.*, 701 F.3d 1104, 1108 (6th Cir. 2012) (affirming dismissal of breach of fiduciary duty claim by borrower against mortgage owner and servicer because "there is generally no fiduciary relationship between a mortgagor and a mortgagee").

The authorities cited above establish that as a general rule, lenders, mortgagees, and mortgage servicers do not have an independent legal duty to exercise reasonable care in relation to a borrower.  There is no basis in law under which Plaintiff can assert a breach of fiduciary duty claim against CMS and it must be dismissed.

## V.  PLAINTIFF'S EXTORTION AND BLACKMAIL CLAIM (COUNT V) FAILS AS A MATTER OF LAW

Plaintiff vaguely asserts CMS and the Defendants "orally and maliciously" threatened to "steal Plaintiff's home" if she did not "pay them money that she does not owe".  (Complaint, ¶ 125).  In short, according to Plaintiff, any effort to collect on the Loan constitutes "blackmail and extortion", citing 18 U.S.C. §§ 873, 875(b), and 880.

Violations of federal criminal law do not give rise to a cause of action by a private plaintiff. It is a "firmly established principle that criminal statutes can only be enforced by the proper authorities of the United States Government and a private party has no right to enforce these sanctions." *Am. Postal Workers Union v. Indep. Postal Sys. Of Am., Inc.*, 481 F.2d 90, 93 (6th Cir. 1973); "[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Diamond v. Charles*, 476 U.S. 54, 64 (1986) (no private right of action

under 18 U.S.C. § 880).  Plaintiff's claims are factually as well as legally meritless and must be dismissed.

## VI.    PLAINTIFF'S NEGLIGENT (COUNT VII) AND INTENTIONAL (COUNT XIII) INFLICTION OF EMOTIONAL DISTRESS CLAIMS FAIL AS A MATTER OF LAW

In Count VII Plaintiff vaguely asserts CMS and the Defendants "have negligently inflicted emotional distress on Plaintiff" by the "violation of her rights".  (Complaint, ¶¶ 139-140).  In Count XIII Plaintiff vaguely asserts that CMS and the Defendants "have violated Plaintiff's rights through intentionally inflicting emotional distress on Plaintiff" by seeking to collect payments she never owed.  (Complaint, ¶¶ 165 – 166).

In *Gillespie v. Battle Creek*, 100 F Supp. 3d 623 (WD Mich, 2015), this Court dismissed a negligent infliction of emotional distress claim when, just as in this case, Plaintiffs' complaint only alleged direct injury to themselves.  "Although Michigan recognizes claims for negligent infliction of emotional distress, such claims are limited to "situations involving the plaintiff's witnessing negligent injury to an immediate family member and suffering severe mental distress causing actual physical harm." *Id.* at 634. *Duran v. Detroit News, Inc.*, 200 Mich App 622 (1993) (Declining to apply the tort of negligent infliction of emotional distress beyond the situation where a plaintiff witnesses negligent injury to a third person and suffers mental disturbance as a result).

In order to state a claim of intentional infliction of emotional distress, a plaintiff must show (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress. *Teadt v. Lutheran Church Mo. Synod*, 237 Mich App 567 (1999). Liability for such a claim has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community. *Id.* "[T]he case is generally

one in which the recitation of facts to an average member of the community would arouse resentment against the actor, and lead the average member of the community to exclaim 'Outrageous!' " *Id.*  It is generally the duty of the trial court to determine whether a defendant's alleged conduct may reasonably be regarded as so 'outrageous.' " *Garretson v. City of Madison Heights*, 407 F.3d 789, 799 (6th Cir. 2005).

Plaintiffs' complaint only alleged direct injury to herself, not to a situation involving her witnessing negligent injury to an immediate family member.  Furthermore, Plaintiff failed to plead, and cannot establish, the elements of an intentional infliction of emotional distress claim.  The only thing "outrageous" is Plaintiff's continued assertion her Loan was paid-in-full.  Both counts must be dismissed.

## VII.   PLAINTIFF'S CLAIM FOR VIOLATION OF MCL 600.3204 (COUNT VIII) FAILS AS A MATTER OF LAW

Count VIII vaguely asserts "Defendants have violated Plaintiff's rights under MCL 600.3204" (Complaint, ¶ 141) although she then excludes CMS from wrongful conduct in the following paragraph (Complaint, ¶ 142).  The basis for her claim is, apparently, her continued assertion that she has "paid for her home in full". (Complaint, ¶ 143).

As previously noted, Plaintiff's assertion she previously paid her loan in full has been established as meritless by the 2015 Litigation.  Furthermore, Michigan law permits a foreclosure by advertisement under MCL 600.3204. A property owner may challenge a foreclosure proceeding—rendering the foreclosure voidable—by demonstrating defects or irregularities in the proceeding and that that they were prejudiced by a defendant's failure to comply with MCL 600.3204. *Kim v. JP Morgan Chase Bank, N.A.*, 493 Mich. 98 (2012). To demonstrate such prejudice, they must show that they would have been in a better position to preserve their interest in the property absent defendant's noncompliance with the statute." *Id*.

15

Plaintiff has not alleged that CMS foreclosed on the Loan. A party not involved in a foreclosure cannot been found to violate MCL 600.3204. *Goss v. CitiMortgage, Inc.*, No. 16-14391, 2017 WL 5499400, at *6 (E.D. Mich. Nov. 16, 2017) (Ex. N). This claim must be dismissed.

## VIII. PLAINTIFF'S CLAIM FOR BREACH OF CONTRACT (COUNT X) FAILS AS A MATTER OF LAW

Count X vaguely asserts "Defendants have violated Plaintiff's rights under the Breach of Contract Tort Laws." (Complaint, ¶ 144). However, CMS is not specifically referred to anywhere in the count.

To state a claim for breach of contract in Michigan, a plaintiff is required to allege: (1) the existence of a valid contract; (2) the terms of the contract; (3) breach of the contract; and (4) an injury caused by the breach. *Webster v. Edward D. Jones & Co., L.P.*, 197 F.3d 815, 819 (6th Cir. 1999). Plaintiff has not alleged or identified any contract between herself and CMS, and none exists, let alone a breach of same. Therefore, this claim must be dismissed.

## IX. PLAINTIFF'S BREACH OF COVENANT AND FAIR DEALING (COUNT XI) AND TORTIOUS BREACH OF IMPLIED COVENANTS (COUNT XX) CLAIMS FAIL AS A MATTER OF LAW

Count XI vaguely asserts "Defendants have violated Plaintiff's rights under the Breach of Covenant and Fair Dealing Laws." (Complaint, ¶ 154). However, CMS is not specifically referred to anywhere in the count, and no specific contract with CMS is identified. Count XX vaguely asserts that "Defendants have violated Plaintiff's rights under the Tortious Breach of Implied Covenants." (Complaint, ¶ 210). Again, no specific contract with CMS is identified. In fact, Plaintiff contends no contracts even exist as she insists the loan and loan modification agreements were fraudulent. (Complaint, ¶¶ 5, 19, 211, 212).

16

In addition to the significant factual and pleading deficiencies noted above, the Sixth Circuit has held that no such independent causes of action are recognized under Michigan law[11]. For example, in *Coyer v. HSBC Mortg. Svcs., Inc.*, 701 F.3d 1104, 1108 (6th Cir. 2012), the court affirmed the district court's dismissal of a claim for breach of an implied covenant of good faith and fair dealing in a similar case because "Michigan does not recognize a claim for breach of an implied covenant of good faith and fair dealing....", citing *Belle Isle Grill Corp. v. City of Detroit*, 256 Mich App 463 (2003).  See also *Fodale v. Waste Management of Michigan, Inc.*, 271 Mich App 11, 35 (2006) (Michigan law simply "does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing).  Therefore, these claims must be dismissed.

## X.  PLAINTIFF'S NEGLIGENCE CLAIM (COUNT XII) FAILS AS A MATTER OF LAW

Count XII vaguely asserts "Defendants have violated Plaintiff's rights through negligence." (Complaint, ¶ 159). Other than a general statement CMS somehow caused Plaintiff "damages", CMS is not specifically referred to anywhere in the count, nor is any "duty" or "breach of duty" attributed to CMS.  Again, the focus of Plaintiff's claim is her contention that her supposed "pay-off" of the Loan was not recognized, a contention this Court already determined to be invalid in the 2015 Litigation.

In *Coyer, supra,* the Sixth Circuit affirmed the district court's dismissal of a negligence claim.  The court noted that under Michigan law, a plaintiff alleging a claim of negligence must demonstrate the following four elements: 1) a duty owed to the plaintiff by the defendant, 2) breach of that duty, 3) causation, and 4) damages."  *Coyer*, 701 F.3d at 1108, citing *Brown v. United*

---

[11]   The case law cited by Plaintiff in ¶ 211 of her Complaint are each based on Nevada law, not Michigan law and therefore not applicable to this action.

17

*States*, 583 F.3d 916, 920 (6th Cir. 2009) and *Case v. Consumers Power Co.*, 463 Mich 1, 6 (2000).

Plaintiff's vague allegations fail to identify any of the above prima facie pleading requirements[12].

Lenders, mortgagees, and mortgage servicers generally do not owe any independent legal duty to a borrower. *Elson v. Deutsche Bank Nat. Tr. Co.*, No. 11-14100, 2012 WL 1902916, at *11 (E.D. Mich. May 25, 2012) (citing *Ulrich v. Federal Land Bank of St. Paul*, 192 Mich App 194 (1991) (Ex. O).  Furthermore, any negligence claim relating to her supposed 2012 "pay-off" would be time barred by the applicable three-year statute of limitation. See MCL 600.5805.

## XI.    PLAINTIFF'S FDCPA CLAIM (COUNT XIV) FAILS AS A MATTER OF LAW

Count XIV vaguely asserts "Defendants have violated Plaintiff's rights under the Fair Debt Collection Practices Act" ("FDCPA"). (Complaint, ¶ 174). CMS is not specifically referred to anywhere in the count, but her claims appear to be again based on her contention the Loan was "paid-off", a contention this Court already determined to be invalid in the 2015 Litigation.  She has otherwise failed to plead or identify any specific act by CMS that was allegedly a violation of the FDCPA.

Although the factual and pleading deficiencies noted above are themselves significant defects, federal courts have recognized "[C]reditors, mortgagors, and mortgage servicing companies are not debt collectors and are statutorily exempt from liability under the FDCPA." *Mohlman v. Long Beach Mortg.*, No. 12-10120, 2013 WL 490112 (E.D. Mich. Feb. 8, 2013) (Ex. P), citing *Scott v. Wells Fargo Home Mortg. Inc.*, 326 F.Supp.2d 709, 718 (E.D.Va. 2003) and *Givens v. HSBC Mortg. Services*, 08–10985, 2008 WL 4190999 (E.D. Mich. Aug. 26, 2008).

---

[12]  To the extent Plaintiff's claim is based upon the already rejected "pay-off" argument, CMS was not a party to those events in 2012 and, therefore, cannot be found negligent when it was not a party to that transaction.  See *Coyer, supra* at 1108 (Purchaser of a mortgage cannot be found liable for negligence related to the origination of the loan as it was not a party to that transaction).

Furthermore, any FDCPA claims against CMS are time barred.  An action to enforce any liability created by a violation of the FDCPA must be brought within one year from the date on which the violation occurs.  15 U.S.C. § 1692k(d).  CMS' limited role as a servicer on the Loan terminated on April 30, 2017. (Ex. I). This action was filed on May 3, 2018, more than a year after CMS's role and dealings with Plaintiff ended.  (Ex. I). For the reasons noted above, this claim must be dismissed.

## XII. PLAINTIFF'S CLAIMS FOR DECLARATORY RELIEF (COUNT XV), INJUNCTIVE RELIEF (COUNT XVI), AND UNJUST ENRICHMENT (COUNT XIX) FAIL AS A MATTER OF LAW

In Count XV of her Complaint Plaintiff asserts a "dispute has arisen" between her and the Defendants with regard to the "fraudulent loan" and "attempts to foreclose".  (Complaint, ¶ 188). In Count XVI she asserts "irreparable harm and injury" has already resulted, that she previously sold her home for $1.00, but yet still asks the Court to find her to be the "owner" of the Property. (Complaint, ¶¶ 193 - 195).  In Count XIX she alleges the Defendants have "violated Plaintiff's rights under the Unjust Enrichment Laws."  (Complaint, ¶ 204).

Each of the above claims is based in equity.  The Michigan Supreme Court has held that "[t]he clean hand maxim is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." *Mudge v Macomb County*, 458 Mich 87, 109, n 23 (1998). *McKay v Palmer*, 170 Mich App 288, 293 (1988) (barring plaintiff's quiet title suit on the doctrine of unclean hands).  It is undisputed that Plaintiff failed to make the payments due under the Loan. In addition, Plaintiff continues to assert claims of "paid-in-full" when that position has previously been rejected by this Court.  Finally, Plaintiff has admitted she engaged in a fraudulent transfer of her home in order to avoid foreclosure. (Complaint, ¶ 87).  She has,

19

therefore, come to this Court with unclean hands and cannot invoke the equitable remedies of declaratory relief, injunctive relief, and unjust enrichment.

The pleading for each of the above counts is also defective.  A claim for a declaratory judgment is not an independent cause of action. *Davis v. United States*, 499 F.3d 590, 594 (6th Cir. 2007).  It only provides courts with discretion to fashion a remedy. *Heydon v. MediaOne of Southeast Mich., Inc.*, 327 F.3d 466, 470 (6th Cir. 2003).  Plaintiff's "declaratory relief" claim is also deficient because she failed to plead an actual and justiciable controversy exists.  Plaintiff's claim for injunctive relief is defective because injunctive relief is a remedy and not an independent cause of action. *Terlecki v. Stewart*, 278 Mich App 644, 663 (2008). "It is not the remedy that supports the cause of action, but rather the cause of action that supports a remedy." *Henry v. Dow Chem. Co.*, 473 Mich 63, 96–97 (2005). Plaintiff cannot advance a request for an injunction without a legally cognizable underlying substantive cause of action. *Terlecki, supra.*  Finally, Plaintiff's unjust enrichment claim must fail because express contracts exist, the Note and Mortgage. Courts cannot imply a contract in such instances. *Barber v. SMH (US), Inc.*, 202 Mich App 366, 375 (1993).

## XIII.   PLAINTIFF'S CLAIMS FOR VIOLATIONS OF THE CONSUMER FINANCIAL PROTECTION ACT (COUNTS XVII AND XVIII) FAIL AS A MATTER OF LAW

In Counts XVII and XVIII of her Complaint Plaintiff allege the Defendants have "violated Plaintiff's rights under the Consumer Financial Protection Act", citing 12 U.S.C. 5481, et seq. (Complaint, ¶¶ 197, 200).  Plaintiff fails to cite to any specific provision of the Act allegedly violated by CMS or any Defendant, nor does she set forth any factual allegations regarding alleged violations.  In addition to the substantial factual and pleading deficiencies noted above, the rules promulgated by the CFPA are only enforceable in an administrative proceeding brought by the

CFPB or a state regulator.  They do not provide for a private right of action.  *Schmidt v. PennyMac Loan Services, LLC*, 106 F. Supp. 3d 859, 869 (ED Mich 2015) (holding that statutes that direct federal agencies to issue rules and regulations rarely create private rights of action.); *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001) (no private right of action unless expressly creates one.) Therefore, Plaintiff's claims must be dismissed.

## XIV.  PLAINTIFF'S CLAIM FOR TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS (COUNT XXI) FAILS AS A MATTER OF LAW

In Count XXI of her Complaint Plaintiff alleges the Defendants have "violated Plaintiff's rights through Tortious interference with Plaintiff's business relationships".  (Complaint, ¶ 217). Although not clear, it appears this claims relates to a supposed loss of business in her interior design business. (Complaint, ¶ 218). Plaintiff fails to plead any acts by CMS supporting her claim. In addition to the significant factual and pleading deficiencies noted above, Plaintiff has failed to plead the elements required for her claim.

To prevail on a claim of tortious interference with a business relationship or economic expectancy under Michigan law, Plaintiffs must plead and prove each of the following: (i) the existence of a valid business relationship or expectancy; (ii) knowledge of the relationship or expectancy on the part of the defendant; (iii) intentional interference causing or inducing a termination of the relationship or expectancy; and (iv) resultant actual damage. *Saab Auto. AB v. Gen. Motors Co.*, 770 F.3d 436, 440 (6th Cir. 2014), citing *Lucas v. Monroe Cnty.*, 203 F.3d 964, 979 (6th Cir. 2000). Plaintiff has failed to plead these required elements.  She has not alleged any valid business relationship or expectancy. She has not pled CMS had knowledge of any valid business relationship or expectancy, or that CMS intentionally interfered with any legitimate expectancy. Finally, she has not pled any facts showing how she was purportedly damaged. Therefore, Plaintiff's claim must be dismissed.

## XV.   PLAINTIFF'S CLAIM FOR DEFAMATION OF CHARACTER (LIBEL) (COUNT XXIV) FAILS AS A MATTER OF LAW

In Count XXIV of her Complaint Plaintiff alleges the Defendants have "violated Plaintiff's rights under the Defamation of Character laws."  (Complaint, ¶ 236).   Once again, Plaintiff has failed to plead any acts, statements, or communications by CMS supporting her claim.

Under Michigan law, in order to show libel, a plaintiff must show four elements: 1) a false and defamatory statement concerning the plaintiff, 2) an unprivileged communication to a third party, 3) fault amounting to at least negligence on the part of the publisher, and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by publication.  *Nichols v. Moore*, 477 F.3d 396, 399 (6th Cir. 2007) (quoting *Rouch v. Enquirer & News*, 440 Mich 238, 251 (1992). Michigan law imposes liability only for statements that are materially false. *Rouch*, *supra*. The test for materiality "look[s] to the sting of the [statement] to determine its effect on the reader; if the literal truth produced the same effect, minor differences [are] deemed immaterial." *Id*.

Plaintiff has failed to plead any of the above requirements, not can she.  Furthermore, even if all the pleading deficiencies could be remedied the claim would time barred.  MCL 600.5805(7) provides that the period of limitation is one year for an action charging libel or slander. Such a claim accrues at the time the wrong was committed regardless of the time when damage results. MCL 600.5827.  CMS's limited role as a servicer on the Loan terminated on April 30, 2017. (Ex. I). This action was filed on May 3, 2018, *more than a year after CMS ceased communications with Plaintiff*.  For the reasons noted above, this claim must be dismissed.

## XVI.   COUNTS XXII, XXIII, XXV AND XXVI OF THE COMPLAINT DO NOT ASSERT CLAIMS AGAINST CMS

Counts XXII (Violation of TCPA), XXIII (Violation of 18 USC 1038), XXV (Slander of Title), and XXVI (Civil Conspiracy) of the Complaint do not assert claims against CMS, only referring to Defendants BANA and Trott.  Although each of those counts is also meritless and fail to state claims upon which relief may be granted, CMS relies upon the arguments set forth in Section I of the Argument, above, to support the dismissal of these claims to the extent Plaintiff contends they do, in fact, pertain to CMS.

### Conclusion

As more fully detailed above, Plaintiff has failed to state any claims against CMS upon which relief can be granted.  Accordingly, CMS respectfully requests the entry of an order: (i) dismissing all of Plaintiff's claims with prejudice; (ii) awarding CMS its costs and fees, including attorneys' fees; and (iii) granting CMS any further relief the Court deems just.

Respectfully submitted,

Lipson Neilson P.C.

/s/ Thomas G. Costello
Thomas G. Costello (P42973)
David G. Michael (P68508)
3910 Telegraph Road, Suite 200
Bloomfield Hills, MI 48302-1461
(248) 593-5000
tcostello@lipsonneilson.com
dmichael@lipsonneilson.com
Dated: August 6, 2018                    Attorneys for Defendant Carrington Mortgage Services, LLC

23

# EXHIBIT A

MIXON
Loan Number 1001064014
Case Number 263-4601446-703
MIN 100052210010640142

# NOTE

JANUARY 28, 2010
[Date]

243 DEVON ROAD, BATTLE CREEK, MICHIGAN 49015
[Property Address]

**1.   PARTIES**
"Borrower" means each person signing at the end of this Note, and the person's successors and assigns.
"Lender" means TOP FLITE FINANCIAL INC and its successors and assigns.

**2.   BORROWER'S PROMISE TO PAY; INTEREST**
In return for a loan received from Lender, Borrower promises to pay the principal sum of ONE HUNDRED EIGHTEEN THOUSAND EIGHT HUNDRED EIGHT AND 00/100ths Dollars (U.S.$118,808.00), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of FIVE AND ONE-HALF percent (5.500%) per year until the full amount of principal has been paid.

**3.   PROMISE TO PAY SECURED**
Borrower's promise to pay is secured by a Mortgage, Deed of Trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

**4.   MANNER OF PAYMENT**
(A) Time
Borrower shall make a payment of principal and interest to Lender on the 1ST day of each month beginning on MARCH 1, 2010. Any principal and interest remaining on the 1ST day of FEBRUARY, 2040, will be due on that date, which is called the "Maturity Date."
(B) Place
Payment shall be made at 11885 E 12 MILE RD STE 303A, WARREN, MI 48093 or at such place as Lender may designate in writing by notice to Borrower.
(C) Amount
Each monthly payment of principal and interest will be in the amount of U.S. $674.58. This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.
(D) Allonge to this note for payment adjustments
If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box.]

☐ Graduated Payment Allonge          ☐ Other [Specify]

☐ Growing Equity Allonge



610   215356291   N   001   001

FHA MULTISTATE FIXED RATE NOTE
GV1028

*(page 1 of 3 pages)*

6/96

5.   BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and, permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

6.   BORROWER'S FAILURE TO PAY

(A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR percent ( 4.00%) of the overdue amount of each payment.

(B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

(C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

7.   WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

8.   GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

FHA MULTISTATE FIXED RATE NOTE
GV1028                                 (page 2 of 3 pages)                                6/96



1 0 0 1 0 6 4 0 1 4   G V 1 0 2 8



9. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_Keturah Mixon_ _____(Seal)
KETURAH MIXON                        -Borrower

_____(Seal)
                                     -Borrower

_____(Seal)
                                     -Borrower

_____(Seal)
                                     -Borrower

*[Sign Original Only]*

PAY TO THE ORDER OF

FRANKLIN AMERICAN MORTGAGE COMPANY
WITHOUT RECOURSE

TOP FLITE FINANCIAL INC

BY: _Bernita J. Hill, SRVP, AIF_
BERNITA J. HILL, SR. VP, AIF
FRANKLIN AMERICAN MORTGAGE COMPANY
AS AGENT AND ATTORNEY IN FACT

PAY TO THE ORDER OF
Bank of America, N.A.

WITHOUT RECOURSE
FRANKLIN AMERICAN MORTGAGE COMPANY

BY: _Bernita J. Hill, SR. VP._
Bernita J. Hill, Sr. V. P.

PAY TO THE ORDER OF

WITHOUT RECOURSE
BANK OF AMERICA, N.A.

BY _Michele Sjolander_
MICHELE SJOLANDER
SENIOR VICE PRESIDENT

FHA MULTISTATE FIXED RATE NOTE
GV1028                                                    6/96
                        *(page 3 of 3 pages)*

1  0  0  1  0  6  4  0  1  4    G  V  1  0  2  8

# EXHIBIT B

Branch :ASA    User :AK02



STATE OF MICHIGAN - CALHOUN COUNTY
RECORDED
02/12/2010  9:35:36 AM
ANNE B. NORLANDER - CLERK/REGISTER OF DEEDS
$35.00                RECEIPT # 81510, STATION 8
                      MORTGAGE



LIBER 3522    PAGE 41

When Recorded Mail To:
TOP FLITE FINANCIAL INC
11885 E 12 MILE RD STE 303A
WARREN, MI 48093

NIXON
——————————————[Space Above This Line For Recording Data]——————————————

## MORTGAGE

Loan Number 1001064014
Case Number 263-4601446-703
MIN 10005221001064014 2

THIS MORTGAGE ("Security Instrument") is given on JANUARY 28, 2010. The mortgagor is KETURAH MIXON, UNMARRIED whose address is 243 DEVON ROAD, BATTLE CREEK, MICHIGAN 49015 ("Borrower"). This Security Instrument is given to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") (SOLELY AS NOMINEE FOR LENDER, AS HEREINAFTER DEFINED, AND LENDER'S SUCCESSORS AND ASSIGNS), AS BENEFICIARY. MERS IS ORGANIZED AND EXISTING UNDER THE LAWS OF DELAWARE, AND HAS AN ADDRESS AND TELEPHONE NUMBER OF POST OFFICE BOX 2026, FLINT, MICHIGAN 48501-2026, TELEPHONE (888)679-MERS. TOP FLITE FINANCIAL INC, a corporation organized and existing under the laws of , and whose address is 11885 E 12 MILE RD STE 303A, WARREN, MI 48093 ("Lender"). Borrower owes Lender the principal sum of ONE HUNDRED EIGHTEEN THOUSAND EIGHT HUNDRED EIGHT AND 00/100ths Dollars (U.S. $118,808.00). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on FEBRUARY 1, 2040. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under Paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, warrant, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in CALHOUN County, Michigan:



City of Battle Creek



Parcel # 3320-07-079-2

GV2035-1 (696) Page 1 of 8                                   FHA Michigan Mortgage



STATE OF MICHIGAN - CALHOUN COUNTY
FILED
02/11/2010  1:15:10 PM
ANNE B. NORLANDER - CLERK/REGISTER OF DEEDS

STATE OF MICHIGAN - CALHOUN COUNTY
FILED
02/23/2010  1:14:40 PM
ANNE B. NORLANDER - CLERK/REGISTER OF DEEDS

#1509

Branch :ASA   User :AK02

 LIBER 3522 PAGE 42

LOTS 82 AND 83, GAGE-INGRAM SUPERVISORS PLAT, ACCORDING TO THE RECORDED PLAT THEREOF, AS RECORDED IN LIBER 9 OF PLATS, PAGE 49, CALHOUN COUNTY RECORDS.

which has the address of 243 DEVON ROAD, BATTLE CREEK,                              [Street, City].

Michigan  49015                     ("Property Address");
                [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest and Late Charge. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. Monthly Payment of Taxes, Insurance, and Other Charges. Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under Paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

GV2035-2 (696) Page 2 of 8                                          FHA Michigan Mortgage

Branch :ASA    User :AK02

 LIBER 3522    PAGE 43

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. Application of Payments. All payments under Paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4. Fire, Flood and Other Hazard Insurance. Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in Paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in Paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

GV2035-3 (696)  Page 3 of 8                                                            FHA Michigan Mortgage

1 0 0 3 0 6 4 0 3 4    G V 2 0 3 5

Branch :ASA   User :AK02

LIBER 3522   PAGE 44

5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in Paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in Paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. Charges to Borrower and Protection of Lender's Rights in the Property. Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. Fees. Lender may collect fees and charges authorized by the Secretary.

GV2035-4 (696)  Page 4 of 8                                            FHA Michigan Mortgage

1 0 0 1 0 6 4 0 1 4   G V 2 0 3 5

Branch :ASA    User :AK02

LIBER 3522   PAGE 45

9. **Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

GV2035-5 (696) Page 5 of 8                                                         FHA Michigan Mortgage

100106401 4    6 V 2 0 3 5

LIBER 3522   PAGE 46

12. Successors and Assigns Bound; Joint and Several Liability; Co-signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of Paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. Governing Law; Severability. This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. Borrower's Copy. Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. Hazardous Substances. Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this Paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this Paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. Assignment of Rents. As permitted by applicable law, Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

GV2035-6 (696) Page 6 of 8                                          FHA Michigan Mortgage

1 0 0 3 0 6 4 0 1 4   G V 2 0 3 5

Branch :ASA   User :AK02

LIBER 3522   PAGE 47

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, subject to applicable law, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. Foreclosure Procedure. If Lender requires immediate payment in full under Paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give notice of sale to Borrower in the manner provided in Paragraph 13. Lender shall publish and post the notice of sale, and the Property shall be sold in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. Release. Upon payment of all sums secured by this Security Instrument, Lender shall prepare and file a discharge of this Security Instrument without charge to Borrower.

20. Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

☐ Condominium Rider                    ☐ Growing Equity Rider

☐ Planned Unit Development Rider       ☐ Graduated Payment Rider

☐ Other(s)
   [specify]

GV2035-7 (696) Page 7 of 8                                    FHA Michigan Mortgage

1 0 0 1 0 6 4 0 1 4   G V 2 0 3 5

Branch :ASA    User :AK02

LIBER 3522    PAGE 48

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.
Witnesses:

Please Print Name                    KETURAH MIXON                          -Borrower

Please Print Name                                                          -Borrower

                                        (Seal)
                        -Borrower                           -Borrower

STATE OF MICHIGAN,                      Calhoun County ss:

The    foregoing    instrument    was    acknowledged    before    me    this    28    day    of
Jan.                      , 20 10 , by KETURAH MIXON, Unmarried

My Commission Expires:                   Notary Public,
                                         (Please print name)
                                         Acting in _____ County, Michigan

This instrument was prepared by
GREGG & VALBY, L.L.P.                    LISA SKIXWORTH
1700 WEST LOOP SOUTH, SUITE 200          Notary Public, State of Michigan
HOUSTON, TEXAS  77027                    County of Berrien
                                         My Commission Expires June 20, 2012
                                         Acting in the County of Calhoun

RETURN TO:
Abstract Title Agency
8200 Old 13 Mile Rd., Suite 101
Warren, MI 48093

GV2035-8 (696)  Page 8 of 8                        FHA Michigan Mortgage

1  0  0  1  0  6  4  0  1  4      G  V  2  0  3  5

# EXHIBIT C



STATE OF MICHIGAN - CALHOUN COUNTY
RECORDED
07/20/2011  10:02:45 AM
ANNE B. NOFELANDER - CLERK/REGISTER OF DEEDS
RECEIPT# 88073, STATION 8
$14.00  MORTGAGE

 LIBER 3636 PAGE 892

| This space for Recorder's use | | |
|---|---|---|
| DocID# 16621535619117845 | Recording Requested By:<br>Bank of America<br>Prepared By:<br>Srbui Muradyan<br>888-603-9011<br>450 E. Boundary St.<br>Chapin, SC 29036 | When recorded mail to:<br>CoreLogic<br>450 E. Boundary St.<br>Attn: Release Dept.<br>Chapin, SC 29036 |

Property Address:
243 Devon Rd
Battle Creek, MI 49015-4066
LOS AM  14210333        7/20/2011

MIN #: 100052210010640142          MERS Phone #: 188-679-6377

## ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is 3300 S.W. 34TH AVENUE, SUITE 101 OCALA, FL 34474 does hereby grant, sell, assign, transfer and convey unto BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME  LOANS SERVICING, LP whose address is 400 NATIONAL WAY, SIMI VALLEY, CA 93065 all beneficial interest under that certain Mortgage described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Mortgage.

Original Lender:     TOP FLITE FINANCIAL INC
Borrower(s):         KETURAH MIXON, UNMARRIED
Date of Mortgage:    1/28/2010
Original Loan Amount: $118,808.00
Recorded in Calhoun County, MI on: 2/12/2010, book 3522, page 41 and instrument number N/A

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on
7/21/11

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

By: _____
Christopher Herrera, Assistant Secretary

State of California
County of Ventura

On 7-21-2011 before me, Norma Rojas, Notary Public, personally appeared Christopher Herrera, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public: Norma Rojas                    (Seal)
My Commission Expires: 2-14-2015

NORMA ROJAS
Commission # 1025662
Notary Public - California
Ventura County
My Comm. Expires Feb 14, 2015

14-62994   4

# EXHIBIT D

Recording Requested by

Bank of America, N.A.
WHEN RECORDED MAIL TO:
WHEN RECORDED MAIL TO:
RECORDING DEPARTMENT
ATTN:ANTHONY GILMORE
1001 LIBERTY AVE STE. 675
PITTSBURGH,PA 15222

3320-07-074-2

This document was prepared by Bank of America, N.A.

See Exhibit B for assignments of record if applicable

STATE OF MICHIGAN - CALHOUN COUNTY
RECORDED
06/08/2012 11:12:05 AM
ANNE B. NORLANDER - CLERK/REGISTER OF DEEDS
RECEIPT# 98594, STATION 8
$23.00   MORTGAGE

LIBER 3710   PAGE 147

Space Above for Recorder's Use

## LOAN MODIFICATION AGREEMENT

This Loan Modification Agreement (the "Agreement"), made on February 8, 2012 between KETURAH MIXON (the "Borrower(s)") and Bank of America, N.A., Original Lender/Beneficiary Lender or Servicer ("Lender"), amends and supplements that certain (Mortgage/Deed of Trust) (the "Security Instrument") dated the 12th day of February, 2010 which covers the real and personal property described in the Security Instrument and defined therein as the 'Property' (See Exhibit A for Legal Description if applicable), located at 243 DEVON ROAD, BATTLE CREEK, MI 49015.
The real property described being set forth as follows:

### SAME AS IN SAID SECURITY INSTRUMENT

In consideration of the mutual promises and agreements exchanged, the parties hereto agree to modify the Security Instrument as follows:

The fifth [and sixth] sentence[s] of the first paragraph of the Security Instrument is[are] hereby amended to read in its[their] entirety as follows:

WDGGovLnModAgree                    Page 1 of 4                    WDGLMAGM 7382 07/20/2007

STATE OF MICHIGAN - CALHOUN COUNTY
FILED
06/04/2012 1:23:34 PM
ANNE B. NORLANDER - CLERK/REGISTER OF DEEDS

 LIBER 3710   PAGE 148

Borrower owes Lender the principal sum of one hundred thirty eight thousand two hundred thirty one and 31/100, (U.S. Dollars) ($138,231.31). This debt is evidenced by Borrower's note dated the same date as the Security Instrument, as amended and restated as of the date herewith ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on March 1, 2042. The Borrower[s] shall comply with all other covenants, agreements and requirements of the Security Instrument. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Security Instrument. Except as otherwise specifically provided in this Agreement, the Security Instrument shall remain unchanged, and the Borrower[s] and Bank of America, N.A. shall be bound by, and comply with all of the terms and provisions thereof, as amended by this Agreement, and the Security Instrument shall remain in full force and effect and shall continue to be a first lien on the above-described property. All capitalized terms not defined herein shall have the same meanings as set forth in the Security Instrument.

SIGNED AND ACCEPTED THIS ___17___ DAY OF _Feb 2012_
BY

_____
KETURAH MIXON

_____

Marital Status (mark one):            Marital Status (mark one):
__Single ✓Married __Divorced        __Single __Married __Divorced
__Widowed                            __Widowed
__Decline to Provide __Other: _____   __Decline to Provide __Other: _____

(ALL SIGNATURES MUST BE ACKNOWLEDGED)

State of _MI_ , County of _Calhoun_  On this _17_ day of _Feb 2012_
____ before me the undersigned, a Notary Public in and for said State, personally appeared KETURAH MIXON known to me, or proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the foregoing Instrument and acknowledged that _MI DL_ executed the same.

WITNESS my hand and official seal.

_____ Notary Signature

_Kristin Davison_ Notary Public Printed Name  Place Seal Here

_June 16, 2017_ Notary Public Commission Expiration Date

KRISTIN L DAVISON
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF CALHOUN
My Commission Expires June 16, 2017
Acting in the County of _Calhoun_

WDGGovLnModAgree                 Page 2 of 4           WDGLMAGM 7382 07/20/2007

 LIBER 3710   PAGE 149

THIS SECTION IS FOR INTERNAL Bank of America, N.A. USE ONLY

SIGNED THIS DATE: _____MAR 1 6 2012_____

By: _Stephanie Casillas_

Name: ___Stephanie Casillas___

Title: ___Assistant Secretary___

Bank of America, N.A., successor by merger to BAC Home Loans Servicing, LP

STATE OF _COLORADO_      COUNTY OF _BROOMFIELD_
On _5/16/12_ before me, _GOASUE XIONG_ Notary Public, personally
appeared _STEPHANIE CASILLAS_
personally known to me (or proved to me on the basis of satisfactory evidence) to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me
that he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signatures (s) on the instrument the person(s), or entity upon behalf of which the
person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ Notary Signature

_GOASUE XIONG_ Notary Public Printed Name   Place Seal Here

_12/27/15_ Notary Public Commission Expiration Date

```
GOASUE XIONG
NOTARY PUBLIC, STATE OF COLORADO
```
My Comm. Expires December 27, 2015

Branch :ASA    User :AK02

 LIBER 3710  PAGE 150

**EXHIBIT A**
**LEGAL DESCRIPTION**

The following described property located in the City of Battle Creek, Calhoun County, Michigan:

LOTS 82 AND 83, GAGE-INGRAM SUPERVISORS PLAT, ACCORDING TO THE RECORDED PLAT THEREOF, AS RECORDED IN LIBER 9 OF PLATS, PAGE 49, CALHOUN COUNTY RECORDS.

Parcel # 3320-07-079-2

# EXHIBIT E



STATE OF MICHIGAN - CALHOUN COUNTY
RECORDED
07/07/2017 9:19:31 AM
ANNE B NORLANDER - CLERK/REGISTER

RECEIPT# 1659229, STATION 5
$30.00 MORTGAGE



LIBER 4152 PAGE 686

CORPORATION ASSIGNMENT OF MORTGAGE

**RECORD FIRST**

Doc. ID# 40021535629120582
Commitment# 3308

For value received, the undersigned, BANK OF AMERICA, N.A. SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING LP, FKA COUNTRYWIDE HOME LOANS SERVICING LP., 4909 SAVARESE CIR. TAMPA, FL. 33634, hereby grants, assigns and transfers to:
SECRETARY OF HOUSING AND URBAN DEVELOPMENT
451 SEVENTH STREET SW, WASHINGTON DC 20410

All its interest under that certain Mortgage dated 1/28/10, executed by: KETURAH MIXON, UNMARRIED, Mortgagor as per MORTGAGE recorded as Instrument No. N/A on 2/12/10 in Book 3522 Page 41 of official records in the County Recorder's Office of CALHOUN County, MICHIGAN.
     Tax Parcel = 3320-07-079-2
Original Mortgage $118,808.00
243 DEVON ROAD, BATTLE CREEK, MI 49015

     (See attached Exhibit for Legal Description)

Together with the Note or Notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Mortgage.

Dated: 07/19/2016          BANK OF AMERICA, N.A. SUCCESSOR BY MERGER TO BAC HOME
                           LOANS SERVICING LP, FKA COUNTRYWIDE HOME LOANS SERVICING
                           LP.

                           By _____
                           JAMES J. QUINLAN, ASSISTANT VICE PRESIDENT

State of Florida
County of Hillsborough

The foregoing instrument was acknowledged before me this 19 day of Jul. 2016, by JAMES J. QUINLAN as ASSISTANT VICE PRESIDENT for BANK OF AMERICA, N.A. SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING LP, FKA COUNTRYWIDE HOME LOANS SERVICING LP.


LORI DAVIS-CROSS
Notary Public, State of Florida
Commission# FF 242273
My comm. expires June 21, 2019

_____
(Signature of Notary Public-State of Florida)

Lori Davis-Cross
, Notary Public        6/21/2019

Personally Known ✓ or
Produced Identification N/A Type of Identification Produced N/A

Prepared by: DAVID MACHOWSKI
4909 SAVARESE CR.
TAMPA,FL 33634

Recording requested by AND
When recorded mail to:

     Orion Financial Group, Inc,
     2860 Exchange Blvd., Suite 100
     Southlake, TX 76092

Orion Financial Group Inc.

MIXON, KETURAH                    *17082405*
CMS/OPD/AOM/HUD/2016
SECRETARY OF HOUSING AND URBAN DEVELOPMENT

STATE OF MICHIGAN - CALHOUN COUNTY
FILED
07/03/2017 12:16:20 PM
ANNE B NORLANDER - CLERK/REGISTER OF DEEDS

# LEGAL DESCRIPTION

LOTS 82 AND 83, GAGE-INGRAM SUPERVISORS PLAT, ACCORDING TO THE RECORDED PLAT THEROF, AS RECORDED IN LIBER 9 OF PLATS, PAGE 49, CALHOUN COUNTY RECORDS.

LIBER 4152   PAGE 687

# EXHIBIT F



STATE OF MICHIGAN - CALHOUN COUNTY
RECORDED
07/07/2017 9:20:18 AM
ANNE B NORLANDER - CLERK/REGISTER

RECEIPT# 1659230, STATION 5
$30.00     MORTGAGE



LIBER **4152**     PAGE **688**

2

## CORPORATION ASSIGNMENT OF MORTGAGE

RECORD SECOND

Doc. ID# 02421535629144346
Commitment# 3308

For value received, the undersigned, SECRETARY OF HOUSING AND URBAN DEVELOPMENT by
CARRINGTON MORTGAGE SERVICES, LLC ITS ATTORNEY IN FACT, 451 SEVENTH STREET SW,
WASHINGTON DC 20410, hereby grants, assigns and transfers to:
    WILMINGTON SAVINGS FUND SOCIETY, FSB AS TRUSTEE FOR STANWICHMORTGAGE
LOAN TRUST A
    1600 SOUTH DOUGLASS RD. SUITE 200-A ANAHEIM, CA. 92806

All its interest under that certain Mortgage dated  1/28/10, executed by: KETURAH
MIXON, UNMARRIED, Mortgagor as per MORTGAGE recorded as Instrument No. N/A on
2/12/10 in Book 3522 Page 41 of official records in the County Recorder's Office
of CALHOUN County, MICHIGAN.
    Tax Parcel =  3320-07-079-2
Original Mortgage $118,808.00
243 DEVON ROAD, BATTLE CREEK, MI 49015

    (See attached Exhibit for Legal Description)

Together with the Note or Notes therein  described or referred to, the money due
and to become due thereon with interest, and all rights accrued or to accrue under
said Mortgage.

Dated: 10-26-2016     SECRETARY OF HOUSING AND URBAN DEVELOPMENT by CARRINGTON
                      MORTGAGE SERVICES, LLC ITS ATTORNEY IN FACT

                      By_____
                                          Chris Lechianski, AVP of Default
                                          for Carrington Mortgage Services, LLC, Attorney in Fact

State of California
County of _____

On _____ before me, _, Notary Public, personally appeared
_____, who proved to me on the basis of satisfactory evidence
to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that
the foregoing paragraph is true and correct.

WITNESS my hand and official seal.     Orion Financial Group Inc.

Signature: _____     MIXON, KETURAH          *17082639*
           , Notary Public               CMS/OPD/AOM/HUD/2016
                                         WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE FOR
Prepared by: DAVID MACHOWSKI
4909 SAVARESE CR.
TAMPA,FL 33634

Recording requested by AND
When recorded mail to:

    Orion Financial Group, Inc,
    2860 Exchange Blvd., Suite 100
    Southlake, TX 76092

#9



80 - 8830 SME

STATE OF MICHIGAN - CALHOUN COUNTY
FILED
07/03/2017 12:16:20 PM
ANNE B. NORLANDER - CLERK/REGISTER OF DEEDS

 LIBER 4152   PAGE 689

---

# LEGAL DESCRIPTION

---

LOTS 82 AND 83, GAGE-INGRAM SUPERVISORS PLAT, ACCORDING TO THE RECORDED PLAT THEROF, AS RECORDED IN LIBER 9 OF PLATS, PAGE 49, CALHOUN COUNTY RECORDS.

LIBER 4152   PAGE 690

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

CALIFORNIA ALL – PURPOSE

CERTIFICATE OF ACKNOWLEDGMENT

State of California

County of Orange

On October 26, 2016 before me, Wheny Wulandari, Notary Public, personally appeared, Chris Lechtanski, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

WHENY WULANDARI
Commission # 2045861
Notary Public - California
Orange County
My Comm. Expires Oct 17, 2017

---

### ADDITIONAL OPTIONAL INFORMATION

**DESCRIPTION OF THE ATTACHED DOCUMENT**

POA
(Title or description of attached document)

(Title or description of attached document continued)

Number of Pages 2   Document Date 10/26/2016

(Additional information)

**CAPACITY CLAIMED BY THE SIGNER**
☐ Individual (s)
☐ Corporate Officer
_____
(Title)
☐ Partner(s)
☒ Attorney-in-Fact
☐ Trustee(s)
☐ Other _____

**INSTRUCTIONS FOR COMPLETING THIS FORM**

*Any acknowledgment completed in California must contain verbiage exactly as appears above in the notary section or a separate acknowledgment form must be properly completed and attached to that document. The only exception is if a document is to be recorded outside of California. In such instances, any alternative acknowledgment verbiage as may be printed on such a document so long as the verbiage does not require the notary to do something that is illegal for a notary in California (i.e. certifying the authorized capacity of the signer). Please check the document carefully for proper notarial wording and attach this form if required.*

- State and County information must be the State and County where the document signer(s) personally appeared before the notary public for acknowledgment.
- Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the acknowledgment is completed.
- The notary public must print his or her name as it appears within his or her commission followed by a comma and then your title (notary public).
- Print the name(s) of document signer(s) who personally appear at the time of notarization.
- Indicate the correct singular or plural forms by crossing off incorrect forms (i.e. he/she/they- is /are ) or circling the correct forms. Failure to correctly indicate this information may lead to rejection of document recording.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different acknowledgment form.
- Signature of the notary public must match the signature on file with the office of the county clerk.
  ❖ Additional information is not required but could help to ensure this acknowledgment is not misused or attached to a different document.
  ❖ Indicate title or type of attached document, number of pages and date.
  ❖ Indicate the capacity claimed by the signer. If the claimed capacity is a corporate officer, indicate the title (i.e. CEO, CFO, Secretary).
- Securely attach this document to the signed document

# EXHIBIT G



P. O. Box 3549
Anaheim, CA 92803



0000637    01 MB 0.416  **AUTO   S 0 9308 49015-406643   -C04-P00000-I
KETURAH MIXON
243 Devon Rd
Battle Creek MI 49015-4066

**Property Address:**
243 DEVON ROAD
BATTLE CREEK, MI 49015

Loan Number: 7000089915

07/25/2016

**Notice of Sale of Ownership of Mortgage Loan**

Under federal law, borrowers are required to be notified in writing whenever ownership of a mortgage loan secured by their principal dwelling is sold, transferred or assigned (collectively, "sold") to a new creditor. This Notice is to inform you that your prior creditor has sold your mortgage loan (see loan information below) to the new creditor identified below.

**\*\*NOTE: The new creditor is not the servicer of your loan. The servicer (identified below) acts on behalf of the new creditor to handle the ongoing administration of your loan, including the collection of mortgage payments. Please continue to send your mortgage payments as directed by the servicer, and <u>NOT</u> to the new creditor. <u>Payments sent to the new creditor instead of the servicer may result in late charges on your loan and your account becoming past due. Neither the new creditor nor the servicer is responsible for late charges or other consequences of any misdirected payment.</u>**

<u>**SHOULD YOU HAVE ANY QUESTIONS REGARDING YOUR LOAN, PLEASE CONTACT THE SERVICER USING THE CONTACT INFORMATION SET FORTH BELOW.**</u> The servicer is authorized to handle routine inquiries and requests regarding your loan and, if necessary, to inform the new creditor of your request and communicate to you any decision with respect to such request.

Please note that the sale of your loan to us may also result in a change of servicer. If this occurs, you will receive a separate notice, required under federal law, providing information regarding the new servicer.

---

**LOAN INFORMATION**

**Date of Loan: 01/28/2010**
**Original Amount of Loan: $118,808.00**
**Date Your Loan was Sold to the New Creditor: 06/27/2016**
**Prior Loan Number: 215356291**
**Current Loan Number: 7000089915**
**Address of Mortgaged Property: 243 DEVON ROAD**
                                 **BATTLE CREEK, MI 49015**

---



**SERVICER INFORMATION**

**Name: Carrington Mortgage Services, LLC**
**Mailing Address: P.O. Box 3489, Anaheim, CA 92803**
**Telephone Number (Toll free): 877-267-1221**
**Website: https://carringtonms.com**

<u>Scope of responsibilities</u>: The servicer is responsible for all ongoing administration of your loan, including receipt and processing of payments, resolution of payment-related issues, and response to any other inquiries you may have regarding your loan.

---

**NEW CREDITOR INFORMATION**

**<u>Please be advised that all questions involving the administration of your loan (including questions related to payments, deferrals, modifications or foreclosures) should be directed to the servicer at the number above and/or the agent (if any) of the new creditor identified below, and not to the new creditor. The new creditor does not have access to information relating to the administration of your loan, and will not be able to answer most loan-related questions.</u>**

Name:   Wilmington Savings Fund Society FSB as trustee for Stanwich Mortgage Loan Trust A
Mailing Address **(not for payments)**: 500 Delaware Avenue 11th Floor
                                        Wilmington, DE 19801
Telephone Number: 800-561-4567

<u>Scope of responsibilities</u>: As new creditor, the above-named trust holds legal title to your loan.  The trustee, on behalf of the new creditor, is authorized to receive legal notices and to exercise (or cause an agent on its behalf to exercise) certain rights of ownership with respect to your loan.

---

The transfer of the lien associated with your loan is, or in the future may be, recorded in the public records of the local County Recorder's office for the county or local jurisdiction where your property is located.  If checked ☒ ownership of your loan is also recorded on the registry of the Mortgage Electronic Registrations System at 1818 Library Street, Suite 300, Reston, VA 20190.

Our rights and obligations as new creditor, and consequently our authority to respond favorably to your requests or inquiries may be limited by the terms of one or more contracts related to the securitization of your loan.

**<u>Partial Payment:</u>**
Your lender:

☐ may accept payments that are less than the full amount due ("partial payments") and apply partial payments to your loan.

☒ may hold partial payments in a separate account until you pay the remainder of the payment and then apply the full periodic payment to your loan.

☐ does not accept partial payments.

If this loan is sold to a new lender, your new lender may have a different payment policy.

## IMPORTANT DISCLOSURES

**-INQUIRIES & COMPLAINTS-**
For inquiries and complaints about your mortgage loan, please contact our CUSTOMER SERVICE DEPARTMENT by writing to Carrington Mortgage Services, LLC, Attention: Customer Service, P.O Box 3489, Anaheim, CA 92803, or calling (800) 561-4567.  Please include your loan number on all pages of correspondence.  The CUSTOMER SERVICE DEPARTMENT for Carrington Mortgage Services, LLC is toll free and you may call from 8:00 a.m. to 8:00 p.m., Eastern Time, Monday through Friday. You may also visit our website at **https://carringtonms.com**.

**-IMPORTANT BANKRUPTCY NOTICE-**
If you have been discharged from personal liability on the mortgage because of bankruptcy proceedings and have not reaffirmed the mortgage, or if you are the subject of a pending bankruptcy proceeding, this letter is not an attempt to collect a debt from you but merely provides informational notice regarding the status of the loan.  If you are represented by an attorney with respect to your mortgage, please forward this document to your attorney.

**-CREDIT REPORTING-**
We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.  As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

**-MINI MIRANDA-**
This communication is from a debt collector and it is for the purpose of collecting a debt and any information obtained will be used for that purpose. This notice is required by the provisions of the Fair Debt Collection Practices Act and does not imply that we are attempting to collect money from anyone who has discharged the debt under the bankruptcy laws of the United States.

**-HUD COUNSELOR INFORMATION-**
If you would like counseling or assistance, you may obtain a list of HUD-approved homeownership counselors or counseling organizations in your area by calling the HUD nationwide toll-free telephone number at (800) 569-4287 or toll-free TDD (800) 877-8339, or by going to http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm. You can also contact the CFPB at (855) 411-2372, or by going to www.consumerfinance.gov/find-a-housing-counselor.

**-EQUAL CREDIT OPPORTUNITY ACT NOTICE-**
The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, or age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has, in good faith, exercised any right under the Consumer Credit Protection Act. The Federal Agency that administers CMS' compliance with this law is the Federal Trade Commission, Equal Credit Opportunity, Washington, DC 20580.

**-SCRA DISCLOSURE-**
<u>MILITARY PERSONNEL/SERVICEMEMBERS:</u>  If you or your spouse is a member of the military, please contact us immediately.  The federal Servicemembers Civil Relief Act and comparable state laws afford significant protections and benefits to <u>eligible</u> military service personnel, including protections from foreclosure as well as interest rate relief.  For additional information and to determine eligibility please contact our Military Assistance Team toll free at (888) 267-5474.

**-NOTICES OF ERROR AND INFORMATION REQUESTS-**
You have the right to request documents we relied upon in reaching our determination.  You may request such documents or receive further assistance by contacting the Customer Service Department at (800) 561-4567, Monday through Friday, 8:00 a.m. to 8:00 p.m. Eastern Time or by mail at P.O. Box 3489, Anaheim, CA 92803.

This page is intentionally left blank.



9308-04-00-0000637-0002-0012452

# EXHIBIT H

C3_5038 PSGSRHUD 19468 05/27/2016



**Bank of America**

**Home Loans**

P.O. Box 31785
TAMPA, FL 33631-3785

*Send Correspondence to:*
*P.O. Box 31785*
*TAMPA, FL 33631-3785*

*Business Address:*
*450 American Street*
*Simi Valley, CA 93065-6285*

**IMPORTANT INFORMATION ENCLOSED**

**Notice Date:**   July 27, 2016

**Loan No.:**   215356291

KETURAH MIXON
243 DEVON RD
BATTLE CREEK, MI 49015

**Property Address:**
243 Devon Road
Battle Creek, MI 49015

Keturah Mixon :

**The servicing of your home loan will transfer to Carrington Mortgage Services, LLC on August 16, 2016.**

IMPORTANT INFORMATION ABOUT THE SERVICING OF YOUR HOME LOAN

On August 16, 2016, the servicing of your above-referenced mortgage loan will transfer to Carrington Mortgage Services, LLC. As of that date, your new servicer, Carrington Mortgage Services, LLC, will support all of your loan servicing, including billing, payment processing and customer support. You will no longer receive mortgage statements from Bank of America; instead, your statements will be sent by Carrington Mortgage Services, LLC.

Enclosed is a **Notice of Servicing Transfer** from Bank of America regarding the above-referenced loan. No action is required on your part in response to this notice. In addition to the information provided in this letter, this notice will contain important information about the servicing transfer of your loan. Please note this servicing transfer only applies to the loan noted above. Other loans you may have with us will not be affected by this change unless you are notified. **Please review this notice and retain it for your records.**

In the mortgage lending industry, the transfer or sale of loan servicing to other servicing institutions is a common practice, and we we'll work closely with Carrington Mortgage Services, LLC to make the transition as smooth as possible. If you have any questions or concerns regarding this transfer, we're available to answer your questions Monday-Friday 7a.m. to 7p.m. Local Time at 800-669-6607.

ANSWERS TO QUESTIONS YOU MAY HAVE

**Why is my mortgage loan being transferred?**
- As a result of your default on your mortgage loan, we made a claim for payment on the FHA mortgage insurance. In connection with that claim, we assigned your mortgage loan to FHA. FHA sold your mortgage loan to Stanwich Mtg Acq Co IV, LLC, which is now the new owner of your mortgage loan. In connection with that sale, the servicing to your mortgage loan will be transferred, as set forth herein, to Carrington Mortgage Services, LLC. As a result of the assignment of your mortgage loan to HUD, the payment by FHA of the FHA mortgage insurance claim and the subsequent sale and assignment of your mortgage loan to Stanwich Mtg Acq Co IV, LLC, the FHA mortgage insurance on your mortgage loan was terminated and no further mortgage insurance premiums are due by you.
- If you have any questions regarding the sale of your mortgage loan, you may contact HUD by email at Assetsales@hud.gov or by phone at 202-708-2625.

**What will change with my servicing transfer?**
- Your loan number and payment address information will change once your loan has been transferred. Please look for a letter from Carrington Mortgage Services, LLC within the next few weeks which will outline this important information.
- The transfer of your loan to Carrington Mortgage Services, LLC does not affect any terms or conditions of your mortgage loan, other than those terms directly related to the servicing of the loan.
- FHA mortgage insurance will not be included on your loan with Carrington Mortgage Services, LLC. As a result, your monthly payment amount may change. (FHA mortgage insurance and its premium may be reinstated if your loan is re-acquired. If that happens, you will be notified.)

**Will the quality of my loan service change?**
- We expect that the quality of your loan service will not change. We are transferring servicing on your loan to Carrington Mortgage Services, LLC, an experienced mortgage servicer who will work with you on your mortgage concerns.

**Where should I make my home loan payments?**
- You should continue to make your monthly payment to Bank of America through August 15, 2016. You will begin making payments to Carrington Mortgage Services, LLC on August 16, 2016.
- If you do not receive a billing statement from Carrington Mortgage Services, LLC before the payment is due, write your new loan number on your check and mail it to the payment address shown on the enclosed notice. Please note, if you do not have the new loan number, you may write your old loan number on the check.

**What if I have automatic payments set up with Bank of America?**
- Any automatic payments set up with us through the PayPlan programs will be discontinued as of August 15, 2016. Please look for instructions from Carrington Mortgage Services, LLC or contact them on or after August 16, 2016 to determine what payment options they may offer.

**Will I still be able to make my mortgage payment at a Bank of America banking center or through online banking?**
- You will no longer be able to make your payment at a Bank of America banking center for the mortgage loan being transferred.
- If you make payments through Bank of America online banking or any other online banking or bill payment service, you will need to update your loan number and payee information for Carrington Mortgage Services, LLC on or after August 16, 2016.

**When my loan is transferred, will I still have access to my online loan information through Bank of America?**
- After the transfer is complete, your mortgage account will be moved to Carrington Mortgage Services, LLC. As a result, you will no longer access your mortgage information through Bank of America. Prior to the transfer, you may choose to download any information currently online to keep for your own records, such as tax documents, mortgage statements, payment history, etc. Carrington Mortgage Services, LLC will be able to provide you with information about access to your loan account information following the transfer. If you have any other accounts with Bank of America, such as checking, savings or credit card, you will still be able to access those accounts through Bank of America's online

SEE REVERSE SIDE FOR IMPORTANT INFORMATION

banking.

**How will the service transfer affect my other Bank of America accounts?**
- There will be no change to any additional accounts you have with us.
- If you have a Bank of America Advantage, Premium or Preferred checking account, and you're not charged a monthly fee on your account because your mortgage is with us, this will not change with the transfer of your mortgage to another servicer. We'll let you know in writing if this changes in the future.

**What if I am currently participating in a loan modification or other foreclosure avoidance program (e.g., forbearance, short sale, refinance or deed in lieu of foreclosure)?**
- The loan assistance programs that are offered by Carrington Mortgage Services, LLC are determined by the owner (also known as the investor) or insurer of your loan. Where applicable, Carrington Mortgage Services, LLC has agreed to evaluate your loan under the same investor or insurer guidelines as Bank of America.
- We will transfer any supporting documentation you may have submitted to us to Carrington Mortgage Services, LLC. We encourage you to work with Carrington Mortgage Services, LLC to complete the process and determine which programs may best suit your current situation.
- You should continue to make your payments to Bank of America, N.A. through August 15, 2016. On or after August 16, 2016, your payments should be made to Carrington Mortgage Services, LLC unless you are provided additional direction.
- If your loan is pending a decision regarding qualification for these programs, that decision will now be made by Carrington Mortgage Services, LLC.

**Will my ability to receive financial counseling be impacted by this servicing transfer?**
- If you have previously received an offer for financial counseling in association with a HAMP trial or permanent modification, the transfer of your loan does not impact that offer.
- If you have already set an appointment, please continue to attend your scheduled appointment.
- If you have yet to take advantage of this opportunity, please contact us at your earliest convenience by calling the number provided in your offer letter or by contacting your current Relationship Manager.

**What if I need loan assistance after the transfer?**
- If you experience a hardship and struggle with making your home loan payments after the servicing of your loan has been transferred, please contact Carrington Mortgage Services, LLC right away to request help. They will determine which program may be right for you based on the applicable investor and insurer guidelines.

**What if I am refinancing my mortgage loan that is being transferred?**
- Your refinance will not be affected by the upcoming loan transfer. If you are working on a refinance through Bank of America Home Loans, your application remains active and we will continue to work with you on your refinance. Please contact the Mortgage Loan Officer or Loan Processor you have been working with if you have any questions

**What about my optional _insurance_ products with or through Bank of America?**
- If your payments include amounts for any optional insurance products such as credit insurance, accidental death insurance, etc., please read the "Information About Optional Insurance Products" section in the enclosed notice carefully.

**What about my other (_non-insurance_) optional products with or through Bank of America?**
- If your payments include amounts for any other optional products you have purchased such as home warranty, identity theft protection, etc., we will no longer make payments to the optional product provider on your behalf. As a result, your optional product may be cancelled unless you are able to make alternative arrangements to pay the amounts due. To see if it is possible to establish another payment method and maintain your optional products, you will need to contact your optional product provider.
- Your provider contact information may be found on your monthly mortgage statement. If you have more than two optional products, they may not all be listed on your monthly mortgage statement. If you are unsure about how many optional products you have or have questions about your products, please contact Bank of America.

---

| WE'RE HERE TO HELP |
| --- |

Thank you for the opportunity to serve your financial needs. If you have any questions or need assistance prior to your loan transfer, please call us toll-free at 800-669-6607, Monday-Friday 7a.m. to 7p.m. Local Time.

Beginning August 16, 2016, Carrington Mortgage Services, LLC can assist you with any questions related to your home loan and the transfer of servicing. Carrington Mortgage Services, LLC's customer service number is 877-267-1221, 7:00 AM to 5:00 PM, Pacific Standard Time, Monday through Friday.

MILITARY PERSONNEL/SERVICEMEMBERS:  If you or your spouse is a member of the military, please contact us immediately. The federal Servicemembers Civil Relief Act (SCRA) and similar state laws provide significant protections and benefits to eligible military service personnel.  However, military service and/or SCRA qualification may not necessarily prevent foreclosure.  If your loan is in default, a court may authorize foreclosure.  If you are having difficulty making your payments, please call us as soon as you can so we can discuss various home retention options.  You can reach our Enterprise Military Benefits Unit at 877.345.0693. From outside the U.S., please call us at 817.245.4094.  Both numbers are available 24/7.  Homeowner counseling is also available at agencies such as Military OneSource at militaryonesource.mil or 800.342.9647 and Armed Forces Legal Assistance at legalassistance.law.af.mil, and through HUD-approved housing counseling agencies, which you can find at hud.gov/offices/hsg/sfh/hcc/hcs.cfm.

Bank of America, N.A. is required by law to inform you that this communication is from a debt collector. If you are currently in a bankruptcy proceeding or have previously obtained a discharge of this debt under bankruptcy law, this notice is for informational purposes only and is not an attempt to collect a debt, a demand for payment or an attempt to impose personal liability for a discharged debt.

Loan No.: 215356291                              Notice Date: July 27, 2016

**NOTICE OF SERVICING TRANSFER**

You are hereby notified that the servicing of your mortgage loan, that is, the right to collect payments from you, will be assigned, sold or transferred from **Bank of America, N.A. to Carrington Mortgage Services, LLC,** effective September 01, 2016.

The transfer of the servicing of your mortgage loan does not affect any terms or conditions of the mortgage instruments, other than those terms directly related to the servicing of your loan. Except in limited circumstances, federal law requires that your present servicer send you this notice at least 15 calendar days before the effective date of transfer, or at closing. Your new servicer must also send you this notice no later than 15 calendar days after this effective date or at closing.

**YOUR SERVICER PRIOR TO AUGUST 16, 2016:**

Your *present servicer* is **Bank of America, N.A..** If you have any questions relating to the transfer of servicing from your present servicer, please call **Bank of America, N.A.** Customer Service at 800-669-6607, Monday-Friday 7a.m. to 7p.m. Local Time. This is a toll-free number. The address to send written questions to your present servicer relating to the transfer of servicing of your mortgage loan (but not your loan payments) is: Customer Service Correspondence, P.O. Box 31785, TAMPA FL 33631-3785.

**YOUR NEW SERVICER ON AND AFTER AUGUST 16, 2016:**

Your *new servicer* will be **Carrington Mortgage Services, LLC.**

Phone Number for Questions Related to Servicing Transfer
The telephone number of **Carrington Mortgage Services, LLC** is 877-267-1221. If you have any questions relating to the transfer of servicing to your new servicer, please call **Carrington Mortgage Services, LLC** Customer Service toll-free at 877-267-1221, 7:00 AM to 5:00 PM, Pacific Standard Time, Monday through Friday.

Address for Written Questions Related to Servicing Transfer
The address to send written questions to your new servicer relating to the transfer of servicing of your mortgage loan is:
Carrington Mortgage Services, LLC
P.O. Box 3489

Anaheim, CA 92803

Address for Mailed Payments
The address to send payments to **Carrington Mortgage Services, LLC** is:
Carrington Mortgage Services, LLC
Attn:  Cashiering  , P.O. Box 79001
Phoenix, AZ 85062

Please include your loan number on all checks, cashier's checks and other payments sent to **Carrington Mortgage Services, LLC.**

**INFORMATION CONCERNING YOUR LOAN PAYMENTS:**

The date that **Bank of America, N.A.** will stop accepting payments from you is August 15, 2016.

The date that your *new servicer* **Carrington Mortgage Services, LLC** will start accepting payments from you is August 16, 2016.  Send all payments due on or after that date to your *new servicer.*

**INFORMATION ABOUT OPTIONAL INSURANCE PRODUCTS:**

The transfer of servicing may affect the terms of or the continued availability of credit insurance, accidental death insurance or any other type of optional insurance in the following manner: **Bank of America, N.A.** will no longer make payments to the insurance company on your behalf. As a result, your coverage may be cancelled.

To see if it is possible to maintain coverage, you will need to contact your insurance provider to find out if you are still eligible to receive the coverage and/or to arrange another payment method.

**TREATMENT OF PAYMENTS FOR THE 60 DAYS AFTER SERVICING TRANSFER:**

Under federal law, during the 60-day period beginning the effective date of the transfer of the servicing of your mortgage loan, a loan payment received by current servicer on or before its due date may not be treated by the new servicer as late and a late fee may not be imposed on you.

Bank of America and the Bank of America logo are registered trademarks of Bank of America Corporation.
Bank of America, N.A. Member FDIC.  Equal Housing Lender ⌂. © 2015 Bank of America Corporation

# EXHIBIT I



P. O. Box 3549
Anaheim, CA 92803



0000221    01 SP 0.460  **SNGLP  T2 3 9184 49015-406643    -C04-P00000-I
KETURAH MIXON
243 DEVON ROAD
BATTLE CREEK MI 49015-4066

ՈրՈւ|լՈւՈլՈ||Ո|Ոլ|ւՈ|Ո|||Ոլ|Ո||||Ոո|Ո|։

04/07/2017

### NOTICE OF ASSIGNMENT, SALE OR TRANSFER OF SERVICING RIGHTS
<u>PLEASE NOTE THAT THIS TRANSFER NOTICE IS FOR THE BELOW-REFERENCED LOAN ONLY</u>

Re: Carrington Mortgage Services  Loan#: 7000089915
    Bank of America N.A.  Loan #: 0215356291

Dear Mortgagor(s):

The servicing of your mortgage loan is being assigned, sold or transferred, effective 05/01/2017. This means that after this date, Bank of America N.A., will be collecting your mortgage loan payments from you. Nothing else about your mortgage loan will change.

Carrington Mortgage Services, LLC ("CMS") is now collecting your payments. CMS will stop accepting payments received from you after 04/30/2017.

Bank of America N.A. will collect your payments going forward. Bank of America N.A. will start accepting payments received from you on 05/01/2017.

**Send all payments due on or after** 05/01/2017 to Bank of America N.A. **at this address:** Bank of America N.A., Payment Processing, P.O. Box 660402, Dallas, TX 75266-0402

If you have any questions for either your present servicer, CMS or your new servicer Bank of America N.A., about your mortgage loan or this transfer, please contact them using the information below:

Current Servicer:

Carrington Mortgage Services, LLC
Attention: Customer Research Department
800-561-4567
P.O. Box 5001
Westfield, IN  46074

New Servicer:

Bank of America N.A.
Customer Service Department
800-669-6607
8:00am-9:00pm EST Mon-Fri
P.O. Box 31785
Tampa, FL 33631-3785

The CUSTOMER SERVICE DEPARTMENT for CMS is toll free and you may call from Monday through Friday 8:00 a.m. to 8:00 p.m. Eastern Time. You may also visit our website at https://carringtonms.com.

9184-04-00-0000221-0001-0002269

Under Federal law, during the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer on or before its due date may not be treated by the new servicer as late, and a late fee may not be imposed on you.

<u>Escrow:</u> If you have an escrow/impound account, your new servicer will review it annually. Your payment will then be adjusted to ensure that there will be sufficient funds to cover your taxes and/or insurance premiums when they are due. If you have been including premiums for life, disability, accidental death, or any other type of optional insurance, this coverage will be discontinued. You should contact the provider of the optional insurance or other membership product directly regarding continued availability or for alternative options. 

If your monthly payment is being electronically drawn from your checking or savings account by Carrington this process will be discontinued as of the Effective Date of Transfer. Please contact your new servicer for available payment options.

<u>Internal Revenue Reporting:</u> Carrington will send you an interest statement for the period in which Carrington serviced your loan. Your new servicer will provide you with an interest statement for the payments you made on your loan on or after the Effective Date of Transfer. The statement will also reflect the amount disbursed from your escrow account such as property taxes, if you have an escrow/impound account for payment of taxes.

It has been our pleasure servicing your loan. CMS places a high level of importance on quality customer service and we are confident that we provided you with the world class service to which you are accustomed.

Sincerely,

Carrington Mortgage Services, LLC

## IMPORTANT DISCLOSURES

**-VERBAL INQUIRIES & COMPLAINTS-**
For verbal inquiries and complaints about your mortgage loan, please contact the CUSTOMER SERVICE DEPARTMENT for Carrington Mortgage Services, LLC, by calling 1-800-561-4567.  The CUSTOMER SERVICE DEPARTMENT for Carrington Mortgage Services, LLC is toll free and you may call from 8:00 a.m. to 8:00 p.m. Eastern Time, Monday through Friday. You may also visit our website at https://carringtonms.com/.

**-IMPORTANT BANKRUPTCY NOTICE-**
If you have been discharged from personal liability on the mortgage because of bankruptcy proceedings and have not reaffirmed the mortgage, or if you are the subject of a pending bankruptcy proceeding, this letter is not an attempt to collect a debt from you but merely provides informational notice regarding the status of the loan.  If you are represented by an attorney with respect to your mortgage, please forward this document to your attorney.

**-CREDIT REPORTING-**
We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.  As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

**-MINI MIRANDA-**
This communication is from a debt collector and it is for the purpose of collecting a debt and any information obtained will be used for that purpose. This notice is required by the provisions of the Fair Debt Collection Practices Act and does not imply that we are attempting to collect money from anyone who has discharged the debt under the bankruptcy laws of the United States.

**-HUD COUNSELOR INFORMATION-**
If you would like counseling or assistance, you may obtain a list of HUD-approved homeownership counselors or counseling organizations in your area by calling the HUD nationwide toll-free telephone number at (800) 569-4287 or toll-free TDD (800) 877-8339, or by going to http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm. You can also contact the CFPB at (855) 411-2372, or by going to www.consumerfinance.gov/find-a-housing-counselor.

**-EQUAL CREDIT OPPORTUNITY ACT NOTICE-**
The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, or age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has, in good faith, exercised any right under the Consumer Credit Protection Act. The Federal Agency that administers CMS' compliance with this law is the Federal Trade Commission, Equal Credit Opportunity, Washington, DC 20580.

**-SCRA DISCLOSURE-**
**MILITARY PERSONNEL/SERVICEMEMBERS:**  If you or your spouse is a member of the military, please contact us immediately.  The federal Servicemembers Civil Relief Act and comparable state laws afford significant protections and benefits to eligible military service personnel, including protections from foreclosure as well as interest rate relief.  For additional information and to determine eligibility please contact our Military Assistance Team toll free at (888) 267-5474.

**-NOTICES OF ERROR AND INFORMATION REQUESTS, QUALIFIED WRITTEN REQUESTS (QWR)-**
Written complaints and inquiries classified as Notices of Error and Information Requests or QWRs must be submitted to Carrington Mortgage Services, LLC by fax to 800-486-5134, or in writing to Carrington Mortgage Services, LLC, and Attention: Customer Service, P.O. Box 5001, Westfield, IN  46074.  Please include your loan number on all pages of the correspondence. You have the right to request documents we relied upon in reaching our determination. You may request such documents or receive further assistance by contacting the CUSTOMER SERVICE DEPARTMENT for Carrington Mortgage Services, LLC toll free at (800) 561-4567, Monday through Friday, 8:00 a.m. to 8:00 p.m. Eastern Time. You may also visit our website at https://carringtonms.com/.

This page is intentionally left blank.



# EXHIBIT J



**Bank of America**
Home Loans

P.O. Box 31785
TAMPA, FL 33631-3785



**IMPORTANT INFORMATION ENCLOSED**

ıı‖ıı‖ıı‖ıı‖ıı‖ıı‖ıı‖ıı‖ıı‖ıı‖ıı‖ıı‖ıı‖ıı‖ıı‖

AT2      2-772-46604-0000012-001-1-000-111-000-000
KETURAH MIXON
243 DEVON ROAD
BATTLE CREEK, MI 49015

Send Correspondence to:
P.O. Box 31785
TAMPA, FL 33631-3785

Business Address:
450 American Street
Simi Valley, CA 93065-6285

Notice Date:   May 04, 2017

Loan No.:   215356291

Property Address:
243 Devon Road
Battle Creek, MI 49015

---

The servicing of your home loan will transfer to Bank of America, N.A. on May 01, 2017.

**IMPORTANT INFORMATION ABOUT CHANGES TO YOUR HOME LOAN**

On May 01, 2017, the servicing of your above referenced mortgage loan will transfer from Carrington Mortgage Services, LLC to Bank of America. As of that date, we will support all of your loan servicing, including billing, payment processing, and customer support. You will no longer receive mortgage statements from Carrington Mortgage Services, LLC; instead, your statements will be sent by Bank of America.

Enclosed is a Notice of Servicing Transfer from Bank of America regarding the above referenced loan. We are required to send this notice to you under federal law. In addition to the information provided in this letter, this notice will contain important information about the servicing transfer of your loan. Please review this notice and retain it for your records.

In the mortgage lending industry, the transfer or sale of loan servicing to other servicing institutions is a common practice and we'll work closely with Carrington Mortgage Services, LLC to make the transition as smooth as possible. If you have any questions or concerns regarding this transfer, we're available to answer your questions Monday-Friday 8a.m. to 9p.m. ET at 1-800-669-6607.

**KEY CHANGES AND ACTIONS YOU MAY NEED TO TAKE**

New loan number: 215356291
- As of May 01, 2017, your home loan number will change to the number listed directly above and it will appear on future communications from us. Please use your new loan number starting on the above referenced date.
- A new payment coupon is included for your convenience.
- The transfer of your loan to Bank of America does not affect any terms or conditions of your mortgage loan, other than those terms directly related to the servicing of the loan.
- Your monthly payment will not be affected by this transfer.

Automatic payments
- If the above referenced loan is paid through an automatic payment plan with Carrington Mortgage Services, LLC, this ends as of April 30, 2017.
- To set up an automatic payment plan with Bank of America, you must call us at 1-800-669-6607. If you do not, the above referenced loan will not be paid automatically.
- Failure to make payments on time may result in late charges, adverse credit reporting and additional fees (for more information regarding fees that may be charged, please go to http://www.bankofamerica.com/defaultfees or call us at 1-800-669-6607).

Online Banking
- If you pay your home loan using an online system through your bank, you must update the information to reflect Bank of America and the new loan number listed above before making your next payment.
- Failure to make payments on time may result in late charges, adverse credit reporting and additional fees (for more information regarding fees that may be charged, please go to http://www.bankofamerica.com/defaultfees or call us at 1-800-669-6607).

Insurance
- Please notify your homeowners insurance company that the above referenced loan has changed servicers. You must notify your property insurance carrier or agent to list Bank of America, N.A. as the mortgagee on your property insurance policy(ies). This includes your homeowners insurance policy and any other insurance coverages you maintain, or are required to maintain, on your

---

Loan Number: 215356291 (9)
Keturah Mixon
243 Devon Road

**SEE REVERSE SIDE FOR IMPORTANT INFORMATION**
Please update e-mail information on the reverse side of this coupon

Prior Loan # 700000915
SRCC# 65928

Payment Due          $1,101.40

Additional
Principal

Additional
Escrow

Bank of America, N.A.
PO Box 660402
DALLAS TX 75266-0402

ıı‖ıı‖ıı‖ıı‖ıı‖ıı‖ıı‖ıı‖ıı‖ıı‖ıı‖ıı‖ıı‖

Total

2 1 5 3 5 6 2 9 1 9 0 0 0 0 0 1 1 0 1 4 0 0 0 0 0 0 0 0 0 0

⑆ 5 8 6 9 9 0 0 5 8 ⑆ ： 2 1 5 3 5 6 2 9 1 ⑆

Loan No.: 215356291                                                    Notice Date: May 04, 2017

NOTICE OF SERVICING TRANSFER



The servicing of your mortgage loan is being transferred, effective May 01, 2017. This means that after this date, a new servicer will be collecting your mortgage loan payments from you. The transfer of the servicing of your mortgage loan does not affect any term or condition of the mortgage instruments, other than terms directly related to the servicing of your loan. Except in limited circumstances, federal law requires that your *present servicer* send you this notice at least 15 days before the effective date of transfer, or at closing. Your *new servicer* must also send you this notice no later than 15 days after this effective date or at closing.

### YOUR *PRESENT* SERVICER

Your *present servicer* is Carrington Mortgage Services, LLC. If you have any questions relating to the transfer of servicing from your present servicer Carrington Mortgage Services, LLC, call Customer Service, collect, at 1-877-267-1221 between 7:00 AM to 5:00 PM, Pacific Standard Time, Monday through Friday. You can also send written questions to your present servicer relating to the transfer of servicing of your mortgage loan at: Carrington Mortgage Services, LLC, 1600 South Douglass Road Anaheim, CA 92806.

### YOUR *NEW* SERVICER

Your *new servicer* is Bank of America, N.A.. The address to send written questions to your new servicer relating to the transfer of servicing of your mortgage loan (but not your loan payments) is: Customer Service Correspondence, P.O. Box 31785, TAMPA, FL 33631-3785. If you have any questions relating to the transfer of servicing to your new servicer, call Bank of America, N.A. Customer Service, toll-free at 1-800-669-6607, Monday-Friday 8a.m. to 9p.m. ET. Your call may be monitored or recorded to ensure quality service.

Please write the Bank of America, N.A. loan number on all checks and correspondence and have your loan number available when you call. Your complete loan file is being transferred to Bank of America, N.A..

### INFORMATION CONCERNING YOUR PAYMENTS AND OPTIONAL INSURANCE:

The date that Carrington Mortgage Services, LLC will stop accepting payments from you is April 30, 2017. The date that Bank of America, N.A. will start accepting payments from you is May 01, 2017. Send all payments due on or after that date to Bank of America, N.A.: P.O. Box 660402, DALLAS, TX 75266-0402. Bank of America, N.A. will send you new billing statements. If you have a payment due before you receive your new billing statement, write your Bank of America, N.A. loan number (215356291) on your check and mail it to Bank of America, N.A. at the payment address shown in the previous sentence. Please note that your loan information is subject to change to reflect disbursements that are made by, and payments that are due to, your present servicer.

If you have purchased life, disability, accidental death or any other type of optional insurance or any other optional product, such as home warranty (collectively "optional product"), this transfer may affect your right to continue receiving such optional product. After the transfer of servicing of your loan, the charge for any optional product may no longer be collected and payments for any charge due for your optional product may not be remitted. If you want to maintain your optional product, you should contact your product provider directly to determine whether your optional product can be continued and what steps you need to take to do so. This transfer does not affect your homeowners insurance coverage.

If the terms of your loan provide for an escrow account to pay taxes and/or insurance, Bank of America, N.A. may elect to re-analyze the escrow payment amount and make any necessary adjustments. In compliance with the Real Estate Settlement Procedures Act (RESPA), Bank of America, N.A. analyzes escrow accounts utilizing the aggregate method.

### TREATMENT OF PAYMENTS FOR THE 60 DAYS AFTER SERVICING TRANSFER

Under federal law, during the 60-day period following the effective date of the transfer of the servicing of your mortgage loan, a loan payment received by current servicer on or before its due date may not be treated by the new servicer as late and a late fee may not be imposed on you.

Bank of America, N.A. Member FDIC. Equal Housing Lender. © 2012 Bank of America Corporation. Trademarks are the property of Bank of America Corporation. All rights reserved. Some products may not be available in all states. This is not a

# EXHIBIT K



November 21, 2016


Keturah Mixon
243 Devon Rd
Battle Creek, MI 49015


RE:     CMS Loan # 7000089915– Validity of Debt Owed
        Property Address: 243 Devon Rd, Battle Creek, MI 49015


Dear Mortgagor(s):

This letter is our response to your written correspondence received in our Customer Service Research Department on September 13, 2016. The Letter disputes the debt, which we interpret as a request for verification of the debt under the Fair Debt Collection Practices Act ("FDCPA"). Carrington Mortgage Services, LLC ("CMS") is committed to responsible lending and servicing and we would like to address any concerns regarding the above-referenced loan.

Enclosed is a Loan Application and Payment History along with Transaction Codes and Definitions. The Payment History lists the transactions relating to the Loan while being serviced by CMS. Please note this history provides pertinent information on payments received, tax and insurance payments disbursed, funds in the suspense/unapplied funds account, and late charges assessed and paid.

**Verification of Debt**
Please be advised the Loan is evidenced by a Note dated January 28, 2010, in the principal sum of $118,808.00, executed by Keturah Mixon, in favor of Top Flite Financial Inc., a copy of which is enclosed. The Loan is secured by a Mortgage dated the January 28, 2010 a copy of which is also enclosed.

The current owner of the Note pursuant to 15 U.S.C. §1641(f)(2) is Christiana Trust, A division of Christiana Trust, A Division of Wilmington Savings Fund Society, FSB, as Trustee for Stanwich Mortgage Loan Trust Series 2016-6. The owner is located at 9062 Old Annapolis Road, Columbia, MD 21045 with a phone number of 410-884-2146. CMS is the current servicer of the loan with rights to enforce the terms of the security instrument and collect on the debt.

A payoff demand statement will be sent to you under a separate cover from our Payoff Department, which shows all amounts necessary to pay off the Loan. The request was submitted to our Payoff Department on November 21, 2016. Please allow 72 hours for processing.



After an extensive review of your account, our records indicate the lien release provided with your correspondence is not valid. Should you have documentation supporting your dispute, please forward it for our review. You may submit the documentation by fax to (949) 517-5220 or mail to the address below:

Carrington Mortgage Services, LLC
Customer Service Research Department
P.O. Box 3489
Anaheim, CA 92803

As of the date of this response, your account is in a default status and due for the August 1, 2012 through November 1, 2016 payments in the amount of $59,040.43.

We trust we have fully addressed your concerns regarding this matter. However, should you have further questions, please contact Carrington Mortgage Services, LLC at (800) 561-4567, Monday through Friday, 8:00 AM to 8:00 PM, Eastern Standard Time. You may also contact us in writing at P.O. Box 3489, Anaheim, CA 92803.

Sincerely,

*Brad Horner*

Brad Horner
Customer Service Research Department
Carrington Mortgage Services, LLC
Enclosures



## IMPORTANT DISCLOSURES

**-INQUIRIES & COMPLAINTS-**
For inquiries and complaints about your mortgage loan, please contact our CUSTOMER SERVICE DEPARTMENT by writing to Carrington Mortgage Services, LLC, Attention: Customer Service, P.O Box 3489, Anaheim, CA 92803, or by calling 1-800-561-4567. Please include your loan number on all pages of correspondence. The CUSTOMER SERVICE DEPARTMENT for Carrington Mortgage Services, LLC is toll free and you may call from 8:00 a.m. to 8:00 p.m. Eastern Time, Monday through Friday. You may also visit our website at https://carringtonms.com/.

**-IMPORTANT BANKRUPTCY NOTICE-**
If you have been discharged from personal liability on the mortgage because of bankruptcy proceedings and have not reaffirmed the mortgage, or if you are the subject of a pending bankruptcy proceeding, this letter is not an attempt to collect a debt from you but merely provides informational notice regarding the status of the loan. If you are represented by an attorney with respect to your mortgage, please forward this document to your attorney.

**-CREDIT REPORTING-**
We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report. As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

**-MINI MIRANDA-**
This communication is from a debt collector and it is for the purpose of collecting a debt and any information obtained will be used for that purpose. This notice is required by the provisions of the Fair Debt Collection Practices Act and does not imply that we are attempting to collect money from anyone who has discharged the debt under the bankruptcy laws of the United States.

**-HUD COUNSELOR INFORMATION-**
If you would like counseling or assistance, you may obtain a list of HUD-approved homeownership counselors or counseling organizations in your area by calling the HUD nationwide toll-free telephone number at (800) 569-4287 or toll-free TDD (800) 877-8339, or by going to http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm. You can also contact the CFPB at (855) 411-2372, or by going to www.consumerfinance.gov/find-a-housing-counselor.

**-EQUAL CREDIT OPPORTUNITY ACT NOTICE-**
The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, or age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has, in good faith, exercised any right under the Consumer Credit Protection Act. The Federal Agency that administers CMS' compliance with this law is the Federal Trade Commission, Equal Credit Opportunity, Washington, DC 20580.

**-SCRA DISCLOSURE-**
**MILITARY PERSONNEL/SERVICEMEMBERS:** If you or your spouse is a member of the military, please contact us immediately. The federal Servicemembers Civil Relief Act and comparable state laws afford significant protections and benefits to eligible military service personnel, including protections from foreclosure as well as interest rate relief. For additional information and to determine eligibility please contact our Military Assistance Team toll free at 1-888-267-5474.

**-NOTICES OF ERROR AND INFORMATION REQUESTS-**
You have the right to request documents we relied upon in reaching our determination. You may request such documents or receive further assistance by contacting Carrington Mortgage Services, LLC at (800) 561-4567, Monday through Friday, 8:00 a.m. to 8:00 p.m. Eastern Time or by mail at P.O. Box 3489, Anaheim, CA 92803.



## ARKANSAS:

**Arkansas Residents Only**

Carrington Mortgage Services, LLC ('CMS') is licensed with the Arkansas Securities Department. You may file complaints about CMS with the Arkansas Securities Department (Department) at 201 East Markham, Heritage West Building, Suite 300, Little Rock, Arkansas 72201. You may obtain further information by calling the Department's general information number at (501) 324-9260 or toll-free, (800) 981-4429 or faxing the Department at (501) 324-9268 or visiting the Department's website at http://www.securities.arkansas.gov. For a list of standard or common loan servicing fees charged by CMS, please visit the CMS website at https://carringtonms.com/HelpCenter/FAQ.

## COLORADO:

For Colorado Residents:
13111 E. Briarwood Ave., Suite#340
Centennial, CO 80112
(303) 708-8795

## HAWAII:

**For Hawaii Residents:**

**Carrington Mortgage Services, LLC ("CMS") is licensed with the State of Hawaii Division of Financial Institutions. You may file complaints about CMS with the Commissioner of Financial Institutions by calling (808) 586-2820 or visiting the division's website for consumer complaints at http://cca.hawaii.gov/dfi/file-a-complaint/. Attached is a list of standard or common loan servicing fees charged by CMS.**

## MASSACHUSETTS:

NOTICE OF IMPORTANT RIGHTS

YOU HAVE THE RIGHT TO MAKE A WRITTEN OR ORAL REQUEST THAT TELEPHONE CALLS REGARDING YOUR DEBT NOT BE MADE TO YOU AT YOUR PLACE OF EMPLOYMENT. ANY SUCH ORAL REQUEST WILL BE VALID FOR ONLY TEN DAYS UNLESS YOU PROVIDE WRITTEN CONFIRMATION OF THE REQUEST POSTMARKED OR DELIVERED WITHIN SEVEN DAYS OF SUCH REQUEST. YOU MAY TERMINATE THIS REQUEST BY WRITING TO THE CREDITOR.

## MINNESOTA:

Carrington Mortgage Services, LLC is licensed by the Minnesota Department of Commerce.

## NEW YORK:

**New York City Department of Consumer Affairs License Number 1264739**

**This Collection agency is licensed by the City of Buffalo license numbers: 555177 & 555176**

**City of Yonkers Debt Collection Agency License Number: 9717**

**For New York residents:** You may file complaints about CMS with the New York State Department of Financial Services. You may obtain further information from the New York State Department of Financial Services by calling the Department's Consumer Assistance Unit at 1-800-342-3736 or by visiting the Department's website at www.dfs.ny.gov. Carrington Mortgage Services, LLC is registered with the Superintendent of the New York State Department of Financial Services.

## NORTH CAROLINA:

Carrington Mortgage Services, LLC is licensed under North Carolina Secure and Fair Enforcement Mortgage Licensing Act and holds North Carolina Agency Licenses with Permit Nos. 102107, 103455 and 112956 Main Office: 1600 South Douglass Road, Suites 110 & 200-A, Anaheim, CA 92806 / Branch Offices: 2100 E. 196 Street, Suites 100 & 200, Westfield, IN 46074 & 6200 Tennyson Parkway, Suite 210, Plano, TX 75024.

## TENNESSEE:

This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance.

## TEXAS:

**Notice to Texas Residents:** COMPLAINTS REGARDING THE SERVICING OF YOUR MORTGAGE SHOULD BE SENT TO THE TEXAS DEPARTMENT OF SAVINGS AND MORTGAGE LENDING, 2601 NORTH LAMAR, SUITE 201, AUSTIN, TEXAS 78705. A TOLL-FREE CONSUMER HOTLINE IS AVAILABLE AT 1-877-276-5550.

# EXHIBIT L

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KETURAH MIXON,

                Plaintiff,                              Hon. Janet T. Neff

v.                                          Case No. 1:15-CV-486

BANK OF AMERICA, et al.,

                Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on <u>Defendant Bank of America's Motion to Dismiss</u>, (Dkt. #5), <u>Plaintiff's Motion to Dismiss Defendant's Motion</u>, (Dkt. #7), <u>Plaintiff's Motion for Entry of Default</u>, (Dkt. #8), and <u>Plaintiff's Application for Entry of Default</u>, (Dkt. #9).  In accordance with 28 U.S.C. § 636(b), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for resolution of dispositive motions, the undersigned recommends that Plaintiff's motion to dismiss be **granted in part and denied in part**, Plaintiff's motions seeking entry of default be **denied**, and Defendant's motion to dismiss be **granted**.

## BACKGROUND

Plaintiff initiated the present action in state court, on or about December 16, 2014, against Bank of America and 20 unidentified John Does, none of whom have been identified or served.  (Dkt. #1 at Page ID#14-49).  This action concerns real property located at 243 Devon Road, Battle Creek, Michigan.  On or about January 28, 2010, Plaintiff obtained a loan in the amount of one hundred

eighteen thousand, eight hundred eight dollars ($118,808.00).  (Dkt. #1 at Page ID#40-42).  As security

for this loan, Plaintiff executed a mortgage on the property in question.  (Dkt. #1 at Page ID#31-38).

On or about July 21, 2011, Plaintiff's mortgage was reassigned from her original lender to BAC Home

Loans Servicing.  (Dkt. #1 at Page ID#44).  BAC Home Loans Servicing later merged into Bank of

America.  (Dkt. #5 at Page ID#358-62).

Plaintiff alleges that this mortgage assignment was fraudulent because the underlying debt

had, by the date of reassignment, already been paid in full.  Plaintiff further alleges that the mortgage

assignment was invalid because: (1) her name was not included on the relevant documents; (2) the

transaction was accomplished through fraudulent "robo-signatures"; and (3) Bank of America has no

legitimate interest in the property in question.  On May 8, 2015, Defendant Bank of America removed

the matter to this Court and now moves to dismiss Plaintiff's complaint on the ground that the

allegations therein fail to state a claim on which relief may be granted.  Plaintiff has responded by

asserting the motions identified above.


I.        **Plaintiff's Motion to Dismiss**

Plaintiff moves the Court to dismiss Defendant's motion to dismiss on the ground that

it is without merit.  Plaintiff further requests that the Court enter judgment in her favor.  Plaintiff has

failed to demonstrate that she is entitled to judgment or that Defendant's motion is subject to dismissal.

The Court will, however, consider Plaintiff's motion as a response to Defendant's motion to dismiss.

Accordingly, the Court recommends that Plaintiff's motion be granted in part and denied in part.

II.        **Plaintiff's Motions Seeking Entry of Default**

Plaintiff argues that she is entitled to default on the ground that Defendant Bank of America failed to timely answer the complaint.  This issue was resolved in state court prior to the removal of this action to this Court.  (Dkt. #1 at Page ID#11-12; Dkt. #5 at Page ID#326-41).  Accordingly, the undersigned recommends that Plaintiff's motions be **denied**.

III.       **Defendant's Motion to Dismiss**

Bank of America moves to dismiss Plaintiff's complaint on the ground that such fails to state a claim on which relief may be granted.  A Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief may be granted tests the legal sufficiency of a complaint by evaluating the assertions therein in a light most favorable to Plaintiff to determine whether such states a valid claim for relief.  *See In re NM Holdings Co., LLC*, 622 F.3d 613, 618 (6th Cir. 2000).

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right for relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).  As the Supreme Court subsequently held, to survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).  This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*  As the Court further observed:

-3-

Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . .Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . .Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the wellpleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

*Id.* at 678-79 (internal citations omitted).

When resolving a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to the defendant's motion to dismiss provided such are referenced in the complaint and central to the claims therein.  *See Bassett v. National Collegiate Athletic Assoc.*, 528 F.3d 426, 430 (6th Cir. 2008); *see also*, *Continental Identification Products, Inc. v. EnterMarket, Corp.*, 2008 WL 51610 at *1, n.1 (W.D. Mich., Jan. 2, 2008) ("an exhibit to a pleading is considered part of the pleading" and "the Court may properly consider the exhibits. . .in determining whether the complaint fail[s] to state a claim upon which relief may be granted without converting the motion to a Rule 56 motion"); *Stringfield v. Graham*, 212 Fed. Appx. 530, 535 (6th Cir. 2007) (documents "attached to and cited by" the complaint are "considered parts thereof under Federal Rule of Civil Procedure 10(c)").

Plaintiff seeks "to forever quiet title against defendants" concerning the subject property. Actions to quiet title under Michigan law are governed by Mich. Comp. Laws § 600.2932 which provides, in relevant part, that "[a]ny person, whether he is in possession of the land in question or not,

who claims any right in, title to, equitable title to, interest in, or right to possession of land, may bring an action in the circuit courts against any other person who claims or might claim any interest inconsistent with the interest claimed by the plaintiff, whether the defendant is in possession of the land or not." Mich. Comp. Laws § 600.2932(1).  A plaintiff in an action to quiet title to land bears the burden to make out a prima facie case that he has a superior claim to the land in question.  *See Stern v. Marjeh*, 2011 WL 1140129 at *1 (Mich. Ct. App., Mar. 29, 2011); Michigan Court Rule 3.411(B)(2) (in a complaint to quiet title the plaintiff "must allege," in part, "the facts establishing the superiority of [her] claim").  Moreover, a plaintiff cannot satisfy this requirement "by merely relying on the weakness of a defendant's title."  *Stern*, 2011 WL 1140129 at *1.

       The basis of Plaintiff's claim is her unsubstantiated allegation that she paid in full the debt for which the subject mortgage was security.  On the other hand, Defendant has submitted documentation in the course of this action demonstrating that not only has Plaintiff not paid off the debt in question, but instead has failed to regularly make her scheduled mortgage payments.  (Dkt. #5 at Page ID#365-79).  As a result, the balance of the loan in question, as of March 5, 2015, was in excess of one hundred thirty-seven thousand dollars ($137,000.00).  (Dkt. #5 at Page ID#379).  Plaintiff's other arguments in support of her quiet title action are frivolous for the reasons articulated in Defendant's motion.  In sum, Plaintiff's complaint does not articulate a plausible claim for relief.  Accordingly, the undersigned recommends that Defendant's motion to dismiss be granted.

## CONCLUSION

       For the reasons articulated herein, the undersigned recommends that Plaintiff's Motion to Dismiss Defendant's Motion, (Dkt. #7), be **granted in part and denied in part**; Plaintiff's Motion

for Entry of Default, (Dkt. #8), be **denied**; Plaintiff's Application for Entry of Default, (Dkt. #9), be

**denied**; and Defendant Bank of America's Motion to Dismiss, (Dkt. #5), be **granted**.

        OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court

within fourteen (14) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file

objections within the specified time waives the right to appeal the District Court's order.  *See Thomas*

*v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

        Respectfully submitted,


Date:  June 26, 2015                /s/ Ellen S. Carmody_____
                              ELLEN S. CARMODY
                              United States Magistrate Judge

# EXHIBIT M

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KETURAH MIXON,

      Plaintiff,                    Case No. 1:15-cv-486

v.                                  HON. JANET T. NEFF

BANK OF AMERICA, N.A., and all of
its subsidiaries, successors, and assigns,
and JOHN DOES 1-20,

      Defendants.
_____/

## JUDGMENT

In accordance with the Order entered this date:

**IT IS HEREBY ORDERED** that this action is DISMISSED pursuant to FED. R. CIV. P.

12(b)(6) for failure to state a claim.

Dated: July 17, 2015                     /s/ Janet T. Neff
                                JANET T. NEFF
                                United States District Judge

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KETURAH MIXON,

      Plaintiff,

v.

BANK OF AMERICA, N.A., and all of
its subsidiaries, successors, and assigns,
and JOHN DOES 1-20,

      Defendants.

_____/

Case No. 1:15-cv-486

HON. JANET T. NEFF

## ORDER

This is a civil action involving a *pro se* litigant.  Defendant Bank of America, N.A. filed a Motion to Dismiss (Dkt 5).  Plaintiff filed a Motion to Dismiss Defendant's Motion (Dkt 7), a Motion for Entry of Default (Dkt 8), and an Application for Entry of Default (Dkt 9).  These matters were referred to the Magistrate Judge, who issued a Report and Recommendation on June 26, 2015, recommending that this Court grant in part and deny in part Plaintiff's motion to dismiss, deny Plaintiff's motion and application for entry of default, and grant Defendant's motion to dismiss.  The Report and Recommendation was duly served on the parties.  No timely objections have been filed. *See* 28 U.S.C. § 636(b)(1).  Therefore,

**IT IS HEREBY ORDERED** that the Report and Recommendation (Dkt 16) is APPROVED and ADOPTED as the Opinion of the Court.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Dismiss Defendant's Motion (Dkt 7) is GRANTED IN PART AND DENIED IN PART as set forth in the Report and Recommendation.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Entry of Default (Dkt 8) and Application for Entry of Default (Dkt 9) are DENIED.

**IT IS FURTHER ORDERED** that Defendant Bank of America, N.A.'s Motion to Dismiss (Dkt 5) is GRANTED.

A Judgment will be entered consistent with this Order.

Dated: July 17, 2015                           /s/ Janet T. Neff
                                              JANET T. NEFF
                                              United States District Judge

# EXHIBIT N

Goss v. CitiMortgage, Inc., Slip Copy (2017)

2017 WL 5499400
Only the Westlaw citation is currently available.
United States District Court,
E.D. Michigan, Southern Division.

Robert GOSS, Jr., Plaintiff,
v.
CITIMORTGAGE, INC., et al., Defendants.

Case No. 16-14391
|
Signed 11/16/2017

**Attorneys and Law Firms**

Vanessa G. Fluker, Detroit, MI, for Plaintiff.

Kathryn J. Miller, Dickinson Wright, Ann Arbor, MI, Sherry D. O'Neal, Dickinson Wright, Detroit, MI, David M. Dell, Jong-Ju Chang, Dykema Gossett PLLC, Bloomfield Hills, MI, Brian A. Nettleingham, Stephanie C. Mellin, Maddin Hauser Roth & Heller PC, Southfield, MI, for Defendants.

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS**

ROBERT H. CLELAND, UNITED STATES DISTRICT JUDGE

**\*1** Plaintiff Robert Goss, Jr. brought this action for what he alleges was a wrongful foreclosure on his home. (Dkt. #1.) Plaintiff claims that Defendant CitiMortgage, Inc. and Defendant Nationstar Mortgage, LLC, the entities responsible for the mortgage on his property, failed to accept his mortgage loan payments and falsely represented the mortgage as in default. (*Id.*) Defendant CitiMortgage and Defendant Nationstar have each filed a Motion to Dismiss (Dkt. ##38, 41). Plaintiff filed separate responses. (Dkt. ##43, 44.) The court has determined that a hearing is unnecessary. E.D. Mich. LR 7.1(f)(2). Because the legal issues in these motions largely overlap, the court will address both motions in this order. For the following reasons, Defendants' motions are granted in

part and denied in part.

**I. BACKGROUND**

In 2005, Plaintiff entered into a mortgage agreement with ABN AMRO Mortgage Group, Inc. (Dkt. #41-2.)[1] Defendant CitiMortgage, as a successor in interest by merger to ABN AMRO, later became the holder of the mortgage. (Dkt. #35-3 Pg. ID 1069.) In 2011, Defendant CitiMortgage foreclosed on the property and sold it. (*Id.*) After the redemption period for the sale, Plaintiff filed suit against ABN AMRO and Defendant CitiMortgage challenging the foreclosure and sale. *See Goss v. ABN AMRO Mort. Grp.*, 549 Fed.Appx. 466, 468 (6th Cir. 2013). The district court dismissed Plaintiff's complaint, and the Sixth Circuit affirmed. *Id.* at 477.

Following litigation, Plaintiff and Defendant CitiMortgage entered into a modified loan agreement (Dkt. #35-4) and Defendant CitiMortgage expunged the foreclosure in February 2015 (Dkt. #35-3). Plaintiff alleges that he has made timely payments as required by the modified loan agreement, but that Defendant CitiMortgage provided "erroneous information" regarding his escrow and a change in his mortgage payment. (Dkt. #35 Pg. ID 1039.) According to Plaintiff, Defendant Nationstar—who was servicing the loan—also began sending Plaintiff incorrect information about the payments he had been making and a balance that Defendants contended was past due. (Dkt. #35 Pg. ID 1041; Dkt. #35-16.) He further alleges that Defendant Nationstar, which was assigned the loan in November 2016 (Dkt. #41-3), wrongfully refused Plaintiff's payments. (Dkt. #35 Pg. ID 1039, 1041.)

Despite his timely payments, according to Plaintiff, he discovered that his payments were not being reported to major credit bureaus. (Dkt. #35 Pg. ID 1040.) When Plaintiff sent letters to Transunion and Experian disputing their reports of his payments, he received credit reports "that were contrary to his payment history and the cashed checks" he had submitted for payment. (*Id.*)

**\*2** Plaintiff, in an attempt to correct the "variable payment amounts from month-to-month in direct contradiction to the required monthly payments under the modification agreement," attempted to contact Defendant CitiMortgage. (*Id.*) According to Plaintiff, "Defendant Citi[M]ortgage would send correspondence that did not

Goss v. CitiMortgage, Inc., Slip Copy (2017)
_____

address the issues raised by" Plaintiff. (*Id.*) Plaintiff eventually sent CitiMortgage a "RESPA Qualified Written Request Letter" in June 2016. (*Id.*; Dkt. #35-13.) Defendant CitiMortgage's response, however, "did not address any of the information requested in the Plaintiff's Qualified Written Request." (Dkt. #35 Pg. ID 1040–41.) Plaintiff received his last correspondence from Defendant CitiMortgage—a letter soliciting Plaintiff for loss mitigation—in August 2016. (*Id.* at Pg. ID 1041.)

Plaintiff then began receiving letters from Defendant Nationstar, including a letter "indicating [Nationstar] had no record of any payments since June of 2016, when in fact, the money for the payments had been removed from Plaintiff's bank account by Defendant Citi[M]ortgage." (*Id.* at Pg. ID 1041.) In September 2016, Defendant Nationstar advised Plaintiff that he needed a loan specialist. (*Id.*)

Plaintiff, however, kept making payments. He submitted checks for his monthly mortgage payment in October, November, and December 2016, but all were returned with some communication from Defendant Nationstar. (*Id.* at Pg. ID 1041–42.) Plaintiff also received a letter and a "refund" check from Defendant Nationstar in December 2016, but says he has "no idea of what this check represented and has not cashed the check, but retained the check." (*Id.* at Pg. ID 1042; Dkt. #35-21.)

Plaintiff's home was sold at a sheriff's sale on December 20, 2016 "for an alleged default and failure to make monthly payments." (Dkt. #35 Pg. ID 1042.) One day before the sale, Plaintiff filed an "Emergency Motion for Temporary Restraining Order" (Dkt. #4) asking the court to stay the sale. The court denied the motion in an order entered the next day (Dkt. #5), explaining that the court lacked sufficient time to review the motion before the sale and, in any event, Plaintiff had not shown that irreparable harm would result, as Michigan law provided a variety of mechanisms by which the parties could effectively undue the foreclosure sale. (Dkt. #5 Pg. ID 201–02.) Plaintiff thereafter moved to amend his complaint to name the third party purchaser of the property—Zana Zaitouna—as a Defendant and to add a claim for a violation of the Real Estate Settlement Procedures Act against Defendant CitiMortgage. (Dkt. #32.) The court granted Plaintiff's request (Dkt. #34), and Plaintiff filed an amended complaint (Dkt. #35.)

Despite the sheriff's sale, Plaintiff avers that Defendant Nationstar "has accepted Plaintiff's payments for January 2017, February 2017, March 2017, and April 2017." (Dkt. #35 Pg. ID 1042.) As a result of the negative entries on Plaintiff's credit reports, Plaintiff has been denied a

business loan and a credit card; he has also had to pay higher interest on the supplies for his small business. (*Id.*)

## II. STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679. The court views the complaint in the light most favorable to the plaintiff and accepts all well-pleaded factual allegations as true. *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009). The court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

**\*3** "In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997)). Furthermore, "when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Commercial Money Ctr. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007).

## III. DISCUSSION

Plaintiff brings seven claims, each—with the exception of Count VII—brought against Defendant CitiMortgage and Defendant Nationstar[2]: (1) breach of contract; (2) promissory estoppel; (3) wrongful foreclosure under Mich. Comp. Laws § 600.3204; (4) violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq.;

(5) violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq.; (6) quiet title; and (7) violation of Real Estate Settlement Procedures Act, 12 U.S.C. § 2605, as to Defendant CitiMortgage. The court will address each count in turn.

### A. Breach of Contract

Defendants argue that Plaintiff cannot state a valid claim for breach of contract because he cannot establish all the required elements under Michigan law. A claim for breach of contract under Michigan law requires the plaintiff to prove: (1) the existence of a valid contract, (2) the terms of the contract, (3) that the other party breached the contract, and (4) that the breach caused the plaintiff's injury. *Webster v. Edward D. Jones & Co.*, 197 F.3d 815, 816 (6th Cir. 1999). "The rule in Michigan is that one who first breaches a contract cannot maintain an action against the other contracting party for his subsequent breach or failure to perform." *Flamm v. Scherer*, 198 N.W.2d 702, 706 (Mich. Ct. App. 1972).

Defendants agree that the modified mortgage agreement constitutes a valid contract. (Dkt. #38 Pg. ID 1218; Dkt. #41 Pg. ID 1285.) But both Defendants contend that Plaintiff cannot recover for breach of contract because he breached the contract first. (Dkt. #38 Pg. ID 1218–20; Dkt. #41 Pg. ID 1285–86.) Specifically, according to Defendants, the modified mortgage agreement provides that Plaintiff was responsible for paying taxes, insurance premiums, assessments, and escrow items as required under the mortgage, and they point to this provision of the modified agreement attached to Plaintiff's amended complaint. (Dkt. #35-4 Pg. ID 1072–73.) Moreover, according to the modified agreement, "[t]he escrow payments may be adjusted periodically in accordance with applicable law and therefore borrower's total monthly payment may change accordingly." (*Id.* at Pg. ID 1073.)

Defendants aver that Plaintiff was "mailed an escrow analysis disclosure statement ... confirm[ing] that Plaintiff's monthly payment was increasing." (Dkt. #38 Pg. ID 1219.) They point to a letter attached to Plaintiff's amended complaint from Defendant CitiMortgage that documents an increased payment amount. (Dkt. #35-6.) Plaintiff, however, continued making the lower monthly payment. (Dkt. #38 Pg. ID 1219; Dkt. #41 Pg. ID 1286.) Thus, according to Defendants, Plaintiff breached the contract first, and Defendants cannot be liable for breach.

\*4 Defendant CitiMortgage presents some additional arguments for why this claim should be dismissed. According to Defendant CitiMortgage, it cannot be held liable for breach because it was permitted, under the terms of the original mortgage, to "accept insufficient payments and ... wait to apply those payments until a sufficient payment has accumulated." (Dkt. #38 Pg. ID 1220.) Defendant CitiMortgage's acceptance of Plaintiff's partial payment, then, was not a breach. Moreover, according to Defendant CitiMortgage, Plaintiff cannot establish that it caused Plaintiff's damages because it "did not engage in foreclosure proceedings." (*Id.* at Pg. ID 1220–21.) Because Plaintiff's only alleged damage, according to the amended complaint, is that Defendants "illegally foreclos[ed] on Plaintiff's mortgage" (Dkt. #35 Pg. ID 1044), he cannot establish damages as they relate to Defendant CitiMortgage. (Dkt. #38 Pg. ID 1220.)

The court disagrees with Defendants that these arguments are sufficient on a motion to dismiss. Defendants' argument that Plaintiff was paying a lower—and therefore inadequate—amount on his mortgage is the crux of Plaintiff's claim that the higher payment sought by Defendants was improper.

Defendants would have this court rely on Defendant CitiMortgage's statement, in the letter it sent to Defendant, that Plaintiff's monthly payments were increasing pursuant to the "Escrow Analysis Disclosure Statement." (Dkt. #35-6.) Defendant Nationstar provided the court with a copy of the disclosure statement in its reply brief on the motion to dismiss. (Dkt. #47-2.) "[D]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the] claim." *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). Setting aside whether documents attached to a *reply* brief are considered part of the pleadings, the court does not find the attached escrow analysis dispositive for the motions to dismiss.

Defendants accurately quote the portion of the modified agreement providing that Plaintiff's "escrow payments may be adjusted periodically." They neglect, however, to focus the portion of this provision providing that "payments may be adjusted periodically *in accordance with applicable law.*" The court will not consider, at this stage, whether the higher assessment made by Defendants, as reflected in Defendant CitiMortgage's letter to Plaintiff and the escrow analysis, was made in accordance with applicable law. Whether Defendant

CitiMortgage appropriately posted Plaintiff's "partial" payment is similarly inappropriate for consideration at this point.

Defendant CitiMortgage's argument that Plaintiff has not sufficiently pled damages against it, however, is persuasive. Plaintiff describes Defendants' "breach" in its breach of contract count as their decision to "illegally foreclos[e] on Plaintiff's mortgage, which constitutes performance that does not conform to the agreement's requirements that Defendants not foreclose so long as Plaintiff performed under the agreement." (Dkt. #35 Pg. ID 1044.) While Plaintiff alleged facts earlier in the amended complaint that would support the allegation that Defendant Nationstar's decision to foreclose was improper because payments were not correctly accepted, there is no dispute that Defendant CitiMortgage was not involved in the foreclosure proceedings at all. While Plaintiff could have pled that Defendant CitiMortgage's alleged failure to properly post Plaintiff's payment was a breach of their contract that contributed to the foreclosure, he did not do so.

Plaintiff's claim for breach of contract against Defendant CitiMortgage, therefore, is dismissed. Defendant Nationstar's motion to dismiss as to the breach of contract claim is denied.

## B. Promissory Estoppel

*5 Defendants next argue that Plaintiff cannot state a claim for promissory estoppel because the parties had express contractual agreements. (Dkt. #38 Pg. ID 1223; Dkt. #41 Pg. ID 1287.) The doctrine of promissory estoppel permits a court to enforce an implied agreement between parties. *APJ Assocs., Inc. v. N. Am. Philips Corp.*, 317 F.3d 610, 617 (6th Cir. 2003). Promissory estoppel, however, "may not be used to override the express agreement of the parties contained in written agreements." *Id.* Promissory estoppel is therefore inapplicable where the parties are bound by an express written agreement. *Id.*

Plaintiff does not address this distinction in his responses to the motions to dismiss, instead discussing why promissory estoppel is not subject to the statute of frauds. (Dkt. #43 Pg. ID 1338; Dkt. #44 Pg. ID 1370.) Plaintiff's own amended complaint describes the "promise" required for his promissory estoppel claim as the *"permanent loan modification agreement."* (Dkt. #35 Pg. ID 1045

(emphasis added).) Because Plaintiff's relationship with Defendants was governed by an express written contract, his claim for promissory estoppel fails. Count II of Plaintiff's amended complaint is therefore dismissed with prejudice.

## C. Wrongful Foreclosure

Defendants argue that Plaintiff's home was properly foreclosed because there was a valid default. Defendant CitiMortgage also argues that it cannot be liable for a wrongful foreclosure because it was not the entity that foreclosed on Plaintiff's property.

Michigan law permits a foreclosure by advertisement in certain circumstances. Mich. Comp. Laws § 600.3204. A property owner may challenge a foreclosure proceeding—rendering the foreclosure voidable—by demonstrating defects or irregularities in the proceeding. *Kim v. JPMorgan Chase Bank, N.A.*, 825 N.W.2d 329, 337 (Mich. 2012). "[T]o set aside the foreclosure sale, plaintiffs must show that they were prejudiced by defendant's failure to comply with MCL 600.3204. To demonstrate such prejudice, they must show that they would have been in a better position to preserve their interest in the property absent defendant's noncompliance with the statute." *Id.*

The court disagrees that Plaintiff has not stated a claim for wrongful foreclosure as to Defendant Nationstar. Plaintiff has alleged facts demonstrating a defect in the foreclosure proceeding—namely, that Plaintiff was not in default and "had made all the required payments timely, and in accordance with the modification agreement." (Dkt. #35 Pg. ID 1046.) Because Mich. Comp. Laws § 600.3204(1)(a) permits a foreclosure by advertisement only where "[a] default in a condition of the mortgage has occurred, by which the power to sell became operative," a lack of default by Plaintiff would render the foreclosure sale improper. *See Starr v. Fed. Nat. Mortg. Ass'n*, No. 14-14380, 2015 WL 1120129, at *2–3 (E.D. Mich. Mar. 11, 2015) (O'Meara, J.); *see also JPMorgan Chase Bank v. Zair*, No. 329761, 2017 WL 128238, at *4 (Mich. Ct. App. Jan. 12, 2017). Moreover, according to Plaintiff, had his payments been properly applied, "there would have been no erroneous default and illegal foreclosure." (Dkt. #35 Pg. ID 1046.) Plaintiff has therefore sufficiently alleged prejudice under *Kim*, as he would have been in a better position to preserve his property interest absent Defendants' failure to properly apply his payments.

Defendant Nationstar's claim that Plaintiff did not properly pay the higher amount required under his mortgage is, as noted above, not appropriate for review at this stage.

*6 Again, however, there appears no dispute that Defendant CitiMortgage, which transferred the mortgage to Defendant Nationstar prior to foreclosure, was not involved in the foreclosure proceedings. Defendant CitiMortgage, therefore, cannot have violated Mich. Comp. Laws 600.3204. *See Kemp v. Resurgent Capital Servs.*, No. 13-11794, 2013 WL 5707797, at *3 (E.D. Mich. Oct. 21, 2013) (Cohn, J.) (holding that plaintiff could not allege that defendant Quicken Loans, the originator of her mortgages before a subsequent transfer, "lacked standing" to initiate foreclosure "for the simple reason that Quicken Loans ha[d] no interest [in] either loan and ha[d] no role in the foreclosure proceedings"). Plaintiff's claim for wrongful foreclosure, therefore, is dismissed with prejudice as to Defendant CitiMortgage.

### D. Violation of the Fair Debt Collection Practices Act

Plaintiff alleges that Defendants have violated various provisions of the Fair Debt Collection Practices Act ("FDCPA"). Specifically, Plaintiff claims that Defendants violated the FDCPA by (a) "Failing to properly and completely validate the debt of Counter Plaintiffs [sic] despite numerous oral request [sic] and a written request being made"; (b) "Initiating collection action on an erroneous debt, before validation, despite numerous requests being made by Plaintiff"; and (c) "Using false representations as to the amount of the debts as a means to collect or attempt to collect the debt." (Dkt. #35 Pg. ID 1047.) Plaintiff also alleges that "Defendants violated Section 1692 of the Fair Debt Collection Practices Act by attempting to collect an amount for the debt which is not expressly authorized by the agreement creating the debt or permitted by law." (*Id.*)

Defendant CitiMortgage contends that it cannot be liable for an FDCPA claim for the simple reason that it is not a debt collector. (Dkt. #38 Pg. ID 1225.) The FDCPA, which regulates certain conduct by debt collectors, defines "debt collector" as a person who collects debts owed or due to another. 15 U.S.C. § 1692a(6). As Defendant CitiMortgage points out, however, where a party—like a bank—is "an actual, original, consumer creditor" collecting on its own account, that party is "exempted from the statutory definition of a 'debt

collector.' " *Montgomery v. Huntington Bank*, 346 F.3d 693, 699 (6th Cir. 2003). Plaintiff does not respond to this case law or the argument that Defendant CitiMortgage, as the originator of Plaintiff's loan, is not a debt collector, instead asserting in conclusory fashion that "Defendant Citi [M]ortgage is a debt collector under the Act," without citation. (Dkt. #43 Pg. ID 1345.) Because Defendant CitiMortgage is not a debt collector for the purposes of the FDCPA, Plaintiff's claim for FDCPA violations against Defendant CitiMortgage is dismissed with prejudice.

Defendant Nationstar, as the former servicer of Plaintiff's mortgage, argues that Plaintiff's claim against it for FDCPA violations must be dismissed (1) because to invoke the protections of the FDCPA for a disputed debt, a consumer must notify the debt collector in writing of the dispute, which Plaintiff did not do (Dkt. #41 Pg. ID 1291); (2) because Defendant Nationstar did not have a duty to verify the validity of the debt Plaintiff owed, and therefore Plaintiff cannot set forth a plausible claim that Defendant Nationstar "falsely represent [ed] the amount of the debt" (*Id.* at Pg. ID 1292); and (3) because this count of Plaintiff's amended complaint "contains insufficient facts on which to put Nationstar on notice of the allegations raised" (*Id.*).

Plaintiff specifies for the first time in response to the motion to dismiss that he is claiming violations of 15 U.S.C. § 1692(e)(2), (e)(8), and (e)(10). (Dkt. #44 Pg. ID 1374.) The court, however, will consider only those allegations Plaintiff set forth in the amended complaint, as outlined above.

*7 Plaintiff's first and second allegations of FDCPA violations—that Defendants failed "to properly and completely validate the debt of Counter Plaintiffs [sic] despite numerous oral request [sic] and a written request being made" and that Defendants initiated "collection action on an erroneous debt, before validation, despite numerous requests being made by Plaintiff"—fail as pled. Though the court is not sure to which FDCPA provisions these claims relate, Plaintiff's allegations most clearly invoke § 1692g, which concerns the validation of debts. A debt collector is required under the act to cease collection on a debt where "the consumer notifies the debt collector in writing" within 30 days after the receipt of a notice of debt; a debt collector may resume collection only after validating the debt and sending a verification of the debt to the consumer. § 1692g(b). Here, Plaintiff has not sufficiently alleged that he notified Defendant Nationstar, in writing, that he disputed the debt. Plaintiff's "numerous oral request [sic]," as alleged, would not activate the requirements of § 1692g(b). Moreover, though Plaintiff

Goss v. CitiMortgage, Inc., Slip Copy (2017)

references one "written request being made," the amended complaint cites "Exhibits [sic] 12," attached to the amended complaint, for this proposition; this exhibit (Dkt. #35-13), is a letter styled as a "Qualified Written Request Under RESPA" sent to Defendant CitiMortgage—not Defendant Nationstar.

It is true that § 1692g(a) requires that debt collectors provide consumers with certain information concerning the debt it is trying to collect. But Plaintiff has not alleged that Defendant Nationstar failed to provide this required information. Rather, Plaintiff's amended complaint limits itself to the allegation that Defendant Nationstar did not validate the debt despite requests to do so. Because this requirement is triggered only by a written notice of dispute pursuant to § 1692e(b), Plaintiff has not adequately alleged that Defendant Nationstar improperly refused to validate the debt.

The court disagrees with Defendant Nationstar, however, that Plaintiff's claim for "[u]sing false representations as to the amount of the debts as a means to collect or attempt to collect the debt" should be dismissed. Though not cited, Plaintiff seems to refer to § 1692e, which prohibits a debt collector from "us [ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt." Plaintiff's amended complaint alleges that "Plaintiff began receiving letters from Defendant Nationstar Mortgage indicating they had no record of any payments since June of 2016, when in fact, the money for the payments had been removed from Plaintiff's bank account by Defendant Citimortgage." (Dkt. #35 Pg. ID 1041.) Plaintiff cites a letter from Defendant Nationstar, attached as an exhibit to the amended complaint, dated September 2, 2016 (when Defendant Nationstar was still the servicer of Plaintiff's mortgage). (Dkt. #35-16.) The letter indicates that Plaintiff's loan is "past due in the amount of $5,199.63." (*Id.*) As noted above, the court will not now consider whether or not this statement was false or misleading, as to do so would be inappropriate on a motion to dismiss. Plaintiff's allegation, therefore—that this statement was false and an attempt to collect a debt—is sufficiently pled.

Plaintiff's remaining FDCPA claim—that Defendants attempted "to collect an amount for the debt which is not expressly authorized by the agreement creating the debt or permitted by law"—fails as insufficiently pled. The court agrees with Defendant Nationstar that this claim does not "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court cannot tell, from the face of Plaintiff's amended

complaint, which section of the FDCPA Plaintiff might be referencing. To the extent, then, that Plaintiff means to set out a separate violation of the FDCPA by this language, the court will dismiss it.

### E. Violation of the Fair Credit Reporting Act

Defendants argue that Plaintiff's claim for violation of the Fair Credit Reporting Act ("FCRA") must be dismissed because the provision of the FCRA he cites in the amended complaint—15 U.S.C. § 1681s-2(a)—does not provide a private right of action. (Dkt. #38 Pg. ID 1226; Dkt. #41 Pg. ID 1293.) The Sixth Circuit has held that the FCRA provides a private right of action for violations of § 1681s–2(b)—not § 1681s-2(a). *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 615 (6th Cir. 2012); *see also Farris v. Morgan Stanley Dean Witter Credit Corp.*, No. 08-11851, 2010 WL 3023808, at *4 (E.D. Mich. July 29, 2010) (Rosen, J.) ("There is no private cause of action for consumers against furnishers of information for failure to comply with § 1681 s–2(a).").

**\*8** Plaintiff has not responded to this precedent, and instead block quotes—for three pages—the statutory language of § 1681s–2. (Dkt. #43 Pg. ID 1346–48; Dkt. #44 Pg. ID 1377–80.) If Plaintiff meant to plead a violation of § 1681s–2(b), he has not done so. His averment in the amended complaint that "[t]he above-described conduct violated the Fair Credit Reporting Act, including but not limited to, 15 USC § 1681s-2(a)," (Dkt. #35 Pg. ID 1049), is insufficient to state a violation of § 1681s–2(b). Plaintiff's claim for violation of § 1681s–2(a) of the FCRA, therefore, is dismissed with prejudice.

### F. Quiet Title

Defendants argue that Plaintiff has not established a prima facie claim for quiet title because—as he was the one who defaulted on the mortgage—he has not alleged that he has superior interest in the title to his property. (Dkt. #38 Pg. ID 1227; Dkt. #41 Pg. ID 1294.) Defendant CitiMortgage further contends that Plaintiff's quiet title claim should be dismissed as it relates to Defendant CitiMortgage because it "no longer claims an interest in the Property." (Dkt. #38 Pg. ID 1229.)

Goss v. CitiMortgage, Inc., Slip Copy (2017)

Quiet title in Michigan is governed by Mich. Comp. Law § 600.2932(1), which "codified actions to quiet title and authorized suits to determine competing parties' respective interests in land." *Republic Bank v. Modular One, LLC*, 591 N.W.2d 335, 337 (Mich. Ct. App. 1998), *overruled on other grounds by Stokes v. Millen Roofing Co.*, 649 N.W.2d 371 (Mich. 2002). "In an action to quiet title, the plaintiffs have the burden of proof and must make out a prima facie case of title." *Beulah Hoagland Appleton Qualified Pers. Residence Tr. v. Emmet Cty. Road Comm'n*, 600 N.W.2d 698, 700 (Mich. Ct. App. 1999). "If the plaintiffs make out a prima facie case, the defendants then have the burden of proving superior right or title in themselves." *Id.*

The court agrees that Plaintiff cannot sustain a claim for quiet title against Defendant CitiMortgage, which does not claim an interest in the property. However, Defendant Nationstar's argument that Plaintiff cannot sustain a claim of quiet title because of his default fails for the same reasons as the other default-related claims described above: this stage is inappropriate for a determination of whether there was a valid default. Plaintiff claims that his property was wrongly foreclosed on because of actions by Defendants—namely, that they did not properly apply his mortgage payments to his account. Plaintiff, therefore, has alleged that he has a superior claim to the property sufficient to survive a motion to dismiss as to Defendant Nationstar.

### G. Violation of the Real Estate Settlement Procedures Act as to Defendant CitiMortgage

Finally, Defendant CitiMortgage contends that it cannot be liable for Plaintiff's claim that it violated RESPA by "fail[ing] to respond to Plaintiff's inquiry and make the necessary corrections to [his] mortgage, in violation of 12. U.S.C. [§] 2605(e)." (Dkt. #35 Pg. ID 1052.) Defendant CitiMortgage contends that this claim must be dismissed because (1) it did respond to Plaintiff's request (Dkt. #38 Pg. ID 1230); (2) its response was "adequate under the statute" (*Id.* at Pg. ID 1230–31); (3) Plaintiff has not adequately pled that the RESPA violation caused his damages (*Id.* at Pg. ID 1232); (4) its response was not required under RESPA because Plaintiff's letter amounted to a "duplicative notice of error" (*Id.* at Pg. ID 1232); and (5) Plaintiff sent his request to the incorrect address (*Id.* at Pg. ID 1233–35). Plaintiff focuses his response on two of these arguments, contending that Defendant

CitiMortgage's receipt of the request obviates any requirement to send it to a particular address and that he has adequately pled that Defendant CitiMortgage's RESPA violation caused his damages.

**\*9** There appears no dispute that Defendant CitiMortgage did respond, in some fashion, to Plaintiff's RESPA request. The court has reviewed the response Defendant CitiMortgage claims it sent to Plaintiff, attached to Defendant CitiMortgage's motion (Dkt. #38-2), which the court may properly consider because it was referred to in Plaintiff's amended complaint (Dkt. #35 Pg. ID 1040–41). *See Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997). Though Plaintiff does not specifically respond, in his briefing, to the argument that Defendant CitiMortgage's letter sufficiently addresses his RESPA request, the court cannot determine at this stage that the response was adequate. Although the letter purports to include an "Escrow Analysis Disclosure Statement (EADS) from April 19, 2016" (Dkt. #38-2 Pg. ID 1013), none is included as part of the exhibit. The court will not determine at this stage, therefore, that Defendant CitiMortgage is entitled to dismissal of the RESPA claim on the basis that it adequately responded.

The court will similarly not dismiss the RESPA claim on the basis that Plaintiff's qualified written response amounted to a duplicative notice of error to which Defendant CitiMortgage was not required to respond. According to Defendant CitiMortgage's brief, "12 U.S.C. § 2605(g)(1)(i) states that a servicer is not required to respond if '[t]he asserted notice of error is substantially the same as an error previously asserted by the borrower for which the servicer has previously complied with its obligation to respond....'" (Dkt. #38 Pg. ID 1232.) This provision of the U.S. Code—12 U.S.C. § 2605(g)(1)(i)—does not exist. Defendant CitiMortgage, apparently, intends to rely on 12 C.F.R. § 1024.36(f)(1)(i), which provides that a servicer is not required to respond to a qualified written request if "[t]he information requested is substantially the same as information previously requested by the borrower for which the servicer has previously complied with its obligation to respond."

Defendant CitiMortgage cites an April 12, 2016 letter it sent to Plaintiff (evidently in response to a letter sent by Plaintiff in late March 2016) that Plaintiff attached to his amended complaint. (Dkt. #35-6.) Defendant CitiMortgage contends that this letter adequately responded to Plaintiff's March 2016 letter, and that, therefore, Plaintiff's June 2016 letter to Defendant CitiMortgage was duplicative and did not require a response. Because this letter similarly does not include an

Goss v. CitiMortgage, Inc., Slip Copy (2017)

escrow analysis (though it cites the one that Defendant CitiMortgage claims it "mailed to [Plaintiff] on July 20, 2015" (Dkt. #35-6 Pg. ID 1113)), the court cannot conclude at this stage that Defendant CitiMortgage was not required to respond to Plaintiff's June 2016 qualified written request. To do so would require the court to find that this initial (April 2016) response was adequate or provided Plaintiff with "substantially the same" information he requested in the June 2016 letter. Based on the information presently before the court, it cannot make such a finding.

As to Defendant CitiMortgage's argument that Plaintiff has not adequately alleged that the RESPA violation caused his damages, Plaintiff responds that a RESPA violation does not require RESPA damages to be pled artfully. (Dkt. #43 Pg. ID 1353.) Plaintiff cites *Marais v. Chase Home Fin. LLC*, 736 F.3d 711, 720 (6th Cir. 2013). In *Marais*, defendant Chase Home Finance, a servicer of the plaintiff's loan, argued that the plaintiff's RESPA violation claim should be dismissed because the plaintiff had failed to allege a sufficient causal link between the plaintiff's alleged damages and Chase's insufficient response to her qualified written request under RESPA. The Sixth Circuit noted that two prior Sixth Circuit cases "counsel[ ] against dismissal of RESPA claims on the basis of inartfully-pleaded actual damages." *Id.* at 722. The Sixth Circuit determined that the plaintiff had sufficiently alleged causation by pleading that her higher interest rates and Chase's provision of incorrect information to consumer reporting agencies were caused by Chase's insufficient response to her request. *Id.* at 721.

**\*10**  Here, Plaintiff has alleged that Defendant CitiMortgage's failure to adequately respond to his letter caused his foreclosure, caused him to incur a higher interest rate on the equipment he purchases for his business, and caused him to be denied a business loan. (Dkt. #35 Pg. ID 1053.) In light of the Sixth Circuit's guidance in *Marais*, the court finds that these allegations of damages are sufficient to withstand a motion to dismiss.

Finally, the court rejects Defendant CitiMortgage's argument that it cannot be liable under RESPA because Plaintiff did not send his notice of error to the correct address. Defendant CitiMortgage raised this same argument in its opposition to Plaintiff's motion to amend his complaint. (Dkt. #33 Pg. ID 992.) The court "set[ ] aside" the issue of "whether a failure to use an established address would be fatal to Plaintiff's statutory claim" because it was not obvious whether Defendant CitiMortgage "had established a QWR mailing address." (Dkt. #34 Pg. ID 1034.) The court noted that the

regulation permitting a servicer to established a designated address—12 C.F.R. § 1024(c)—also requires the servicer to "post the designated address on any Web site maintained by the servicer if the Web site lists any contact address for the servicer," an issue Defendant CitiMortgage had omitted from its briefing. (Dkt. #34 Pg. ID 1034.) The court noted that it would need "some evidence" that Defendant CitiMortgage's purported designated address in Hagerstown, MD "appeared on the website at the time Plaintiff sent his inquiry." (*Id.*)

Defendant CitiMortgage has apparently attempted to provide this evidence by noting in its motion to dismiss that "[c]urrently, [its] website states, " 'To submit a written Notice of Error, Request for Information or Qualified Written Request, it must be sent to the following designated address: CitiMortgage, Inc. P.O. Box 6728 Sioux Falls, SD 57117-6728.[']" (Dkt. #38 Pg. ID 1234.) The problem here, however, is that this does not cure the deficiency noted by the court—that it would need evidence of the designated address on the website *"at the time Plaintiff sent his inquiry."* Defendant CitiMortgage's averment that its website *"currently"* lists an address that Plaintiff did not use is insufficient.

## IV. CONCLUSION

Defendant Nationstar has not demonstrated that it is entitled to dismissal of certain of Plaintiff's claims based on the argument that he defaulted on his mortgage—namely Plaintiff's claims for breach of contract, wrongful foreclosure, and quiet title. Defendant CitiMortgage is, however, entitled to dismissal on those claims that allege wrongful activity in the foreclosure itself, namely Plaintiff's claims for breach of contract, wrongful foreclosure, and quiet title. Plaintiff's claims for promissory estoppel and violation of the FCRA § 1681 s–2(a) are legally insufficient and are dismissed with prejudice. Plaintiff's claim for violations of the FDCPA are dismissed with prejudice as to Defendant CitiMortgage and dismissed in part as to Defendant Nationstar. Plaintiff's claim against CitiMortgage for violation of RESPA is sufficiently alleged at this stage. Accordingly,

IT IS ORDERED that Defendants' Motions to Dismiss (Dkt. ##38, 41) are GRANTED IN PART and DENIED IN PART.

Specifically, as to Defendant CitiMortgage, IT IS

Goss v. CitiMortgage, Inc., Slip Copy (2017)

GRANTED in that Count I (Breach of Contract) is DISMISSED and the following claims are DISMISSED WITH PREJUDICE: Count II (Promissory Estoppel); Count III (Wrongful Foreclosure); Count IV (Violations of the Fair Debt Collection Practices Act); Count V (violations of the Fair Credit Reporting Act § 1681 s–2(a)); and Count VI (Quiet Title). Defendant CitiMortgage's motion to dismiss Count VII (violation of the Real Estate Settlement Procedures Act) is DENIED.

**\*11** As to Defendant Nationstar, IT IS GRANTED in that the following claims are DISMISSED WITH PREJUDICE: Count II (Promissory Estoppel) and Count V (Violations of the Fair Credit Reporting Act § 1681

s–2(a)). Defendant Nationstar's motion to dismiss Count I (Breach of Contract), Count III (Wrongful Foreclosure), and Count VI (Quiet Title) is DENIED. Defendant Nationstar's motion to dismiss Count IV (Violations of the Fair Debt Collection Practices Act) is DENIED with respect to § 1692e; all other claimed violations of the FDCPA are DISMISSED.

**All Citations**

Slip Copy, 2017 WL 5499400

Footnotes

1    Though the court generally refers only to Plaintiff's Amended Complaint and the documents attached to it on a motion to dismiss, the court may also consider documents that are in the public record. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001). Plaintiff's initial mortgage, which is attached to Defendant CitiMortgage's Motion to Dismiss (Dkt. #41), is such a document.

2    Though Plaintiff's Amended Complaint names individual Zana Zaitouna as a Defendant, Defendant Zaitouna was not involved in these motions. Therefore, where the court refers to "Defendants" in the remainder of this order, it is referring only to Defendants CitiMortgage and Nationstar unless otherwise noted.

---

End of Document                                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT O

Elson v. Deutsche Bank Nat. Trust Co., Not Reported in F.Supp.2d (2012)

2012 WL 1902916
Only the Westlaw citation is currently available.
United States District Court,
E.D. Michigan,
Southern Division.

Darlene **ELSON**, Plaintiff,
v.
**DEUTSCHE BANK** NATIONAL **TRUST**
COMPANY, Trustee, Argent Securities Inc.,
American Home Mortgage Servicing, Inc., Argent
Mortgage Company, LLC, Person who bought
property "John Doe," Defendants.

No. 11–14100.
|
May 25, 2012.

**Attorneys and Law Firms**

Darlene **Elson**, Southfield, MI, pro se.

Dawn T. Yeaton, Martin S. Frenkel, Mark E. Plaza,
Maddin, Hauser, Southfield, MI, for Defendants.

*OPINION AND ORDER GRANTING DEFENDANTS
DEUTSCHE BANK AND AMERICAN HOME
MORTGAGE SERVICINGS' MOTION TO DISMISS*

GERALD E. ROSEN, Chief Judge.

*INTRODUCTION*

**\*1** This matter is presently before the Court on the Fed. R
Civ. P. 12(b)(6) Motion to Dismiss filed by Defendants
**Deutsche Bank** National **Trust** Company and American
Home Mortgage Company.[1] Plaintiff Darlene **Elson**,
proceeding *pro se*, has responded. Having reviewed the
parties' briefs and supporting evidence, the Court has
determined that oral argument is not necessary. Therefore,

pursuant to Eastern District of Michigan Local Rule
7.1(f)(2), this matter will be decided on the briefs. This
Opinion and Order sets forth the Court's ruling.

*FACTUAL BACKGROUND*

On March 9, 2006, Plaintiff Darlene **Elson** borrowed
$196,000.00 from Argent Mortgage Company, LLC
("Argent"). To secure her indebtedness, Plaintiff executed
a mortgage in favor of Argent on real property located at
23756 Philip Drive in Southfield, Michigan. Effective
February 11, 2009, Argent, through its attorney-in-fact,
Citi Residential Lending, Inc., assigned the mortgage to
Defendant **Deutsche Bank** National **Trust** Company, as
Trustee for Argent Securities, Inc., Asset–Backed
Pass–Through Certificates, Series 2006–W5, under the
Pooling and Servicing Agreement Dated May 1, 2006. On
October 29, 2010, the mortgage was assigned to **Deutsche
Bank** National **Trust** Company, Trustee for Argent
Securities, Inc. ("DBNTC").

Plaintiff defaulted on the mortgage and, as a consequence,
DBNTC foreclosed on the property by advertisement,
pursuant to Michigan law. On March 8, 2011, the
property was sold at a sheriff's sale to DBNTC for
$48,750.00. A sheriff's deed was executed and recorded,
along with the sheriff's affidavit of the sale. The sheriff's
affidavit noted that the six-month redemption period
provided under M.C.L. § 600.3240(8) would end on
September 8, 2011.

On August 23, 2011, shortly before the redemption period
expired, Plaintiff instituted this action in Oakland County
Circuit Court. Defendants DBNTC and American Home
Mortgage Servicing, Inc. ("AHMS") removed the case to
this Court on September 20, 2011 on both federal
question and diversity of citizenship grounds.

In her Complaint, Plaintiff makes various allegations
regarding the mortgage loan origination and the
procedures involved in the foreclosure process. In Count
I, which is captioned "Breach of Contract," Plaintiff
alleges that Defendants DBNTC and Argent Mortgage
Company, LLC failed to provide her with
foreclosure-related notices as required by the mortgage
agreement.

Although titled "Gross Negligence," in Count II Plaintiff
alleges a claim of breach of duty to act in good faith and

fair dealing. Count III contains further allegations that Defendants breached the implied contractual duty of good faith and fair dealing. In Count IV, Plaintiff alleges that the foreclosure sale was wrongful because she did not receive a notice of the pending foreclosure. There is no Count V in the Complaint.

Counts VI and VII are captioned "Abuse of Process and Malicious Prosecution." However no process nor prosecution are pled. Rather, in these Counts, Plaintiff alleges that Defendants' conduct during the loan origination violated the Truth–In–Lending–Act ("TILA"). In Count IX [the Complaint does not have a Count VIII], Plaintiff alleges violations of the Real Estate Settlement Procedures Act ("RESPA").

*2 In Counts X–XIII, captioned "Fraudulent Concealment, Fraudulent Misrepresentation, Negligent Misrepresentation," Plaintiff asserts that Defendants made a variety of misrepresentations during the loan closing. In Count XIV Plaintiff claims that Defendants conspired to commit the fraud alleged in Counts X–XIII. Finally, in Count XV, Plaintiff claims that she is entitled to relief under the Racketeer Influenced and Corrupt Organization Act ("RICO") because Defendants used the interstate mail and wire systems to commit the fraud alleged in Counts X–XIII.

### APPLICABLE STANDARDS

Fed.R.Civ.P. 12(b)(6) authorizes the Court to dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted ..." In evaluating a Rule 12(b)(6) motion, the Court must view the complaint in the light most favorable to the plaintiff and accept all well-pled factual allegations as true. *League of United Latin American Citizens v. Bredesen,* 500 F.3d 523, 527 (6th Cir.2007). However, a plaintiff's factual allegations must rise above the speculative level and be more than legal conclusions or formulaic recitations of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *see also Association of Cleveland Fire Fighters v. City of Cleveland, Ohio,* 502 F.3d 545, 548 (6th Cir.2007). This standard of pleading does not require "pleading of specifics, but only enough to state a claim for relief that is plausible on its face." *Twombly* at 570; *see also Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009).

Under *Iqbal,* this Court must consider the plausibility of pleaded facts before making a determination as to whether those facts, if true, give rise to a cause of action. *Iqbal,* 129 S.Ct. at 1949. As such, a complaint must surpass the realm of mere possibility and into that of plausibility. *Id.* Accordingly, the Court may consider surrounding context to distinguish plausible claims from possible claims. *Id.*

If in a Rule 12(b)(6) motion, matters outside of the pleadings are presented to the court, under Rule 12(d), the motion must be treated as a Rule 56 motion for summary judgment. However, documents attached to a motion to dismiss that are referred to in the complaint and central to the claims are deemed to form part of the pleadings. *Greenberg v. Life Ins. Co. of Virginia,* 177 F.3d 507, 514 (6th Cir.1999); *Armengau v. Cline,* 7 Fed. Appx. 336, 344 (6th Cir.2001). Further, "[a] court may consider matters of public record in deciding a motion to dismiss without converting the motion to one for summary judgment." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.,* 508 F.3d 327, 336 (6th Cir.2007).

In the present case, Defendants have attached to their motion copies of the mortgage, assignments of the mortgage, and the sheriff's deed and attachments thereto, all of which have been duly recorded with the Oakland County Register of Deeds. All of these documents, and the information within, are referenced in the Plaintiff's Complaint, and are central to Plaintiff's claims. These exhibits, therefore, may be deemed to form part of the original Complaint and, accordingly, may be considered in deciding Defendants' Rule 12(b)(6) motion without converting it to a Rule 56 motion. *See Greenberg v. Life Ins. Co. of Va.,* 177 F.3d 507, 514 (6th Cir.1999).

### DISCUSSION

#### A. PLAINTIFF LACKS STANDING TO CONTEST THE FORECLOSURE SALE.
*3 The Bank Defendants assert that Plaintiff lacks standing and no longer has an interest in the Property, which is required to challenge foreclosure proceedings, including the sheriff's sale. The Court agrees. Once the redemption period following the foreclosure of a property expired, Plaintiff's rights in, and title to, the property were extinguished, and she lost all standing to bring claims with respect to the property. This principle is well

Elson v. Deutsche Bank Nat. Trust Co., Not Reported in F.Supp.2d (2012)

established in Michigan law.

In *Piotrowski v. State Land Office Board,* 302 Mich. 179, 4 N.W.2d 514 (1942), the Michigan Supreme Court held that the mortgagors in that case had "lost all their rights, title, and interest in and to the property at the expiration of their right of redemption." *Id.* 302 Mich. at 185, 4 N.W.2d at 516. The *Piotrowski* standard has been consistently applied by Michigan state and federal courts to bar former owners from making any claims with respect to foreclosed property after the end of the redemption period. *See e.g., Stein v. U.S. Bancorp,* 2011 WL 740537 (E.D.Mich.Feb.24, 2011); *Overton v. Mortg. Elec. Registration Sys .,* 2009 WL 1507342 (Mich.App. May 28, 2009) (dismissing former owner's claim of fraud where redemption period had expired); *Kama v. Wells Fargo Bank,* 2010 WL 4386974, *2 (E.D.Mich., Oct.29, 2010) (dismissing plaintiff's claims for violation of the foreclosure statute, to quiet title and for promissory estoppel because redemption period had expired); *Moriarty v. BNC Mortg., Inc.,* 2010 WL 5173830 (E.D.Mich.Dec.15, 2010) (dismissing action seeking a declaratory judgment voiding foreclosure proceedings).

Here, the redemption period expired on September 8, 2011. Plaintiff has not alleged or pled any facts that indicate that she timely attempted to redeem the property. Because Plaintiff failed to redeem the property before the redemption period expired, DBNTC became vested with "all right, title and interest" in the property by operation of law. At that point, Plaintiff, the former owner, lost standing to assert claims with respect to the property. *Overton v. Mortgage Electronic Registration Sys., Inc., supra; Kama v. Wells Fargo Bank, supra.*

This outcome is not altered by Plaintiff's filing of this lawsuit on August 23, 2011, two weeks before the expiration of the redemption period. *Overton, supra,* 2009 WL 1507342 at * 1 (holding that the plaintiff's filing of his lawsuit one month before the expiration of the redemption period did not toll the redemption period and once that period expired, the plaintiff lacked standing to challenge the foreclosure proceedings). As the Michigan Court of Appeals explained in *Overton:*

> Plaintiff's suit did not toll the redemption period. Plaintiff is simply trying to wage a collateral attack on the foreclosure of the property. Even if his assertions were true and the cases he cites indeed supported his arguments, plaintiff was required to raise the arguments when foreclosure

proceedings began. Plaintiff made no attempt to stay or otherwise challenge the foreclosure and redemption sale. Although he filed his suit before the redemption period expired, that was insufficient to toll the redemption period. The law in Michigan does not allow an equitable extension of the period to redeem from a statutory foreclosure sale in connection with a mortgage foreclosed by advertisement and posting of notice in the absence of a clear showing of fraud or irregularity.

*4 *Id.* (citations omitted). *See also Moriarity v. BNC Mortgage, Inc.,* 2010 WL 5173830 at * 2 (E.D.Mich., Dec.15, 2010) (suit filed one month before the expiration of the redemption period, same); *Napso v. Wells Fargo Bank, N.A.,* 2011 WL 1575372 (E.D.Mich., Apr.26, 2011) (suit filed one day before the redemption period expired, same); *Mitan v. Federal Home Loan Mtg. Corp.,* 2011 WL 4837502 at * 2(E.D.Mich., Sept.22, 2011) (suit filed two weeks prior to expiration of the redemption period, same); *Galati v. Wells Fargo Bank,* 2011 WL 5178276 at —— 3–4 (E.D.Mich., Nov.1, 2011) (suit filed three weeks before the expiration of the redemption period, same); *Gendiar v. BAC Home Loans Servicing, L.P .,* 2012 WL 130139 (E.D.Mich., Jan.17, 2012) (suit filed on day that redemption period expired, same); *Dingeman v. One West Bank FSB,* 2012 WL 884357 at —— 3–4 (E.D.Mich., Mar.14, 2012) (plaintiffs' suit filed four days before the expiration of the redemption period did not toll the redemption period and plaintiffs' failure to redeem prior to the expiration of the period terminated their standing to assert defects in the foreclosure proceedings and/or the sheriff's sale).

In short, once the redemption period expired on August 23, 2011, Plaintiff lost standing to maintain any action to quiet title or to assert any defect in the foreclosure proceedings.

While the redemption period can be tolled, "[t]he law in Michigan does not allow an equitable extension of the period to redeem from a statutory foreclosure sale in connection with a mortgage foreclosed by advertisement in the absence of a clear showing of fraud or irregularity." *Schulthies v. Barron,* 16 Mich.App. 246, 247–48, 167 N.W.2d 656 (2007); *see also Sweet Air Investment, Inc., v. Kenney,* 275 Mich.App. 492, 497, 729 N.W.2d 656 (2007) ( "The Michigan Supreme Court has held that it

would require a strong case of fraud or irregularity, or some peculiar exigency, to warrant setting a foreclosure sale aside." *Id.,* quoting *United States v. Garno,* 974 F.Supp. 628, 633 (E.D.Mich., 1997), (citing *Detroit* **Trust** *Co. v. Agozzinio,* 280 Mich. 402, 405–406, 273 N.W. 747 (1937), and *Calaveras Timber Co. v. Michigan* **Trust** *Co.,* 278 Mich. 445, 450, 270 N.W. 743 (1936)).)

Furthermore, filing an action challenging the validity of the foreclosure sale is insufficient to toll the redemption period. *Overton v. Mortg. Elec. Registration Sys.,* 2009 WL 1507342, *1; *see also Dingman v. OneWest Bank,* 2012 WL 884357, *4 (E.D.Mich., March 14, 2012); *Galati v. Wells Fargo Bank,* 2011 WL 5178276, *3–4 (E.D.Mich., Nov.1, 2011); *Nafso v. Wells Fargo Bank,* 2011 WL 155372 (E.D.Mich., April 26, 2011). Plaintiff filed this action on August 23, 2011, however, the redemption period expired on September 8, 2011. Plaintiff has not alleged or pled any facts that indicate that she timely attempted to redeem the property. Thus, unless Plaintiff can make a "clear showing" of fraud or irregularity, no equitable extension of the redemption period is permitted and Plaintiff will lack the necessary standing to challenge the validity of the foreclosure.

**\*5** In order to establish a claim for fraud or misrepresentation under Michigan law, a plaintiff must demonstrate that:

(1) the defendant made a material misrepresentation;

(2) it was false;

(3) when the defendant made it, he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion;

(4) he made it with the intention that it should be acted upon by the plaintiff;

(5) the plaintiff acted in reliance upon the false misrepresentation; and

(6) the plaintiff thereby suffered injury.

*Aerospace America, Inc. v. Abatement Technologies, Inc.,* 738 F.Supp. 1061, 1068 (E.D.Mich.1990) (citing *Hi–Way Motor Co. v. International Harvester Co.,* 398 Mich. 330, 247 N.W.2d 813, 816 (1976)). Each of the above elements must be established by the plaintiff by clear, satisfactory and convincing evidence. *Id.; Youngs v. Tuttle Hill Corp.,* 373 Mich. 145, 147, 128 N.W.2d 472 (1964); *Hi–Way Motor Co. supra,* 398 Mich. at 336, 247 N.W.2d 813. Further, all of the elements must be found to exist; the absence of any one of them is fatal to recovery.

*Hi–Way Motor Co, supra.* Plaintiff's bare allegations that Defendants failed to send her the notices referenced in the mortgage contract and failed to comply with the requirements of M.C.L. § 600.3204, *et seq,* do not come close to making the required strong showing of fraud.

Further, even if Plaintiff could make a showing that the foreclosure sale was somehow defective, she would not be able to set aside the sheriff's deed. In Michigan "a defect in notice renders a foreclosure sale voidable and not void." *Jackson Investment Corp. v. Pittsfield Prods. Inc.,* 162 Mich.App. 750, 756, 413 N.W.2d 99 (1987). The intent of the court's ruling in *Jackson Investment* was to give security to the title for real property and allow for an examination of whether any harm was caused by the defect. *Id.* Thus, a sheriff's sale should not automatically be nullified without first examining the harm suffered by the mortgagor or the interests of intervening third parties. *Id.* In a case where "the mortgagor would have been in no better position had notice been fully proper and the mortgagor lost no potential opportunity to preserve some or any portion of his interest in the property," this is especially true. *Id. See also Sweet Air Investment, Inc. v. Kenney, supra,* 275 Mich.App. at 503, 739 N.W.2d 656 (holding that a defect in the foreclosure notice was insufficient grounds to invalidate the foreclosure sale, because of a lack of prejudice). In *Sweet Air,* the defendant property-owners waited until the plaintiff instituted eviction proceedings against them to challenge the foreclosure sale. *Sweet Air,* 275 Mich.App. at 503, 739 N.W.2d 656. The defendants made no effort to timely challenge the validity of the foreclosure sale or to redeem the property within the redemption period. *Id.* Based on those facts, the court concluded that no prejudice had been shown. *Id.*

**\*6** In the case at bar, Plaintiff cannot show that she was prejudiced from any alleged defect in the notice. Plaintiff admits that she received a notice of default and that she was aware that she had fallen behind on her mortgage payments. Compl. ¶ 29. Plaintiff has not pled facts nor has she presented any evidence that the alleged defect in notice (1) prevented her from making a bid at the sale; (2) that she had the funds to outbid the highest bidder at the sale, let alone pay the entire unpaid balance owing on the loan; or (3) that she attempted to redeem the property during the redemption period. Indeed, Plaintiff does not indicate how the alleged defects in the mortgage process prejudiced her. Instead, she simply alleges that the foreclosure occurred as a proximate result of the failure to provide the required documents. Because Plaintiff has failed to show that there existed a strong case of fraud or irregularity, Plaintiff lacks standing to challenge any alleged defects in the foreclosure.

Elson v. Deutsche Bank Nat. Trust Co., Not Reported in F.Supp.2d (2012)

**B. *PLAINTIFF HAS FAILED TO STATE A CLAIM FOR BREACH OF CONTRACT OR WRONGFUL FORECLOSURE***

In Count I, Plaintiff alleges a claim of breach of contract predicated upon Defendants alleged failure to provide her with certain notices. Similarly, in Count IV, Plaintiff complains that she did not receive the notice of the invocation of the power of foreclosure as required under MCL § 600.3208.

Pursuant to her mortgage agreement, Plaintiff was entitled to receive a notice of the default that specifies the action required to cure, a date by which the default must be cured, and that failure to cure the default may result in acceleration. *See* Compl. ¶¶ 33, 42; Mortgage Agreement, Defendants' Ex. A, ¶ 22. The mortgage agreement also requires the Lender give notice to the mortgagor in the event that it decides to invoke the power of sale. Defendants' Ex. A, ¶ 22.

Although within Count I in ¶¶ 42–43, Plaintiff claims that she never received any notices from the Defendants, in an earlier section of the Complaint, Plaintiff admits that she received a notice of default at some point in 2010. Compl. ¶ 29. Plaintiff's allegations are not only contradicted by her own statements, they are further undermined by the documentation attached to, and recorded with, the sheriff's deed. This documentation includes an affidavit of an employee of Potestivo & Associates P.C. (counsel for DBNTC's mortgage servicer) stating that she sent the notice of default to the Plaintiff on October 8, 2010. Def. Ex. D p. 3. The documentation also includes an affidavit of posting, which evidences that the foreclosure sale notice was affixed in a conspicuous place upon Plaintiff's premises. Def. Ex. D p. 3 p. 5. In light of this documentary evidence, the Court finds that Plaintiff's Complaint fails to state a plausible claim of breach of contract or wrongful disclosure based on the alleged failure of Defendants to provide her with notices of default or of the foreclosure sale. Therefore, Counts I and IV must be dismissed under the standard outlined in *Iqbal*.

**C. *PLAINTIFF CANNOT RECOVER FOR A BREACH OF THE IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING***

*\*7* In Count II and III of her Complaint, Plaintiff alleges that Defendants were obligated to act with good faith and to deal fairly with Plaintiff.² Assuming that Plaintiff has pled facts sufficient to give rise to a claim for breach of an implied duty of good faith and fair dealing, no such cause of action is cognizable under Michigan law. *See Fodale v. Waste Management of Michigan, Inc.*, 271 Mich.App. 11, 718 N.W.2d 827 (2006) (citing *Belle Isle Grill Corp. v. Detroit*, 256 Mich.App. 463, 476, 666 N.W.2d 271 (2003)) (holding that Michigan law "does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing.")³

**D. *PLAINTIFF'S TILA AND RESPA CLAIMS ARE TIME BARRED***

While Counts VI and VII are titled "Abuse of Process and Malicious Prosecution," Plaintiff alleges in these counts only that Defendant Argent Mortgage Company violated the Truth–in–Lending Act ("TILA") in making certain representations to her at the mortgage loan closing, and Defendant DBNTC acted in concert with Argent. In Count IX, Plaintiff claims that Defendants violated the Real Estate Settlement Procedures Act ("RESPA"). Claims for damages under TILA and RESPA are subject to the statutes of limitations set forth in 15 U.S.C. § 1640 and 12 U.S.C. § 2614.

1. *Plaintiff's TILA Claim is Time Barred by a 1–year Statute of Limitations and a 3–year Statute of Repose.*
15 U.S.C. § 1640(e) provides, "any action under this section may be brought ... within one year from the date of the occurrence of the violation." In the present case, Plaintiff's claims for damages are based on alleged wrong doings that occurred before or at the closing of the mortgage on March 9, 2006. In order to bring claims under TILA, Plaintiff would have had to have initiated this action by March 9, 2007. However, Plaintiff did not file her Complaint until August 26, 2011—more than five years after the closing of the loan. As such, Plaintiff's TILA claims are time-barred.

When fraudulent concealment is established the TILA statute of limitations is subject to equitable tolling. *Mills v. Equicredit Corp.*, 294 F.Supp.2d 903, 908 (E.D.Mich.2003), aff'd, 172 Fed. Appx 652 (6th Cir.2006); *Jones v. TransOhio Savs. Ass'n.*, 747 F.2d 1037, 1041 (6th Cir.1984). To establish fraudulent

concealment a plaintiff must show that "(1) the defendant took affirmative steps to conceal the plaintiff's cause of action; and (2) the plaintiff could not have discovered the cause of action despite exercising due diligence." *Mills,* 294 F.Supp.2d at 908; *see also Jarrett v. Kassel,* 972 F.2d 1415, 1423 (6th Cir.1992), *cert. denied,* 507 U.S. 916, 113 S.Ct. 1272, 122 L.Ed.2d 667 (1993).

Plaintiff accuses Defendants of concealing facts that would have led her to discover this cause of action. However, Plaintiff's allegation is conclusory as she pleads no facts support her claim. Such conclusory allegations cannot provide a basis for equitable tolling. *See e.g. In re Community Bank of Northern Virginia,* 467 F.Supp.2d 466, 479 (W.D.Pa.2006) (holding that a plaintiff must plead facts showing that a defendant actively sought to mislead the borrowers in order to lull them into failing to make a claim under TILA). Moreover, Plaintiff has not demonstrated that, despite exercising due diligence, the cause of action could not have been discovered. Therefore, Plaintiff's TILA claims are time barred by the statute of limitations.

**\*8** TILA claims are also subject to a three-year statute of repose. Statutes of repose limit the time in which an action can be brought, regardless of whether the injury has occurred or has been discovered. Pursuant to 15 U.S.C. § 1635(f), "An obligor's right of rescission shall expire three years after the date of consummation of the transaction[.]" Thus, any action under TILA that seeks a rescission of the loan agreement must be brought within three years of the loan closing. In the present case, Plaintiff did not file her complaint until August 26, 2011, but the closing occurred on March 9, 2006. More than five years passed between the closing of the loan and the filing of the instant action. Unlike the statute of limitations, tolling principles do not apply to statutes of repose because they are meant to serve as a cut-off. *See Lampf v. Gilbertson,* 501 U.S. 550, 363, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991). Thus, even if Plaintiff had established concealment sufficient to toll the statute of limitations, TILA's statute of repose bars Plaintiff from rescinding the loan transaction.

### 2. Plaintiff's RESPA Claims are not Actionable and are Barred by 1–and 3–year Statutes of Limitations

In her Complaint, Plaintiff does not specify which provisions of RESPA Defendants allegedly violated. Instead she cites two instances of alleged wrongdoing. In the first instance she accuses the Defendants of failing to provide her with a "good faith estimate." In this regard,

Plaintiff appears to be relying on Section 2604 of RESPA which requires lenders to provide borrowers with a special information booklet that includes "a good faith estimate of the amount or range of charges for specific settlement services the borrower is likely to incur in connection with the settlement...." Even assuming arguendo that Defendants failed to provide such an estimate, Plaintiff is not entitled to recovery because there is no private right of action under Section 2604. *See, e.g. Marshall–Ford v. Wells Fargo Mortgage,* 2009 WL 2849524 (E.D.Mich. Aug.31, 2009); *Koczara v. IndyMac Bank,* 2011 WL 379422 (E.D.Mich. Feb.3, 2011); *Carr v. Home Tech Co., Inc.,* 476 F.Supp.2d 859, 869 (W.D.Tenn.2007); *see also Collins v. FMHA–USDA,* 105 F.3d 1366, 1367–68 (11th Cir.1997).

Plaintiff also complains that Defendant Argent Mortgage Company held a pre-sold loan for Defendant DBNTC. Plaintiff has not provided any factual basis for her accusation that the loan was pre-sold. As such, the alleged pre-sold loan lies in the realm of what is possible, not what is probable as required by Federal Rule of Civil Procedure 8(a)(2). *See Iqbal,* 129 S.Ct. at 1949. Moreover, Plaintiff has not established how such a pre-sold loan would violate RESPA. Thus, with respect to the pre-sold loan, Plaintiff has not stated a claim upon which relief can be granted.

RESPA further requires that "[a]ny action pursuant to the provisions of section 2605, 2607, or 2608 of this title may be brought ... within 3 years in the case of a violation of section 2605 of this title and 1 year in the case of a violation of section 2607 or 2608 of this title from the date of the occurrence of the violation ...." 12 U.S.C. § 2614. Section 2605 addresses the requirements of disclosures, while section 2607 covers fee splitting arrangements. Courts have held that the one-and three-year limitation periods begin to run on the date of the closing of the mortgage loan. *See e.g., Snow v. First American Title Ins. Co.,* 332 F.3d 356, 359–60 (5th Cir.2003); *Vatomanyuk v. Quality Loan Service Corp. of Wash.,* 699 F.Supp.2d 1242, 1244 (W.D.Wash.2010); *Palmer v. Homecomings Financial LLC,* 677 F.Supp.2d 233, 237 (D.D.C.2010); *Kamara v. Columbia Home Loans, LLC,* 654 F.Supp.2d 259, 265 (E.D.Pa.2009); *Poskin v. TD Banknorth,* 687 F.Supp.2d 530, 550–53 (W.D.Pa.2009).

**\*9** Both of the allegations that give rise to Plaintiff's RESPA claims would have occurred at the time of the closing of the mortgage on March 9, 2006. As this action was filed on August 23, 2011, more than five years after the closing, even if Plaintiff had a right of action under RESPA for the violations alleged in her Complaint, any

Elson v. Deutsche Bank Nat. Trust Co., Not Reported in F.Supp.2d (2012)

such claim would be barred by RESPA's three-year statute of limitations.[4] *Marshall–Ford v. Wells Fargo Mortgage,* 2009 WL 2849524 at *3.

As such, the claims Plaintiff brings under RESPA are time-barred, unless equitable tolling applies. The Sixth Circuit has not officially addressed whether equitable tolling applies to RESPA. However, it has recognized that many district courts have found tolling applicable. *See Egerer v. Woodland Realty, Inc.,* 556 F.3d 415, 421 n. 10 (6th Cir.2009) (collecting cases). A majority of the district courts have held that equitable tolling applies to RESPA claims for the 1—and 3—year statutes of limitations. *See, e.g., Minter v. Wells Fargo Bank, N.A.,* 675 F.Supp.2d 591, 594–95 (D.Md.2009); *Blaylock v. First American Title Ins. Co.,* 504 F.Supp.2d 1091, 1107 (W.D.Wash.2007); *Mullinax v. Radian Guaranty Inc.,* 199 F.Supp.2d 311, 328 (M.D.N.C.2002); *Pedraza v. United Guaranty Corp.,* 114 F.Supp.2d 1347, 1353 (N.D.Ga.2000); *Kerby v. Mortgage Funding Corp.,* 992 F.Supp. 787, 793–96 (D.Md.1998); *Moll v. U.S. Life Title Ins. Co. of N.Y.,* 700 F.Supp. 1284, 1286–89 (S.D.N.Y.1988). Additionally, as noted above, the Sixth Circuit has applied equitable tolling to the TILA. *See Jones v. TransOhio Sav. Ass'n,* 747 F.2d 1037, 1041 (6th Cir.1984). Therefore, for purposes of Defendant's motion, the Court will assume that equitable tolling applies to RESPA, as well.

The Sixth Circuit has outlined five factors that are relevant when determining whether to toll a statute of limitations. These are: (1) lack of notice of the filing requirement; (2) lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendants; and (5) plaintiff's reasonableness in remaining ignorant of the particular legal requirement. *Truitt v. Cnty. of Wayne,* 148 F.3d 644, 648 (6th Cir.1998). Additionally, as the Sixth Circuit noted in *Egerer v. Woodland Realty, supra,* in order to establish equitable tolling by the doctrine of fraudulent concealment, the plaintiff must allege and establish that: (1) defendants concealed the conduct that constitutes the cause of action; (2) defendants' concealment prevented plaintiffs from discovering the cause of action within the limitations period; and (3) until discovery, plaintiffs exercised due diligence in trying to find out about the cause of action. *Egerer,* 556 F.3d at 422. Plaintiff has failed to allege any facts that would establish entitlement to equitable tolling under either framework.

### E. *PLAINTIFF'S FRAUD–BASED CLAIMS MUST BE DISMISSED FOR FAILURE TO PLEAD WITH PARTICULARITY*

**\*10** Michigan law comports with the requisites of Fed.R.Civ.P. 9 with regard to pleading special matters. *See* MCR 2.112. Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."[5] Though Fed.R.Civ.P. 8 requires only "a short, plain statement of the claim," the Sixth Circuit has instructed that when fraud is alleged, Rule 8 is to be read in conjunction with Rule 9. *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.,* 501 F.3d 493 (6th Cir.2007). The Sixth Circuit has further interpreted Rule 9(b) to require that a plaintiff allege (1) "the time, place, and content of the alleged misrepresentation," (2) "the fraudulent scheme," (3) the defendant's fraudulent intent, and (4) the resulting injury. *Id.*

As detailed by Defendants in their brief, Plaintiff's Complaint contains insufficient factual allegations to satisfy these particularity standards and demonstrates that Plaintiff has failed to state a claim of fraud. Specifically, all of Plaintiff's claims of fraud and misrepresentation are alleged "upon information and belief." Complaint ¶¶ 20–23.[6] While a plaintiff may allege fraud upon information and belief when the evidentiary support for such allegations is solely within the other party's control, such allegations "must be accompanied by a statement of facts upon which the belief is founded." *Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co.,* 940 F.Supp. 1101, 1127 (W.D.Mich.1996), *see also City of Pontiac Gen. Employees' Ret. Sys. v. Stryker Corp.,* 2011 WL 2650717 (W.D.Mich. July 6, 2011). Here, Plaintiff has included no facts upon which her allegations of fraud are founded. Bare allegations do not meet the heightened requirements of Rule 9. In fact, they do not even meet the more relaxed requirements of Rule 8. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868, (2009) ("The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully"). Because part of purpose of the heightened pleading standard of Rule 9 is to prevent the "fishing expedition" that Plaintiff appears to be seeking, her claim of fraud must be dismissed for failure to state a claim. *United States ex rel. Bledsoe v. Cmty Health Sys., Inc.,* 501 F.3d 493, 503 n. 11 (6th Cir.2007).

In the alternative, Plaintiff also alleges that Defendants negligently misrepresented her eligibility for the loan. Notwithstanding that the present Defendants were not involved in the loan origination process, in order to state a claim for negligent misrepresentation under Michigan

Elson v. Deutsche Bank Nat. Trust Co., Not Reported in F.Supp.2d (2012)

law, Plaintiff must prove that "[s]he justifiably relied to h[er] detriment on information prepared without reasonable care by one who owed the relying party [i.e., the Plaintiff] a duty of care." *Fejedelem v. Kasco,* 269 Mich.App. 499, 502, 711 N.W.2d 436, 437 (2006) (internal quotations omitted). The elements of negligent misrepresentation are: "(1) a material misrepresentation by the defendant; (2) the representation was unintentionally false; (3) the representation is made in connection with the contracts formation; (4) the defendant and plaintiff were in privity of contract; (5) the plaintiff acted in reliance on the defendants misrepresentation; (6) resulting damages to the plaintiff; and (7) the plaintiff's damages inured to the defendant's benefit." *Sipes v. Kinetra, LLC,* 137 F.Supp.2d 901, 910 (E.D.Mich.2001).

**\*11** Plaintiff has failed to state a claim for negligent misrepresentation because, according to Michigan law, a lender does not owe a duty of care to a loan applicant to ensure his or her eligibility for the loan. *See Ulrich v. Fed. Land Bank of St. Paul,* 192 Mich.App. 194, 198–99, 480 N.W.2d 910, 912–13 (1991) (holding that a lender did not have a legal duty to exercise reasonable care in determining the plaintiffs eligibility for a loan); *see also Yaldu v. Bank of America Corp.,* 700 F.Supp.2d 832 (E.D.Mich.2010) (holding that Michigan would not impose a duty of care on lenders with respect to loan applicants).

Further, even if the lender owed a duty of care, Plaintiff has failed to allege the elements of negligent misrepresentation. Specifically, Plaintiff has not alleged any facts tending to show that Defendants DBNTC and AHMS made any material misrepresentations during the closing. Instead she relies on the same allegations made upon information and belief that she relies on for her fraud claim. As noted above, such bare allegations are insufficient to state a claim under Rule 8. *See Iqbal,* 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face").

### F. *PLAINTIFF HAS FAILED TO STATE A CONSPIRACY CLAIM*
In Count XIV Plaintiff asserts that the Defendants conspired with one another to commit the fraud alleged in Counts X–XIII. Because the fraud claims will be dismissed due to Plaintiff's failure to plead fraud with the requisite particularity required by Rule 9, her claims of civil conspiracy must also be dismissed. Moreover, even if Plaintiff had stated a claim of fraud, she has not stated a

claim for conspiracy. Plaintiff has not provided any facts tending to show that Argent Mortgage Company conspired with **Deutsche Bank** National **Trust** Company to commit fraud beyond bare assertions of liability. As such, Plaintiff has failed to meet the pleading requirements of Rule 8. *Id.*

Further, in order to state a claim for civil conspiracy, a plaintiff must allege facts showing that two or more Defendants by some concerted action engaged in a plan "to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Temborius v. Slatkin,* 157 Mich.App. 587, 599, 403 N.W.2d 821, 827 (1986). Plaintiff has failed to allege that Defendants had a criminal or unlawful purpose or that they used criminal or unlawful means to accomplish a lawful purpose. As such, Plaintiff has failed to state a claim of conspiracy.

### G. *PLAINTIFF HAS FAILED TO STATE A CLAIM FOR RELIEF UNDER THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT*
In Counts XV, XVI, and XVII, Plaintiff claims Defendant is liable under the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1962(c) ( "RICO"). A Plaintiff may seek civil damages for violations of RICO when the complaint alleges: "(1) conduct, (2) of an enterprise (3) through a pattern (4) of racketeering activity. The plaintiff must, of course, allege each of these elements to state a claim." *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 496 (1985). In the present case, Plaintiff has not alleged a pattern of acts, or even specific acts, that satisfy the definition of "racketeering activity" under § 1961(1). *See Brown v. Cassens Transport Co.,* 546 F.3d 347, 352–56 (6th Cir.2008). Plaintiff simply asserts that the Defendants committed the fraud alleged in Counts X–XIV and that they used the mail system to communicate with her and each other. Without any factual basis, these statements are at best conclusory, and wholly insufficient to withstand a motion to dismiss. *Twombly,* 550 U.S. at 555.

### CONCLUSION
**\*12** For the foregoing reasons, the Court concludes that

Elson v. Deutsche Bank Nat. Trust Co., Not Reported in F.Supp.2d (2012)

Plaintiff has failed to state any claim upon which relief may be granted. Although it is the practice of this Court to provide an opportunity to amend when a plaintiff is faced with a dismissal that is readily curable, here, amendment of Plaintiff's complaint would be futile. As discussed above, Plaintiff lacks standing to contest the foreclosure due to the expiration of the period of redemption and her remaining claims are either barred by the statute of limitations and/or are not cognizable under applicable law. Subsequent amendment would not cure these defects. Therefore, for the reasons stated in this opinion, dismissal of Plaintiff's complaint is warranted. Accordingly,

IT IS HEREBY ORDERED that Defendants **Deutsche Bank** National **Trust** Company and American Home Mortgage Servicing, Inc.'s Motion to Dismiss **[Dkt. # 7]** be, and hereby, is GRANTED. Accordingly,

IT IS FURTHER ORDERED that Plaintiff's Complaint against **Deutsche Bank** National **Trust** Company, Trustee for Argent Securities, Inc., and American Home Mortgage Servicing, Inc. be, and hereby is, DISMISSED, in its entirety, WITH PREJUDICE.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 1902916

Footnotes

1    The only other named Defendant, Argent Mortgage Company, LLC, was never served and the summons expired on November 22, 2011. Accordingly, an Order has been issued directing Plaintiff to show cause why Argent should not be dismissed pursuant to Fed.R.Civ.P. 4(m).

2    Although Count II is captioned "Gross Negligence," the only "negligence" alleged is that Defendants "intentionally failed to perform their duties to act in good faith and fair dealing." Compl. ¶ 53.

3    Even if Michigan did recognize an implied duty of good faith and fair dealing, Plaintiff has not pled sufficient facts to warrant relief under that doctrine. Plaintiff simply states that Defendant **Deutsche Bank** acted in bad faith when it foreclosed on her property, but provides no factual basis for that assertion. Plaintiff also alleges that the assignment of the mortgage to Defendant **Deutsche Bank** was improper. While the standard outlined in *Twombly* does not require Plaintiff to outline specific facts, Plaintiff must include facts that are "enough to state a claim for relief that is plausible on its face." *Twombly* at 570. Here, Plaintiff has failed to meet the minimum requirement.

4    Only Sections 2605(f), 2607(d)(2), 2607(d)(5), and 2608(b) provide private civil remedies for violations of certain provisions. As such, only those sections are referenced in RESPA's statute of limitations. *See* 12 U.S.C. 2614. If the Court were to imply a private right of action for Section 2604 or for the pre-sold loan, the Court would also have to imply a statute of limitations for those actions.

5    MCR 2.112(B)(1) similarly requires that "[i]n allegations of fraud or mistake, the circumstances constituting fraud or mistake must be stated with particularity."

6    These allegations include that Plaintiff's income did not qualify her for a loan, that she would be unable to afford the loan when the interest rate was adjusted, that the Defendants knew she would not be able to afford it, and that the loan was "pre-sold" to **Deutsche Bank** National **Trust** Company. No facts are alleged to show why the present Defendants—who were not involved in the loan origination—should suspects these allegations to be true.

---

**End of Document**                                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT P

2013 WL 490112

2013 WL 490112
Only the Westlaw citation is currently available.
United States District Court,
E.D. Michigan,
Southern Division.

Brent MOHLMAN, Plaintiff,
v.
LONG BEACH MORTGAGE Extinct Lender
Washington Mutual Bank Extinct Lender Chase
Home Loan and Craig J. Keaney, Senior Vice
President, Defendants.

No. 12–10120.
|
Feb. 8, 2013.

**Attorneys and Law Firms**

Brent Mohlman, Livonia, MI, pro se.

T. L. Summerville, Dykema Gossett, Detroit, MI, Samantha L. Walls, Dykema Gossett PLLC, Bloomfield Hills, MI, for Defendants.

*OPINION AND ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS*

GERALD E. ROSEN, Chief Judge.

## I. INTRODUCTION

**\*1** This matter involving a mortgage of real property is presently before the Court on Defendants JPMorgan Chase Bank, N.A. ("Chase") and Craig J. Keaney's Motion to Dismiss this action pursuant to Fed.R.Civ.P. 12(b)(6). Plaintiff Brent Mohlman has responded and the Defendants have replied. Having reviewed and considered the parties' motions, responses, and supporting exhibits, the Court has determined that the pertinent allegations and legal arguments are sufficiently addressed in these materials and that oral argument would not assist in the resolution of this motion. Accordingly, pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), the Court will decide Defendants' motion based on the record as it presently exists, including the brief Defendants filed in support of their dispositive motion.

## II. *FACTUAL AND PROCEDURAL BACKGROUND*

On December 19, 2005, Plaintiff borrowed $119,200.00 from Long Beach Mortgage Company ("Long Beach") and executed a promissory note ("Note") in which he contracted to repay the loan over 30 years at an interest rate between 8.950% and 14.950%. [*See* Defendants' Exhibit 1].[1] As security for the Note, Plaintiff granted a mortgage ("Mortgage") on property located at 19042 Irving, Livonia, Michigan 48152 in favor of Long Beach. [*See* Defendants' Exhibit 2]. Following the execution of the Mortgage, Washington Mutual Bank ("WaMu") acquired Long Beach along with its assets, including Plaintiff's Note and the Mortgage. On September 25, 2008, the Office of Thrift Supervision closed WaMu and appointed the Federal Deposit Insurance Corporation ("FDIC") as receiver pursuant to its authority under the Federal Deposit Insurance Act, 12 U.S.C. § 1821(d). [*See* Defendants' Exhibit 3]. On the same day, Chase purchased some of WaMu's assets from the FDIC pursuant to a Purchase and Assumption Agreement, thus acquiring WaMu's interest in the Note and Mortgage relevant to this case.[2]

Plaintiff subsequently defaulted on his Mortgage account on September 1, 2010. [*See* Defendant's Exhibit 6]. No sheriff's sale has been held on the property.

Plaintiff filed his initial *pro se* complaint on December 21, 2011 in Wayne County Circuit Court, naming Long Beach, WaMu, Chase Home Loan, and Keaney as Defendants. Chase and Keaney—the proper Defendants in interest—timely removed the matter to this Court on diversity grounds on January 11, 2012, and subsequently filed a Motion for a More Definite Statement February 27, 2012. On March 27, 2012, Plaintiff filed a six-count Amended Complaint in which he seeks to quiet title and purports to raise claims for breach of contract, fraud, and unjust enrichment, as well as violations of the Fair Debt Collection Practices Act ("FDCPA"), the Real Estate Settlement Procedures Act ("RESPA"), the Real Estate

Mohlman v. Long Beach Mortg., Not Reported in F.Supp.2d (2013)

2013 WL 490112

Mortgage Investment Conduit ("REMIC") laws, the Uniform Commercial Code ("UCC"), the Truth–InLending Act ("TILA"), and the Servicer Performance Agreement.

**\*2** Plaintiff's various counts revolve around assertions that the Mortgage was incorrectly placed in default and that Defendants' actions regarding the Mortgage were otherwise fraudulent. As relief, Plaintiff asks the Court to extinguish any interests Defendants may hold in the subject property, return the property to the Plaintiff, and award him $149,000.00 for "defending the fraudulent action." Defendants subsequently filed the instant Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6). Plaintiff filed a response and Defendants replied.

### III. *DISCUSSION*

#### A. *APPLICABLE STANDARDS*

Fed.R.Civ.P. 12(b)(6) authorizes the Court to dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted...." In deciding a motion brought under Rule 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff and accept all well-pled factual allegations as true. *League of United Latin Am. Citizens v. Bredesen,* 500 F.3d 523, 527 (6th Cir.2007). Yet "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (internal quotation marks, alterations, and citations omitted). Thus, to withstand a motion to dismiss, the complaint's factual allegations, accepted as true, "must be enough to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has

facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 663.

Further, a *pro se* complaint is to be "liberally construed" and "must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (internal citations omitted). But "[t]he leniency granted to pro se petitioners ... is not boundless" and courts still demand basic pleading standards. *Martin v. Overton,* 391 F.3d 710, 714 (6th Cir.2004). In other words, "[l]iberal construction does not require a court to conjure allegations on a litigant's behalf." *Id.* (internal citations omitted).

Applying the foregoing standards, the Court concludes that Defendants' Motion to Dismiss should be granted.

#### B. *PLAINTIFF FAILS TO STATE VALID CLAIMS AS A MATTER OF LAW*

##### 1. *Plaintiff Fails to State Valid Claims Under the UCC, TILA, RESPA, and Common–Law Unjust Enrichment.*

**\*3** The Court begins with those allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal,* 556 U.S. at 679. Plaintiff's Counts 4, 6, and portions of Count 3 fall into this category. Count 4 of Plaintiff's Amended Complaint alleges that "[t]he Principal is in violation of UCC & 201(39)." Count 6 alleges that "all Defendants have violated TILA" and "all Defendants received an[ ] unjust enrichment and made Plaintiff the injured party." Lastly, Count 3 alleges that "all Defendants violated [RESPA], 12 USC Sec 2601 et seq. and Regulation X, promulgated pursuant thereto, 24 C.F.R. Part 3500, including subsequent amendments." Given the absence of accompanying factual allegations, these four conclusory statements do not state a claim upon which relief may be granted. *See Iqbal,* 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). Accordingly, Plaintiffs' claims of violations of the UCC, TILA, RESPA,[3] and unjust enrichment[4] will be dismissed.

Mohlman v. Long Beach Mortg., Not Reported in F.Supp.2d (2013)

2013 WL 490112

2. *Plaintiff Has Failed to State a Claim for Breach of Contract.*

In Count 1 of Plaintiff's Amended Complaint, captioned "Breach of Contract," Plaintiff alleges that Defendants breached the Mortgage agreement by not accepting the payment he made in the amount of $573.79 on December 8, 2011. [Plaintiff's Exhibit B]. To recover for breach of contract under Michigan law, a plaintiff must prove (1) the existence of a valid contract, (2) the terms of the contract, (3) the conduct constituting breach by the defendant, and (4) damages. *Webster v. Edward D. Jones & Co., L.P.,* 197 F.3d 815, 819 (6th Cir.1999); *see also I.B. MiniMart II, Inc. v. JSC Corp.,* 296982, 2011 WL 1435978 at *2 (Mich.Ct.App. Apr.14, 2011) ("The elements of a breach of contract action are: (1) the existence of a contract between the parties, (2) the terms of the contract require performance of a certain action by the defendant, (3) the defendant breached its obligation to perform, and (4) the plaintiff incurred damages as a result of the breach.").

Plaintiff's breach of contract claim is undermined by the fact that at the time he allegedly made the payment of $573.79, his account had been in default for more than 16 months. [Defendant's Exhibit 6]. According to an Acceleration Notice dated October 20, 2011, total monthly payments due on the Mortgage exceeded $14,000.00 at the time. *Id.* Under the terms of the Mortgage contract, the lender was permitted to "return any payment or partial payment if the payment or partial payment is insufficient to bring the Loan current." [Defendants' Exhibit 2, § 1]. Consequently, Defendants' refusal of Plaintiff's partial payment in the amount of $573.79 could not, without more, constitute a breach of contract. Because Plaintiff's allegations fail to meet the threshold necessary to state a breach of contract claim, Count 1 will be dismissed in its entirety.

3. *Plaintiff Has Failed to State a Claim Under the FDCPA.*

*4 Count 2 of Plaintiff's Amended Complaint is titled "Violation of Contract Also Validation" and alleges that "Defendants failed to validate the debt upon request of the return of funds." While the exact nature of this claim is unclear, Plaintiff appears to accuse Defendants of violating the FDCPA, 15 U.S.C. § 1692 *et seq.,* by failing to "validate [his] debt."

The FDCPA applies only to "debt collectors," which are defined as:

any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, *debts owed or due or asserted to be owed or due another.* Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.

15 U.S.C. § 1692a(6) (emphasis added). Notably, "[a] bank that is a creditor *is not a debt collector* for the purposes of the FDCPA and creditors are not subject to the FDCPA when collecting their accounts." *Montgomery v. Huntington Bank,* 346 F.3d 693, 699 (6th Cir.2003) (emphasis added) (internal quotation marks and citations omitted); *see also Scally v. Hilco Receivables, LLC,* 392 F.Supp.2d 1036, 1037 (N.D.Ill.2005) ("Only debt collectors-not creditors—are subject to the provisions of the FDCPA .").

The pleadings show that, at all times relevant to Plaintiff's allegations, Chase was the mortgagee and had the right to receive mortgage payments—that is, Chase was Plaintiff's creditor. Although Chase later assigned the mortgage to Deutsche Bank National Trust Company, Chase remained the servicer of the mortgage. Indeed, whether Chase was the mortgagee or the servicer is inapposite to Plaintiff's ability to recover under the FDCPA. "[C]reditors, mortgagors, and mortgage servicing companies are not debt collectors and are statutorily exempt from liability under the FDCPA." *Scott v. Wells Fargo Home Mortg. Inc.,* 326 F.Supp.2d 709, 718 (E.D.Va.2003); *see also Givens v. HSBC Mortg. Services,* 08–10985, 2008 WL 4190999 at *1 (E.D.Mich. Aug.26, 2008) ("[I]t is well settled that the provisions of the FDCPA apply only to professional debt collectors, not creditors or mortgagors."). A liberal review of Plaintiff's pleadings does not yield any factual allegations or legal arguments to the contrary. Accordingly, Plaintiff has failed to state claim against Chase under the provisions of FDCPA because Chase does not qualify as a debt collector.

Moreover, Plaintiff cannot recover against Defendant

Mohlman v. Long Beach Mortg., Not Reported in F.Supp.2d (2013)

2013 WL 490112

Craig Keaney because the FDCPA's exclusion from liability extends to a creditor's employees acting on the creditor's behalf. 15 U.S.C. § 1692a(6)(A). Here, Plaintiff's claim against Keaney was purportedly based on a letter—on Chase letterhead and signed by Keaney in his capacity as Senior Vice President—advising Plaintiff of a change in the account number for the Mortgage loan. [*See* Plaintiff's Exhibit A]. Even if that letter could be considered an attempt to collect a debt, Keaney would not be liable to Plaintiff under the FDCPA because he was acting as an officer or employee of Chase at the time. For that reason, Plaintiff has failed to state a FDCPA claim against Keaney, as well. The Court will therefore dismiss Count II of the Plaintiff's Amended Complaint.

### 4. *Plaintiff's Claims of Violations of the "Servicer Performance Agreement" and "REMIC" Tax Provisions Fail as a Matter of Law.*

*\*5* In addition to an unsupported RESPA claim, Count 3 of Plaintiff's Amended Complaint also alleges violations of the "Servicer Performance Agreement" and "the REMIC LAW." In particular, Plaintiff alleges that Defendants' poor bookkeeping practices caused Defendants to wrongfully return Plaintiff's partial payment, but otherwise fails to provide further factual support for this assertion. Count 5, captioned "Failure of Validation is a REMIC Violation," asserts that "[t]ax rules prohibit a REMIC from ... buying and trading mortgages."

The Internal Revenue Service ("IRS") created REMICs to enable the bundling of residential mortgages into segregated asset pools, so individuals could invest in the asset-backed securities. *See* Internal Revenue Code ("IRC"), 26 U.S.C. §§ 860A–G. REMICs are "passthrough" entities, meaning that the investors are taxed on income received while the REMICS themselves are not taxed. *Id.* Notably, if a mortgage is transferred to a REMIC as part of a prohibited transaction, a private right of action does not arise automatically under the REMIC rules. *Id.* Additionally, violating the REMIC rules does not establish a defect in ownership of the mortgage. *See Livonia Prop. Holdings, L.L. C. v. 12840–12976 Farmington Rd. Holdings, L.L. C.,* 717 F.Supp.2d 724, 748 (E.D.Mich.2010) ("*Livonia I*" ) (ruling that an unfavorable tax consequence has no effect on the validity of an assignment).

As a threshold matter, Plaintiff fails to allege that his Mortgage was transferred into a REMIC. Even if Plaintiff had made such an allegation, his claim would fail because

there is no private right of action available to challenge any perceived violation of 26 U.S.C. §§ 860A–G. Thus, to the extent Plaintiff challenges any alleged pooling and servicing agreement or assignment to a trust, he lacks standing to challenge the validity or any perceived violations of such transactions. *Livonia I,* 717 F.Supp.2d at 748–749; *see also Luster v. Mortgage Elec. Registration Sys.,* 11–CV–14166, 2012 WL 124967 at \*3 (E.D.Mich. Jan.17, 2012) ("Because there is no right to sue under [the Home Affordable Modification Program], to the extent Plaintiffs allege a violation of [the Home Affordable Modification Program] or the 'Servicer Performance Agreement,' the claim fails as a matter of law."). Finally, even if Plaintiff had standing, his reference to "poor bookkeeping" is too vague and the Amended Complaint does not state which provisions of the servicing agreement Defendants allegedly breached. *See Hudson v. Mortgage Elec. Registration Sys., Inc.,* 11–13077, 2011 WL 5553814 at \*3 (E.D.Mich. Nov.15, 2011) ("Plaintiff has not explained how Defendants' allegedly "poor bookkeeping" constituted a breach of the alleged contract, leaving this matter to speculation. The Court concludes that Plaintiff's claim for breach of contract is so lacking in facts that it must be dismissed.").

For these reasons, the Court will dismiss Plaintiff's counts regarding violations of the "Servicer Performance Agreement" and REMIC tax-code provisions because Plaintiff either lacks standing to plead, or has not pled, viable claims.

### 5. *Plaintiff's Amended Complaint Fails to Plead Fraud with Specificity.*

*\*6* Plaintiff also makes multiple attempts to raise fraud or silent fraud claims. [Amended Complaint ¶ 8, ¶ 12, ¶ 19]. For example, Plaintiff refers to "false and erroneous" documents, "certain bogus instruments which purported to divest plaintiff of all interest in the subject property," and Defendants' general "failure to disclose." [Amended Complaint ¶ 8].

Fed. R. Civ. Pro. 9(b), which governs pleading standards for fraud claims, requires that "the circumstances constituting fraud or mistake shall be stated with particularity." The Sixth Circuit has "further interpreted Rule 9(b) to require that a plaintiff allege the time, place, and content of the alleged misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Sanderson v. HCAThe Healthcare Co.,* 447 F.3d 873, 877 (6th Cir.2006) (internal quotation marks

Mohlman v. Long Beach Mortg., Not Reported in F.Supp.2d (2013)

2013 WL 490112

omitted); see also Frank v. Dana Corp., 547 F.3d 564, 569–70 (6th Cir.2008) (explaining that a fraud complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent"). Plaintiff's Amended Complaint allegations fail to meet these standards.

Plaintiff's complaint is also deficient under the Michigan standard for pleading fraud. To state a claim for fraud under Michigan law, Plaintiff must establish:

> (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury.

Hi–Way Motor Co. v. Int'l Harvester Co., 398 Mich. 330, 336, 247 N.W.2d 813 (1976). The absence of any one of these elements is fatal to recovery. Id. Silent fraud contains the same elements as a general fraud claim, but requires "circumstances that establish a legal duty to make a disclosure." Hord v. Envtl. Research Inst. of Michigan, 463 Mich. 399, 412, 617 N.W.2d 543 (2000).

Many of Plaintiff's allegations relate to one type of fraud or another, but Plaintiff fails to plead any facts to support his contention. See Easton v. Fannie Mae, 12–CV–10663, 2012 WL 1931536 (E.D.Mich. May 29, 2012) ("Plaintiff's conclusory assertion that certain documents are bogus and that there was misrepresentation, silent fraud, and fraud is insufficient to state a claim for fraud"). For example, Plaintiff has failed to articulate how either Defendant knowingly made a material representation of the terms of the Mortgage agreement or assignment. Likewise, Plaintiff has not shown how he was injured by any assignment of the Mortgage, or that an assignment of the Mortgage in any way affected his rights under the Mortgage agreement. Because Plaintiff has failed to allege the elements of a claim for fraud or silent fraud with sufficient specificity, the Amended Complaint does not satisfy Fed.R.Civ.P. 9(b) or the requirements of Michigan common law. As a result, the Court will dismiss Plaintiff's fraud claims.

6. *Plaintiff Fails to Allege the Necessary Elements to Maintain a Quiet Title Action.*
*7 Lastly, Plaintiff fails to allege a valid quiet title claim. The relevant Michigan statute provides that:

> Any person, whether he is in possession of the land in question or not, who claims any right in, title to, equitable title to, interest in, or right to possession of land, may bring an action in the circuit courts against any other person who claims or might claim any interest inconsistent with the interest claimed by the plaintiff, whether the defendant is in possession of the land or not.

Mich. Comp. Laws § 600.2932(1). To state a claim for quiet title, a plaintiff must allege: (a) the interest the plaintiff claims in the premises; (b) the interest the defendant claims in the premises; and (c) the facts establishing the superiority of the plaintiff's claim. MCR 3.411(B)(2). Further, "[t]he plaintiff must attach to the complaint ... a statement of the title on which the pleader relies, showing from whom the title was obtained and the page and book where it appears of record." MCR 3.411(C)(2).

Here, Plaintiff failed to attach a copy of the record mortgage that is the basis of the quiet title claim, as required by MCR 3.411(C)(2). More importantly, Plaintiff does not allege any facts establishing the superiority of his claim. The Court will accordingly dismiss Plaintiff's demand to quiet title because Plaintiff has failed to state a valid claim.

*CONCLUSION*

For all of the foregoing reasons, the Court concludes that Plaintiff has failed to state any plausible claim upon which relief can be granted. Therefore,

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss [Dkt. # 16] is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Amended Complaint is DISMISSED, in its entirety, with prejudice.

Let judgment be entered accordingly.

2013 WL 490112

Not Reported in F.Supp.2d, 2013 WL 490112

**All Citations**

Footnotes

1    A document not formally incorporated by reference or attached to a complaint may be considered part of the pleadings
     when the document is referred to in the complaint and is central to the plaintiff's claim. *Weiner v. Klais & Co., Inc.,* 108
     F.3d 86, 89 (6th Cir.1997). Thus, "a defendant may introduce certain pertinent documents if the plaintiff fails to do so."
     *Id.; see also QQC, Inc. v. Hewlett–Packard Co.,* 258 F.Supp.2d 718, 721 (E.D.Mich.2003) ("[I]if the plaintiff fails to
     attach the written instrument upon which he relies, the defendant may introduce the pertinent exhibit.").

2    On February 3, 2012, Chase assigned the Mortgage to Deutsche Bank National Trust Company but remained servicer
     of the Mortgage. [*See* Defendants' Exhibit 4].

3    Even if Plaintiff had pled a viable RESPA claim, the applicable statute of limitations would bar recovery. *See* 12 U.S.C.
     § 2614 ("Any action pursuant to the provisions of section 2605, 2607, or 2608 of this title may be brought ... within 3
     years in the case of a violation of section 2605 ... and 1 year in the case of a violation of section 2607 or 2608 ... from
     the date of the occurrence of the violation"). Regardless of the RESPA subsection Plaintiff relies on, his action would
     be time-barred because Plaintiff's claims are focused on events that occurred at the closing in November 2005—more
     than six years ago.

4    Plaintiff's unjust enrichment claim also fails because an express contract relating to the disputed subject matter exists
     between the parties. To recover for unjust enrichment under Michigan law, a plaintiff must establish that (1) the
     defendant received a benefit from the plaintiff and (2) an inequity would result if the defendant were permitted to retain
     the benefit without compensating the plaintiff. *Belle Isle Grill Corp. v. City of Detroit,* 256 Mich.App. 463, 478, 666
     N.W.2d 271 (2003). If both elements are established, "the law will imply a contract in order to prevent unjust
     enrichment." *Id.* But "a contract will be implied only if there is no express contract covering the same subject matter."
     *Id.* Here, Plaintiff executed two contracts that relate to the subject matter of this claim: the Note and the Mortgage.
     Because these documents govern the parties' rights and responsibilities respecting the loan—including the obligation
     to make monthly payments and the right to receive those payments—Plaintiff's unjust enrichment claim necessarily
     fails as a matter of law.

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KETURAH MIXON,

       Plaintiff,

                                           Case No. 1:18-cv-499
                                           Honorable Paul L. Maloney

v.

DAVID TROTT, TROTT LAW P.C.
(f/k/a Trott and Trott P.C.), CARRINGTON
MORTGAGE SERVICES, LLC, (a/k/a
Carrington Mortgage Holdings LLC), and
BANK OF AMERICA, (a/k/a Bank of
America N.A.),

       Defendants.

---

Keturah Mixon
243 Devon Road
Battle Creek, MI 49015
Telephone: (269) 339-9337
*In Pro Per*

THOMAS G. COSTELLO (P42973)
DAVID G. MICHAEL (P68508)
Attorneys for Defendant Carrington
LIPSON NEILSON P.C.
3910 Telegraph Road, Suite 200
Bloomfield Hills, Michigan 48302
tcostello@lipsonneilson.com
dmichael@lipsonneilson.com
(248) 593-5000

Thomas W. Cranmer (P25252)
Matthew P. Allen (P57914)
Miller, Canfield, Paddock and Stone, P.L.C.
Attorney for David Trott
840 West Long Lake Road, Suite 200
Troy, Michigan 48098-6358
Telephone: (248) 267-3381
Fax: (248) 879-2001
Email: cranmer@millercanfield.com
allen@millercanfield.com

Richard Welke (P44403)
Jeffrey R. Raff (P55761)
Trott Law PC
Attorney for Trott Law P.C.
31440 Northwestern Hwy., Ste. 200
Farmington Hills, MI 48334-5422
Telephone: (248) 723-5765
rwelke@trottlaw.com
jraff@trottlaw.com

---

**PROOF OF SERVICE**

## **PROOF OF SERVICE**

The undersigned certifies that on August 7, 2018 she electronically filed DEFENDANT CARRINGTON MORTGAGE SERVICES, LLC'S MOTION TO DISMISS, BRIEF IN SUPPORT OF DEFENDANT CARRINGTON MORTGAGE SERVICES, LLC'S MOTION TO DISMISS and this PROOF OF SERVICE by using the Court's electronic filing system which will send notification of such filing to all attorneys of record and I hereby certify that I have mailed same to the non-electronic filing participant:

Keturah Mixon
243 Devon Rd.
Battle Creek, MI 49015

via United States Mail.

/s/ *Stephanie Danko*
Stephanie Danko